# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| MV3 PARTNERS LLC,<br><br>               Plaintiff,<br>v.<br><br>ROKU, INC.,<br><br>               Defendant. | Civil Action No.: 6:18-cv-00308-ADA<br><br>**JURY TRIAL DEMANDED** |

## <u>ROKU, INC.'S ANSWER AND COUNTERCLAIMS</u>

Defendant, Roku, Inc. (Roku) answers the Amended Complaint for Patent Infringement (Amended Complaint) filed by Plaintiff, MV3 Partners LLC (MV3) as follows:

### I.      NATURE OF THE ACTION

1.      Roku admits that this action purports to be a patent infringement action.  Roku denies the remaining averments of paragraph 1.

2.      Roku admits Exhibit A to the Amended Complaint appears to be a copy of U.S. Patent No. 8,863,223 (the '223 patent).  Roku is without sufficient knowledge or information to admit or deny the remaining averments of paragraph 2, and therefore denies them.

3.      Roku admits the '223 patent discloses a set top box.  Roku is without sufficient knowledge or information to admit or deny the remaining averments of paragraph 3, and therefore denies them.

4.      Roku denies each and every averment of paragraph 4.

5.      Roku admits that MV3 purports to seek monetary damages and prejudgment interest in its patent infringement action against Roku.  Roku denies the remaining averments of paragraph 5.

## II.     PARTIES

6.      Roku lacks sufficient knowledge or information to admit or deny the averments in paragraph 6 of the Amended Complaint, and therefore denies them.

7.      Roku admits it is a corporation organized and existing under the laws of Delaware.  Roku admits its agent is Corporation Service Company, which has an office at 211 E. 7th Street, Suite 620, Austin, Texas 78701.  Roku admits it has a research and development office located in Austin, Texas.

8.      Roku admits it published a Shareholder Letter dated August 8, 2018, and that this letter forecasts total net revenue of between $710 and $730 million and total gross profit of between $315 and $327 million for 2018.  Roku denies the remaining averments of paragraph 8.

## III.     JURISDICTION AND VENUE

9.      Roku admits that the Amended Complaint purports to state a cause of action under the patent laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 282, 284, and 285.  Roku admits the Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

10.      Roku does not contest, for purposes of this action, that this Court has personal jurisdiction over Roku, but denies the remaining averments of paragraph 10.

11.      Roku does not contest, for purposes of this action, that venue is permissible in the Western District of Texas pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b), but denies the remaining averments of paragraph 11.

2

## IV.    THE PATENT-IN-SUIT

12.    Roku admits the '223 patent discloses a set top box.  Roku lacks sufficient knowledge or information to admit or deny the remaining averments of paragraph 12, and therefore denies them.

13.    Roku admits that the '223 patent specification contains statements that purport to describe the operation of certain set top boxes, devices and networks.  Roku denies the remaining averments of paragraph 13.

14.    Roku lacks sufficient knowledge or information to admit or deny the averments of paragraph 14, and therefore denies them.

15.    Roku denies each and every averment of paragraph 15.

## COUNT I:    INFRINGEMENT OF THE '223 PATENT

16.    Roku hereby incorporates by reference its responses as set forth in their entirety in paragraphs 1–15 of this answer.

17.    Roku denies each and every averment of paragraph 17.

18.    Roku denies each and every averment of paragraph 18.

19.    Roku admits paragraph 19 reproduces screen shots from Roku's website.  Roku denies the remaining averments of paragraph 19.

20.    Roku admits paragraph 20 reproduces a screen shot from Roku's website and an excerpt from a Roku TV User Guide.  Roku denies the remaining averments of paragraph 20.

21.    Roku admits paragraph 21 reproduces screen shots from Roku's website and from Roku's blog.  Roku denies the remaining averments of paragraph 21.

22.    Roku admits paragraph 22 reproduces screen shots from Roku's website and a screen shot from an unaffiliated website.  Roku denies the remaining averments of paragraph 22.

23.     Roku admits paragraph 23 reproduces screen shots from Roku's website.  Roku denies the remaining averments of paragraph 23.

24.     Roku admits paragraph 24 reproduces screen shots from Roku's website and a screen shot from an unaffiliated website.  Roku denies the remaining averments of paragraph 24.

25.     Roku denies each and every averment of paragraph 25.

26.     Roku admits paragraph 26 reproduces a screen shot from Roku's website and a screen shot from an unaffiliated website.  Roku denies the remaining averments of paragraph 26.

27.     Roku admits paragraph 27 reproduces a screen shot from Roku's website.  Roku denies the remaining averments of paragraph 27.

28.     Roku admits paragraph 28 reproduces a screen shot from Roku's website.  Roku denies the remaining averments of paragraph 28.

29.     Roku admits paragraph 29 reproduces a screen shot from Roku's website and a screen shot from an unaffiliated website.  Roku denies the remaining averments of paragraph 29.

30.     Roku admits paragraph 30 reproduces screen shots from Roku's website and Roku's blog.  Roku denies the remaining averments of paragraph 30.

31.     Roku admits paragraph 31 reproduces an excerpt of a Roku TV User Guide. Roku denies the remaining averments of paragraph 31.

32.     Roku denies each and every averment of paragraph 32.

33.     Roku denies each and every averment of paragraph 33.

34.     Each and every averment of the Amended Complaint not specifically admitted herein is denied.

## AFFIRMATIVE DEFENSES

As its separate affirmative defenses to MV3's claims and allegations, and without admitting or acknowledging that it bears the burden of proof as to any of them, Roku asserts the following:

### FIRST AFFIRMATIVE DEFENSE
### (Non-Infringement)

35.     Roku has not infringed (directly or indirectly) any valid and enforceable claim of the '223 patent, either literally or under the doctrine of equivalents.

### SECOND AFFIRMATIVE DEFENSE
### (Invalidity of the '223 Patent)

36.     One or more of the claims of the '223 patent is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### THIRD AFFIRMATIVE DEFENSE
### (Inequitable Conduct)

37.     MV3's purported infringement claims are barred because the '223 patent is unenforceable by virtue of MV3's inequitable conduct in the preparation and prosecution of the patent.  On information and belief, the named inventor and/or his agents, attorneys, or others substantially involved in the prosecution of the '223 patent intentionally misrepresented and/or withheld material information from, and with intent to deceive, the Patent Office.

38.     The '223 patent was filed on October 9, 2009, and eventually issued on October 14, 2014.  During the course of its lengthy prosecution, the claims were amended on at least seven separate occasions (March 28, 2010 (preliminary amendment); February 25, 2011 (preliminary amendment); February 6, 2012; November 13, 2012; June 24, 2013; April 10, 2014; and July 24, 2014).

39.     In the first October 4, 2011, Office Action, the claims were rejected as obvious over the Tee and Kung references.

40.     In response, the applicant added a claim, claim 27, and argued that features thereof (including a docking port) were not taught by the references.  The applicant also held a telephone interview with the examiner to discuss its response.

41.     A Final Office Action was issued on May 10, 2012, with all of the claims rejected, including a rejection for obviousness.

42.      The applicant had another telephone interview with the examiner on August 15, 2012.  On November 13, 2012, the applicant filed a Request for Continued Examination together with another amendment.

43.     Another Office Action issued on December 24, 2012, generally maintaining the same obviousness rejections and adding an additional reference to the rejections.

44.     On June 20, 2013, another interview with the examiner was held, and on June 24, 2013, the applicant filed further amendments, arguing that the further-claimed details distinguished the claims from the cited prior art.

45.     On October 10, 2013, a Final Office Action issued that generally maintained the Patent Office's obviousness rejections.

46.     On April 10, 2014, the applicant filed another Request for Continued Examination together with an amendment and argument.  The amendment added "video processor," "adaptive

circuitry," and "video processor . . . instructions" limitations to independent claim 27:

> 27. (Currently Amended)  A mobile set top box comprising:
>
> a docking port configured to accept a mobile computing device that has a native resolution of a first size format and receives media content from at least two different types of communications networks;
>
> a mobile device input that receives media content from the mobile computing device accepted in the docking port;
>
> a television signal input that receives at least one type of television signal;
>
> a video processor configured to receive and process the media content from the mobile device input, the video processor including adaptive circuitry to process the media content transmitted from unicast and multicast broadcasts, and the video processor including circuitry and instructions operable to process a predefined protocol stack of video packets forming at least a portion of the media content;
>
> a processor coupled to an electronic storage, the electronic storage comprising

(Exhibit A (April 10, 2014 Amendment and Response) at 6.)

47.     The applicant asserted that this amendment is supported by several paragraphs of the specification and that no new matter was introduced:

> further prosecute any cancelled claims in one or more continuing applications.  Support for the amendments and the new claims is found in the application as filed at, for example, paragraphs 0004, 0022, 0024, 0025, 0027, 0028, 0034-0039, 0043 and 0044.  No new matter has been introduced.

(Exhibit A at 12.)

48.     Neither a "video processor," "adaptive circuitry," nor "video processor . . . instructions" are used or contemplated anywhere in the specification.  The applicant's assertion to the contrary was an intentional misrepresentation of whether this limitation has adequate support in the specification.  By failing to note that some terms are not used in the specification

at all, failing to note that the specification does not contemplate a "video processor," "adaptive circuitry," or "video processor . . . instructions," and failing to convert the patent application to a Continuation-in-Part application, the applicant also withheld material information from and attempted to deceive the Patent Office.

49.     The material newly added to the claims through the April 10, 2014 amendment, which lacked the required support in the specification, resulted in the Patent Office issuing the '223 patent.  In particular, on May 14, 2014, an Office Action issued indicating that the majority of the claims were allowable.  The applicant responded by amending the few rejected claims to include the same "video processor," "adaptive circuitry," and "video processor . . . instructions" limitations.

50.     Shortly thereafter, a Notice of Allowance issued, expressly explaining that the claims were allowed because the prior art was not considered to teach the "video processor," "adaptive circuitry," and "video processor . . . instructions" limitations included in each independent claim:

3.     The following is an examiner's statement of reasons for allowance: The closest prior art is the combination of Balram, Tee, Bennett, and Herrington, as presented in the Final Rejection mailed 10/10/2013.  This combination of references fails to disclose, nor would it have been obvious to a skilled artisan to modify the references to include, "a video processor configured to receive and process the media content from the mobile device input, the video processor including adaptive circuitry to process the media content transmitted from unicast and multicast broadcasts, and the video processor including circuitry and instructions operable to process a predefined protocol stack of video packets forming at least a portion of the media content", as claimed in claim 27, and similarly claimed in claims 33 and 37.

(Exhibit B (Notice of Allowance) at 6.)

51.     Accordingly, the "video processor," "adaptive circuitry," and "video processor. . . instructions" limitations were material to the '223 patent's patentability.

52.     The applicant added these limitations in a last-ditch effort to overcome the recurring obviousness rejection.  In doing so, the applicant falsely alleged that the amendments were supported by the specification and that no new matter was being added so that it could deceive the Patent Office into issuing a patent.

9

## COUNTERCLAIMS

In accordance with Rule 13 of the Federal Rules of Civil Procedure, Roku asserts the following counterclaims against MV3:

## PARTIES

1.  Roku is a corporation organized and existing under the laws of Delaware with its principal place of business at Winchester Circle, Los Gatos, California.

2.  MV3 is a limited liability company organized and existing under the laws of Florida, with a principal place of business at 4440 PGA Blvd., Suite 600, Palm Beach Gardens, Florida 33410.

## JURISDICTION AND VENUE

3.  Roku's counterclaims relate to MV3's claims for patent infringement and arise under the patent laws of the United States, Title 35, United States Code.

4.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) and the Declaratory Judgment Act.

5.  Personal jurisdiction and venue are appropriate in the western District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) because MV3 already subjected itself to the personal jurisdiction of this Court.

6.  MV3's Amended Complaint for patent infringement has established an actual and justiciable controversy between MV3 and Roku with respect to the validity, enforceability, and infringement, or lack thereof, of the '223 patent.

## FIRST COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement)

7.  Roku re-alleges and incorporates by reference the averments set forth in the preceding paragraphs of its Counterclaims as if fully set forth herein.

10

8.      MV3 alleges in its Amended Complaint in this action that it is the owner of all right title and interest in the '223 patent.

9.      By its Amended Complaint, MV3 alleges that Roku has infringed and continues to infringe the '223 patent.

10.     Roku does not infringe, directly, indirectly, literally, or under the doctrine of equivalents, any valid and enforceable claim of the '223 patent.

11.     As a consequence of the foregoing, there exists an actual and justiciable controversy between MV3 and Roku with respect to the alleged infringement of the '223 patent.

12.     Roku is entitled to a declaratory judgment that Roku does not infringe, directly or indirectly, any claim of the '223 patent, literally or under the doctrine of equivalents.

## SECOND COUNTERCLAIM
### (Declaratory Judgment of Invalidity)

13.     Roku re-alleges and incorporates by reference the averments set forth in the preceding paragraphs of its Counterclaims as if fully set forth herein.

14.      The '223 patent is invalid for failure to satisfy the conditions of patentability as specified under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

15.     For example, the '223 patent is invalid under 35 U.S.C. § 112 for failing to comply with the written description requirement.  As detailed above, at least the terms "video processor," "adaptive circuitry," and "video processor . . . instructions" are not used anywhere in the specification.  Moreover, these terms are not supported by any implicit or inherent disclosure, and these terms each violate the written description requirement.

16.     As another example, if applied as MV3 has done so in its first amended complaint, the '223 patent is invalid under 35 U.S.C. § 103 as being obvious over U.S. Patent

No. 7,957,733 to Wang et al. (Wang).  Wang was filed on May 22, 2008, and is prior art to the

'223 patent under at least 35 U.S.C. § 102(e).

17.     Like the '223 patent, Wang provides functionality to enable the provisioning of

both broadcast television and internet content for display on a television screen.  (*See, e.g.*,

15:53–55.)

18.     Wang teaches or renders obvious each element of claim 1, as shown in the

following paragraphs.  Representative citations are included, and are not intended to limit

reliance on Wang to those particular cited portions.

19.     Wang's system is configured to accept and receive content from a mobile

computing device, such as an Android or iOS mobile phone.  For example, Wang's system

includes a mobile device, a signal converter, and an external display.  The mobile device is

configured to receive multimedia content from various communications networks and is

connected to the signal converter, which receives the multimedia content from the mobile device.

(*See, e.g.*, 14:66–15:40.)  The signal converter reformats the multimedia signal received from the

mobile device to accommodate the display parameters of an external display device.  (*See, e.g.*,

15:25–31.)

20.     Wang teaches or renders obvious providing for input of media content from a

mobile computing device.  For example, Wang teaches a cellular phone that can receive a high

rate multimedia data stream of rich graphics and real-time audio/video content from any number

of service providers via various communication networks including 3G, 4G, Internet, etc.  Wang

also teaches that the MTSCM includes a mobile terminal signal interface module 1002 that uses

a convention physical interface to connect the MTSCM and the mobile device.  Module 1002

accommodates receiving the multimedia signal from the mobile device.  (*See, e.g.*, 14:50–15:9;

Fig. 9 ("networks 904"); 5:39–41, 10:53–58, 16:46–50; 17:14–33;19:52–57, 20:1–14, 21:24–40; Figs. 10 and 11.)

21.     Wang teaches or renders obvious providing for input of a television signal.  Wang teaches that the mobile terminal signal conversion module ("MTSCM") 912 may be implemented in a set top box for a television.  A skilled artisan would have understood that a television set top box includes a television signal input that receives at least one type of television signal.  (26:10–17.)

22.     Wang teaches or renders obvious a video processor configured to receive and process media content from a mobile computing device.  Moreover, Wang teaches or renders obvious that the video processor can process media content from unicast and multicast broadcasts and is able to process a predefined protocol stack of video packets.  Wang teaches that multimedia content from a mobile phone is received and processed by MTSCM to provide a converted video signal to an external display device.  The multimedia signal is received by mobile terminal interface module 1002.  Following reception of the multimedia single by mobile terminal interface module 1002, the signal is received by signal conversion module 1004.  (*See, e.g.*, 15:65–16:4; 16:48–50; 16:59–64.)  Wang also teaches that the MTSCM includes instructions stored in memory for execution by a processor and the MTSCM includes a video signal conversion module 1004 that includes Video Compress Decoder 1104a, which receives and accommodates decompression of the received multimedia data stream.  (17:43–46 and Figs. 9–11.)

23.     Wang teaches receiving the media content from unicast and multicast broadcasts. Wang teaches that Internet content is requested and accessed by cellular users.  Local networks provide the content to a user's cellular phone via a local base station.  Base stations may receive

13

this content through local serves.  These serves are loaded with the information for broadcasts and/or multicast and/or any data to be accessed by the cellular users for an optimum transmission to the users in service areas.  (*See, e.g.*, 5:41–47; 14:66–15:4; Fig. 9; 5:45–52; 8:45–48.)

24.     Wang explains that the multimedia data stream is received in "real time" via an interface/buffer and may use an MPEG video compression format, such as MPEG-1, MPEG-2, or MPEG-4.  Wang teaches that the mobile device receives this multimedia data stream using 3G and 4G cellular technology and that this content may be received from the Internet.  Because MPEG formatted data streams are packetized for transport, and also because Internet-sourced content uses IP packets to transport data, a skilled artisan would have understood that Wang's real time "multimedia data stream" (*see* Fig. 9) would have comprised video packets.  (*See, e.g.*, 17:34–54; 14:45–54, 2:29–40, 5:39–41, 10:53–58.)

25.     Wang teaches or renders obvious a processor that enables upconversion.  Wang renders the claimed "processor" obvious through Wang's teaching of a separate video card (which would have its own graphics processor), which is an addition to Wang's video processor discussed above.  Wang teaches that, following processing of the received multimedia signal by Video Compress Decoder 1104a, the decompressed digital multimedia signal is sent to either a Digital/Analog Video Encoder (DAVE) 1104b or Digital/Digital Video Encoder ("DDVE") 1104c.  The DAVE and DDVE modules receive the decompressed multimedia signal and "convert the signals to the format(s) and signal power level(s) required for the terminals to which they interface," including S-Video for analog display terminals and HDMI for digital display terminals.  Ultimately, the signals are used to provide a display on the external display, as required according to the particular display.  (17:63–18:6; 18:18–20.)  Wang teaches that the DAVE functionality may be embodied as a video card such as a Diamond Stealth S60, ASUS

14

V9400-X, or RADEON 7000 (*i.e.*, a processor).  A skilled artisan would have understood that Wang's video card would have had its own processor, because such video cards, including, *e.g.*, the RADEON 7000, include such processors.

26.     Wang teaches or renders obvious upconverting media content from a mobile computing device for display on a larger display device (e.g., the display of a TV).  Wang teaches that multimedia content from a mobile phone is received and processed by MTSCM to provide a converted video signal to an external display device.  (*See, e.g.*, 15:53–16:64.)

27.     Wang teaches or renders obvious receiving media content from the mobile computing device in a first format.  Wang teaches that MTSCM 912 receives media content from the mobile device.  The mobile device has a screen with a native resolution of a first size format, and Wang teaches this media content is received in the first size format from the mobile device input.  Further, Wang renders obvious the concept of receiving first media content in a resolution having a first size format and upconverting it to a resolution of a second size format.  (15:29–41.)

28.     Wang teaches or renders obvious determining a file format from the mobile computing device.  Wang teaches that the MTSCM's mobile terminal interface module 1002 receives the multimedia signal from the cellular phone by recognizing the multimedia signal and then storing it for further processing.  The MTSCM's single conversion module 1004 then accesses the signal from module 1002, recognizes the multimedia signal format, and processes the multimedia signal to provide the converted signal for display on the external display. Because Wang recognizes the received multimedia signal format, and that received format is in the first size format of the cellular phone screen, Wang discloses that the STB can determine the first size format from the received signal itself.  (16:46–58.)

15

29.     Wang teaches or renders obvious querying the display device by determining the required display resolution and determining the native display resolution of the second size format of the display device based on a response resulting from the query of the display device. Wang teaches or at least renders obvious that a signal received by the MTSCM formatted for the mobile device screen is upconverted to the size format appropriate for the larger external display device (as discussed above). A skilled artisan would have understood that to perform the upconversion process described for Wang's MTSCM, it would need to determine the size format of the external device. It would have been obvious to a skilled artisan that this format determination would typically be made through known querying processes. Such a known querying process was already included in the HDMI standard. And, Wang teaches that the converted signal may be output via HDMI to the external display, Wang teaches, or at least renders obvious, that a query is made to the HDMI display to determine its required resolution through a response provided to Wang's set top box. (18:9–10; 21:45–49; 26:52–55.)

30.     Wang teaches or renders obvious authenticating the validity of a user and determining whether the media is permitted to be displayed. Wang teaches that a user may be authenticated during a purchase request, including to purchase a download of Internet content. Wang also teaches that the mobile device's Tag ID and password may authenticate the validity of the user associated with the mobile computing device. Further, Wang teaches that the authentication server may reside within a wireless hub, and this wireless hub may reside within a set top box. These teachings, read together by a skilled artisan, would have taught or, at a minimum, suggested performing this multimedia purchase authentication by Wang's MTSCM set top box, which converts the mobile device multimedia content for display on the external display device. A skilled artisan would have been motivated to do so, because Wang teaches that

the user authentication can be performed within a wireless hub integrated in a set top box. (9:36–38; 10:30–11:27; 14:23–29; 27:48–28:10.)

31.     Wang teaches or renders obvious upscaling the received content from the mobile computing device to provide upconverted media content to the display.  As discussed above, Wang teaches or at least renders obvious upscaling the media content received from the cellular phone formatted for the phone's small screen size (*i.e.*, a first size format) to a second size format for the larger external display.  Wang's disclosure teaches or at least renders obvious increasing the resolution in this process.

32.     Wang teaches or renders obvious rendering a television signal into media content for the display device, receiving a television signal from the television input, decoding the television signal into media content, and rendering the media content on the display device. Because Wang teaches or at least renders obvious a "television signal input that receives at least on type of television signal," Wang also teaches or at least renders obvious receiving a television signal from the television input as part of Wang's STB's process of rendering television content (*i.e.*, second media content) for display on Wang's external display device, which Wang teaches may be a television set.  *See also* the discussion above regarding television signal input.  Wang teaches that the MTSCM functionality may be included within a set top box.  A skilled artisan would have understood or at least found it obvious that set top boxes receive, decode, and render television signals.  (26:10–17.)  Wang teaches that the media content received through the mobile device (cellular telephone) may be routed from the set top box to a television set using a predetermined "tunable channel that is otherwise unused for other forms of content," and that channel may be selected using the channel button on the remote control.  This reference to an unused channel would have suggested to a skilled artisan that the set top box receives standard

television programming to be displayed on the other channels.  (26:41–55, 3:21–22.)  And Wang teaches that the MC System receives multimedia content from cable or satellite and TV communications, includes a converter module with routines for selecting, extracting, compressing, decompressing, adjusting data, and converting the data format and/or power level and/or data package size/format.  A skilled artisan would recognize that the video signal processing components in the MTSCM would function to also process the received television signals, including decoding.  (20:10–46.)

33.    Further, the MC System includes facilities for mapping content to various connected devices and routing the content to those devices by obtaining formatting, addressing and other information by referencing portions of the data package according to a predefined protocol.  A skilled artisan would recognize that the video signal processing components in the MTSCM would function to also process the received television signals, including conventional rendering.  Wang teaches that the external housing station may both feed the converted signal to the display device and drive the signal reproduction facilities (*i.e.*, rendering) of the external display.  And Wang teaches that the converting/routing of data to the television may involve "merely feeding conventional television signals to the television."  (20:29–33; 21:24–40; 17:7–13; 22:6–12.)

34.    Wang teaches or renders obvious an output that enables displaying content on the display device from both a mobile computing device and also from a television signal.  Wang teaches that MTSCM 912 processes the video signal to provide a converted video signal with a display format and/or signal power level appropriate for an external display terminal 914 (*i.e.*, upconverted first media content).  MTSCM 912 provides the converted video signal to the external display terminal 914.  The external device is connected to MTSCM via external device

interface 1006 (*i.e.*, the claimed "output"), which communicates with the signal conversion module.  Ultimately, the signal is used to provide a display on the external display, as required according to the particular type of display.  (15:52–67; 17:4‑7; 18:18‑ 20.)

35.     As a consequence of the foregoing, there exists an actual and justiciable controversy between MV3 and Roku with respect to the alleged validity of the '223 patent.

36.     Roku is entitled to a declaratory judgment that the '223 patent is invalid.

### THIRD COUNTERCLAIM
### (Inequitable Conduct)

37.     Roku re-alleges and incorporates by reference the averments set forth in the preceding paragraphs of its Counterclaims as if fully set forth herein.

38.     MV3's attempted enforcement of the '223 patent against Roku is barred by the doctrine of inequitable conduct.  Inequitable conduct is established and a patent is unenforceable if a patent holder intentionally misrepresented and/or withheld material information from, and with intent to deceive, the Patent Office.  In the first October 4, 2011, Office Action, the claims were rejected as obvious over the Tee and Kung references.

39.     In response, the applicant added a claim, claim 27, and argued that features thereof (including a docking port) were not taught by the references.  The applicant also held a telephone interview with the examiner to discuss its response.

40.     A Final Office Action was issued on May 10, 2012, with all of the claims rejected, including a rejection for obviousness.

41.      The applicant had another telephone interview with the examiner on August 15, 2012.  On November 13, 2012, the applicant filed a Request for Continued Examination together with another amendment.

19

42.     Another Office Action issued on December 24, 2012, generally maintaining the same obviousness rejections and adding an additional reference to the rejections.

43.     On June 20, 2013, another interview with the examiner was held, and on June 24, 2013, the applicant filed further amendments, arguing that the further claimed details distinguished the claims from the cited prior art.

44.     On October 10, 2013, a Final Office Action issued that generally maintained the Patent Office's obviousness rejections.

45.     On April 10, 2014, the applicant filed another Request for Continued Examination together with an amendment and argument.  The amendment added "video processor," "adaptive circuitry," and "video processor . . . instructions"  limitations to independent claim 27:

> 27. (Currently Amended)  A mobile set top box comprising:
> a docking port configured to accept a mobile computing device that has a native resolution of a first size format and receives media content from at least two different types of communications networks;
> a mobile device input that receives media content from the mobile computing device accepted in the docking port;
> a television signal input that receives at least one type of television signal;
> a video processor configured to receive and process the media content from the mobile device input, the video processor including adaptive circuitry to process the media content transmitted from unicast and multicast broadcasts, and the video processor including circuitry and instructions operable to process a predefined protocol stack of video packets forming at least a portion of the media content;
> a processor coupled to an electronic storage, the electronic storage comprising

(Exhibit A at 6.)

46.     The applicant asserted that this amendment is supported by several paragraphs of

the specification and that no new matter was introduced:

> further prosecute any cancelled claims in one or more continuing applications.  Support for the amendments and the new claims is found in the application as filed at, for example, paragraphs 0004, 0022, 0024, 0025, 0027, 0028, 0034-0039, 0043 and 0044.  No new matter has been introduced.

(Exhibit A at 12.)

47.     Neither a "video processor," "adaptive circuitry," or "video processor . . . instructions" are used or contemplated anywhere in the specification.  The applicant's assertion to the contrary was an intentional misrepresentation of whether this limitation has adequate support in the specification.  By failing to note that some terms are not used in the specification at all, failing to note that the specification does not contemplate a "video processor," "adaptive circuitry," or "video processor . . . instructions," and failing to convert the patent application to a Continuation-in-Part application, the applicant also withheld material information from and attempted to deceive the Patent Office.

48.      The material newly added to the claims through the April 10, 2014 amendment, which lacked the required support in the specification, resulted in the Patent Office issuing the '223 patent.  In particular, on May 14, 2014, an Office Action issued indicating that the majority of the claims were allowable.  The applicant responded by amending the few rejected claims to include the same "video processor," "adaptive circuitry," and "video processor . . . instructions" limitations.

49.     Shortly thereafter, a Notice of Allowance issued, expressly explaining that the claims were allowed because the prior art was not considered to teach the "video processor,"

"adaptive circuitry," and "video processor . . . instructions" limitations included in each independent claim:

> 3.      The following is an examiner's statement of reasons for allowance: The closest prior art is the combination of Balram, Tee, Bennett, and Herrington, as presented in the Final Rejection mailed 10/10/2013.  This combination of references fails to disclose, nor would it have been obvious to a skilled artisan to modify the references to include, "a video processor configured to receive and process the media content from the mobile device input, the video processor including adaptive circuitry to process the media content transmitted from unicast and multicast broadcasts, and the video processor including circuitry and instructions operable to process a predefined protocol stack of video packets forming at least a portion of the media content", as claimed in claim 27, and similarly claimed in claims 33 and 37.

(Exhibit B at 6.)

50.     Accordingly, the "video processor," "adaptive circuitry," and "video processor . . . instructions" limitations were material to the '223 patent's patentability.

51.     The applicant added these limitations in a last-ditch effort to overcome the recurring obviousness rejection.  In doing so, the applicant falsely alleged that the amendments were supported by the specification and that no new matter was being added so that it could deceive the Patent Office into issuing a patent.

52.     As a consequence of the foregoing, there exists an actual and justiciable controversy between MV3 and Roku with respect to the enforceability of the '223 patent.

**53.**     Roku is entitled to a declaratory judgment that the '223 patent is unenforceable based on inequitable conduct.

## PRAYER FOR RELIEF

Wherefore, Roku requests that this Court enter judgment:

a)       that MV3 take nothing against Roku by its Amended Complaint;

b)       finding, declaring, and adjudging in favor of Roku against MV3, dismissing with prejudice all claims of MV3 against Roku;

c)       finding, declaring, and adjudging that Roku has not and does not infringe, directly, indirectly, literally, or under the doctrine of equivalents, any valid and enforceable claim of the '223 patent;

d)       finding, declaring, and adjudging that the '223 patent is invalid;

e)       finding, declaring, and adjudging that the '223 patent is unenforceable;

f)       finding that this is an exceptional case under 35 U.S.C. § 285;

g)       awarding Roku its costs (including expert witness fees), expenses, and reasonable attorney fees incurred in this action, pre-judgment interest thereon, and such other relief as may be appropriate; and

h)       granting Roku any further relief this Court may deem just and proper.

## JURY DEMAND

Roku demands a jury trial of all issues triable of right by a jury in this action.

Respectfully submitted,

/s/ Alexander J. Hadjis
Alexander J. Hadjis (*pro hac vice*)
Lisa M. Mandrusiak (*pro hac vice*)
Michael D. West (*pro hac vice*)
OBLON, MCCLELLAND, MAIER
 & NEUSTADT, L.L.P.,
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000
ahadjis@oblon.com
lmandrusiak@oblon.com
mwest@oblon.com

Richard D. Milvenan
State Bar No. 14171800
McGINNIS LOCHRIDGE LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000
rmilvenan@mcginnislaw.com

***Attorneys for Defendant Roku, Inc.***

**CERTICATE OF SERVICE**

I hereby certify that on January 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

J. Mark Mann
State Bar No. 12926150
G. Blake Thompson
State Bar No. 24042033
Mann Tindel Thompson
300 West Main Street
Henderson, Texas 76701
mark@themannfirm.com
blake@themannfirm.com
P:  903-657-8540
F:  903-657-6003

Craig D. Cherry
State Bar No. 24012419
Haley & Olson, P.C.
100 N. Ritchie Road, Suite 200
Waco, Texas  76701
913 Franklin Ave., Suite 201
Waco, Texas 76701
ccherry@haleyolson.com
P:  254-776-3336
F:  254-776-6823

Rodney R. Miller
TX State Bar No. 24070280
Kasowitz Benson Torres LLP
1349 West Peachtree Street NW, Suite 1500
Atlanta, Georgia  30309
rmiller@kasowitz.com
P:  404-260-6080
F:  404-260-6081

Daniel C. Miller (*pro hac vice*)
NY State Bar No. 4232773
Kasowitz Benson Torres LLP
1399 New York Avenue NW, Suite 201
Washington, DC  20005
dcmiller@kasowitz.com
P:  202-760-3400
F:  202-760-3401

Kasowitz Benson Torres LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California  94065
Jonathan K. Waldrop (*pro hac vice*)
CA State Bar No. 297903
Darcy L. Jones (*pro hac vice*)
CA State Bar No. 309474
djones@kasowitz.com
Marcus A. Barber (*pro hac vice*)
CA State Bar No. 307361
mbarber@kasowitz.com
John W. Downing (*pro hac vice*)
CA State Bar No. 252850
jdowning@kasowitz.com
Heather S. Kim (*pro hac vice*)
CA State Bar No. 277686
hkim@kasowitz.com

Jack Shaw (*pro hac vice*)
CA State Bar No. 309382
jshaw@kasowitz.com
Gurtej Singh (*pro hac vice*)
CA Sate Bar No. 286547
gsingh@kasowitz.com

**Attorneys for Plantiff MV3 Partners LLC**

/s/ Alexander J. Hadjis
Alexander J. Hadjis