# EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC., UNILOC LUXEMBOURG S.A., | § § § § § § § § § § § | CIVIL ACTION NO.  2:16-CV-00566-JRG |
| Plaintiffs, | | |
| v. | | |
| GOOGLE, INC., | | |
| Defendant. | | |

ORDER DENYING DEFENDANT'S MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. § 1404(a)

Before the Court is Defendant Google's Motion to Transfer (Dkt. No. 21), wherein Google

seeks a transfer to the Northern District of California pursuant to 28 U.S.C. § 1404(a). Having

considered the Parties' submissions, and for the following reasons, the Court finds that the motion

should be and is **DENIED**.

I.   BACKGROUND

   A. Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg S.A. (collectively,
      "Uniloc")

Plaintiff Uniloc USA, Inc. is a Texas corporation and has maintained offices in Plano since

2007 and in Tyler since 2009. (Dkt. No. 28, Ex. A at ¶¶ 7–8, 10–13.) In 2012, Uniloc USA, Inc.

moved its headquarters from Irvine, California to Plano, where documents relating to the patents-

in-suit and to Uniloc's licensing activities are located.[1] *Id.* at ¶¶ 11, 15. Uniloc has only one

_____

[1] Google argues that Uniloc is headquartered in California according to a declaration submitted to this Court in January 2016, and accordingly, this factor weighs in favor of transfer. (Dkt. No. 21 at 4.) However, neither Uniloc nor Google have identified any documents from Uniloc's California offices that are relevant to this case. (Dkt. No. 35 at 1.) In addition, the parties have not identified Uniloc's only California employee as a relevant witness to the litigation. (Dkt. No. 28 at 2–3; Dkt. No. 21 at 3–5.)

employee working at its Irvine office. *Id.* at ¶ 13. In addition to Uniloc USA, Inc.'s President and two full-time employees, Uniloc USA, Inc. has six former employees who reside in or around the Eastern District of Texas, four of which have declared their willingness to testify at trial in this District. (Dkt. No. 28, Ex. A ¶ 18, Ex.G–I.)

### B. Defendant Google, Inc.

Defendant Google is a Delaware corporation with its principal place of business in Mountain View, California. (Dkt. No. 21 at 1.) Since 2003, Google has been headquartered in Mountain View, where Google maintains and manages electronic records and proprietary source code for Google Hangouts ("Hangouts"), the accused product. (Dkt. No. 21, Duke Decl. ¶ 10.) Nearly all of Google's Hangouts documents are stored on various secure servers at Google's data centers, which are accessible from anywhere with the proper login credentials and a secure network connection. *Id.* at ¶¶ 10–11. None of these data centers are located in the Eastern District of Texas or in the Northern District of California. (Dkt. No. 21, Duke Decl. ¶ 11; Dkt. No. 28, Ex. D5.) Google also maintains offices in Austin and Dallas, but it has no offices or employees within this District. (Dkt. No. 21, Duke Decl. ¶ 12.) According to Google, employees likely to have knowledge about Hangouts are located in Northern California, the state of Washington, and Sweden. *Id.* at ¶¶ 9–10.

## II.   LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009).

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d at 1198. The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203. These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

In the Fifth Circuit, the plaintiff's choice of venue has not been considered a separate factor in this analysis. *Volkswagen II*, 545 F.3d at 314–15. However, "[t]he Court must also give some weight to the plaintiffs' choice of forum." *Atl Marine Const. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 134 S. Ct. 568, 581 n.6 (2013) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). "Plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous

(consistent with jurisdictional and venue limitations), [and the Supreme Court has] termed their selection 'the plaintiff's venue privilege.'" *Id.* at 581 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964)). In the Fifth Circuit, the "venue privilege" has been seen as contributing to the defendant's elevated burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *Nintendo*, 589 F.3d at 1200; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

## III.   ANALYSIS

The Court will examine each of the applicable private and public factors listed above, addressing the Parties' specific arguments where applicable.

### A.  The Suit Could Have Been Brought in the Northern District of California

The parties do not dispute that this action could have been brought in the Northern District of California. Thus, the threshold requirement for a § 1404(a) transfer has been satisfied.

### B.  Private Interest Factors

#### i.  *Relative Ease of Access to Sources of Proof*

When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Volkswagen II*, 545 F.3d at 316. Relevant evidence in patent cases often comes from the accused infringer and may weigh in favor of transfer to that location. *Genentech*, 566 at 1345.

Google asserts that relevant documents regarding Hangouts are "ultimately maintained from and managed by the Mountain View, California headquarters." (Dkt. No. 21, Duke Decl. ¶ 10.) However, none of Google's servers, which host the relevant Hangouts documents, are located in California. (Dkt. No. 28, Ex. D5.) In fact, with the exception of one data center located in The Dalles, Oregon, every other Google data center in the United States is located closer to the Eastern District of Texas. (Dkt. No. 28, Ex. D5.) Moreover, it is not enough to assert that documents are

4

"maintained" or "managed" in the desired forum. *Genentech*, 566 F.3d at 1345–46 (rejecting the district court's argument that the physical location of relevant documents is somewhat antiquated in the era of electronic storage and transmission "because it would render this factor superfluous"). Google admits that these documents "are accessible from anywhere, as long as one has proper login credentials and a secure network connection." (Dkt. No. 21, Duke Decl. ¶ 10.) Google must present evidence of documentary evidence physically located within or close to the desired forum. This Court recognizes that technological advances have significantly lightened the relative inconvenience of transporting large amounts of documents across the country, but the physical accessibility to sources of proof is still a private interest factor to be considered. Until the appellate courts address this reality, trial courts must continue to apply this factor consistent with current precedent. *See Volkswagen II*, 545 F.3d at 316; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320–21 (Fed. Cir. 2008); *Genentech*, 566 F.3d at 1345–4.

Google further asserts that "any hard copy documents that *might exist* are located within Google's facilities in the Northern District of California, Kirkland, or Stockholm, and not the Eastern District of Texas." (Dkt. No. 21 at 7 (emphasis added).) However, Google's statement is conditioned and speculative. In both its Motion and Reply, Google failed to clearly identify any relevant documentary evidence physically located in the Northern District of California. (*See* Dkt. No. 21; Dkt. No. 30.) Google does not even confirm that such documents exist. *Id.* Google bears the burden of providing such evidence to the Court. *Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 567, 571 (E.D. Tex. 2004) (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)). The Court cannot place weight on evidence whose existence and relevance are wholly speculative.

Uniloc has documents relating to the asserted patents and Uniloc's licensing activities located in Plano. (Dkt. No. 28, Ex. B ¶ 10.) *Cf. Genentech*, 566 F.3d at 1340–41 (holding that this factor weighed in favor of transfer where no evidence was housed within the state of Texas). Transferring the case would impose a significant and unnecessary burden on Uniloc to transport documents from Plano to the Northern District of California, and Google has failed to show any evidence of documents that would need to be transported from the Northern District of California to this District. *See Konami Dig. Entm't Co. v. Harmonix Music Sys.*, No. 6:08-cv-286, 2009 WL 781134, at *4 (E.D. Tex. Mar. 23, 2009) ("While Defendants point to [the transferee district] as the location of significant sources of proof, they ignore the remaining sources of proof which originate from other locations."); *Perritt v. Jenkins*, No. 4:11-cv-23, 2011 WL 3511468, at *3 (E.D. Tex. July 18, 2011) ("Because the sources of proof originate from varied locations, this factor is neutral."). The Court is not inclined to summarily discount the presence of relevant documents in this District merely because Google has speculated that hard copy documents *might* exist within the desired forum. Accordingly, this Court finds that this private interest factor is neutral.

### ii.   *Availability of Compulsory Process*

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents

of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and nonparty residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel a nonparty witness's attendance at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

Google has four potential nonparty witnesses: Tod Turner, the named inventor of the patents-in-suit, and three unnamed witnesses from Fortress Credit Co. LLC ("Fortress"), Marathon Patent Group ("Marathon"), and Acacia Research ("Acacia"). (Dkt. No. 21 at 8.) Google asserts that these witness likely have relevant evidence relating to the valuation of the patents-in-suit and Uniloc's patent portfolio. *Id.* at 9. Tod Turner is a resident of the state of Washington, and accordingly, would be outside the subpoena power of both this District and the Northern District of California. *Id.* Therefore, Tod Turner's location does not weigh in favor of transfer to the Northern District of California.

Fortress, located in the Northern District of California, has a security interest in all three asserted patents. (Dkt. No. 21, Unikel Decl. ¶ 7.) However, Google has not explained in its briefing why this information would be relevant to the case. (*See* Dkt. No. 21 at 5, 8; Dkt. No. 30 at 5.) For example, Google has not stated how a security interest in the asserted patents would either party's infringement or validity positions. *Id.* Nor has Google explained why this information could not come directly from Uniloc. *Id.* Further, Google has not identified any specific Fortress witness or their physical location—which could be anywhere. *Id.* Accordingly, the location of Fortress's unidentified witness is afforded little weight.

In addition, it is unclear whether Google's potential Marathon witness resides or works in California. Despite Marathon's headquarters being in California, there are at least as many Marathon board members and executives residing in Texas as there are in California. In addition, there are more Marathon employees residing in Texas than in California.[2] (Dkt. No. 28 at 7; Dkt. No. 28, Ex. D11–D13.) Since Google has not identified who would be the nonparty witness representing Marathon, the Court cannot determine whether this witness is a resident of California, Texas, or elsewhere.

Alternatively, Google states that Colleen Henderson, a former Uniloc employee who resides in the Northern District of California, is a relevant witness because she was Uniloc USA's Vice President of Intellectual Property at the time of merger discussions with Marathon. (Dkt. No. 21 at 5.) However, Ms. Henderson had no involvement in any of Uniloc's patent, acquisition, licensing, or legal activities and was uninvolved in any discussions or activities involving Uniloc's possible merger with Marathon. (Dkt. No. 28, Ex. A ¶ 23.) Google has not identified any other witness with knowledge of Uniloc's possible merger with Marathon who resides in California.

Similarly, it is unclear whether Google's potential Acacia witness resides or works in California. Acacia is headquartered in California, and therefore, Google concludes that any relevant witness from Acacia must similarly reside in California. (Dkt. No. 21 at 5, 8.) However, Uniloc's unsolicited offer to purchase Acacia was conveyed to Marvin Key, Acacia's interim CEO, who is located in Dallas, Texas. (Dkt. No. 28 at 7–8; Dkt. No. 28, D10.) As Google has not

---

[2] Google counters that this unidentified Marathon witness likely resides in California because "Uniloc knows where the individuals who conducted Marathon's due diligence for the merger, including analysis of the value of Uniloc's patent portfolio are located," and "it is telling that Uniloc declines to identify them despite Google's identification of Marathon's headquarters in California." (Dkt. No. 30 at 5.) The Court does not find this argument persuasive. It is not Uniloc's burden to establish Google's potential witnesses. *In re Broadcom Corp.*, 526 Fed. Appx. 960, 964 (Fed. Cir. 2013) ("The Fifth Circuit has held that, in the context of a § 1404(a) motion, the district court may place the burden on the movant to demonstrate that the contractually-chosen forum is clearly more convenient than the plaintiff's chosen forum.").

identified who would be the nonparty witness representing Acacia, the Court cannot determine whether this witness is a resident of California, Texas, or somewhere else.

In addition, Uniloc has identified six specific nonparty witnesses that are within the subpoena power of this Court, four of whom have declared that they would not be willing to travel to Seattle or San Francisco for depositions or trial unless compelled by subpoena. (Dkt No. 28, Ex. A ¶ 18; Dkt. No. 28, Exs. F–I.) Google argues that Uniloc has offered an "inflated list of potential witnesses," discounting Uniloc's former employees because they only stated that they have knowledge that "may be relevant to the present litigation," including "information regarding Uniloc's business practices." (Dkt. No. 30 at 2–3; Dkt. No. 28, Exs. F–I.) Google also argues that these declarations could not be tailored to the facts of the case because they are dated September 2016, before Google's Motion to Transfer was filed. (Dkt. No. 30 at 2–3.) However, Google does not dispute the accuracy of the declarations. (Dkt. No. 30 at 2–3.) The fact remains that these four witnesses are within the subpoena power of this Court and have knowledge "regarding Uniloc's business practices," which may be relevant to this case to prove infringement or damages.

However, because the declarations only indicate that the knowledge of Uniloc's former employees *may* be relevant, and because the Court cannot determine the extent to which this testimony is relevant from the face of each declaration, the Court finds that Uniloc's four witnesses weigh against, but slightly against, transfer. Accordingly, considering the availability of compulsory process for both sides' nonparty witnesses, the Court finds that this factor weighs slightly against transfer.

### iii.   Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Genentech*, 566 F.3d at 1342. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience

to witnesses increases in direct relationship to the additional distance to be travelled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317). However, the convenience of *party* witnesses is given little weight. *See Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant.").

Google has identified four nonparty witnesses and four party witnesses. (Dkt. No. 21 at 2–3, 5.) As discussed earlier, Google's nonparty witnesses include Tod Turner, the named inventor of the three asserted patents, and the three unnamed witnesses from Fortress, Marathon, and Acacia. (Dkt. No. 3, 5.) Google's party witnesses include two employees who reside in California, one employee who resides in Washington, and one employee who resides in Sweden. (Dkt. No. 21 at 8–9.) Google's employees are knowledgeable about financial information, real-time communication products, and marketing practices and policies for Google Hangouts. (Dkt. No. 21 at 2.)

Uniloc has identified six nonparty witnesses and three party witnesses. (Dkt. No. 28 at 2–3.) Uniloc's nonparty witnesses comprise of Sara Godecke, Bethany Perkins, Zach Jacobs, Sridevi Vemuri, Sarah Baker, and John Sherrod. (Dkt. No. 28 at 2; Dkt No. 28, Ex. A ¶ 18; Dkt. No. 28, Exs. F–I.) All of Uniloc's nonparty witnesses are former employees who have knowledge about Uniloc's business practices and who reside in or near this District. *Id.* Uniloc's party witnesses include Sean Burdick, the President and General Counsel for Uniloc, and two of Uniloc's full-time Plano employees. (Dkt. No. 28, Ex. A ¶¶ 1, 17.) Uniloc's two full-time employees are knowledgeable about Uniloc's licensing royalties. (Dkt. No. 28, Ex. A ¶ 17.)  In addition, Sean Burdick is knowledgeable about the royalties received and expected for the three asserted patents and Uniloc's licensing activities. (Dkt. No. 28, Ex. B ¶ 11.)

Both parties have identified several employees who are willing to testify within their home district. As a result, whether or not the case is transferred, one party will have to send certain employees to a court far away from its headquarters, while the other side is allowed to conveniently stay in its home district. *Frito-Lay N. A., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 869–70 (E.D. Tex. 2012) (holding that transfer should be denied where "the only practical effect is to shift inconvenience from the moving party to the nonmoving party"). Accordingly, the relative inconvenience of third-party witnesses becomes a primary focus of the Court.

It is undisputed that the named inventor of the asserted patents resides in the state of Washington. While the Northern District of California is closer and relatively more convenient than the Eastern District of Texas, there has been no indication that this inventor is willing to travel to either venue for trial. "In order for the Court to meaningfully assess the weight that should be attached to a third-party witness, it is incumbent upon the advancing party to demonstrate the likelihood of that witness actually testifying at trial." *Realtime Data LLC v. Dropbox, Inc.*, No. 6:15-cv-465-RWS-JDL, 2016 WL 153860, at *7 (E.D. Tex. Jan 12, 2016). Google has not done so. Similarly, Google has not named any of the three potential nonparty witnesses from Marathon, Fortress Credit, or Acacia. (Dkt. No. 30 at 5.) Google has not explained how the potential testimony of these unnamed nonparty witnesses would be relevant despite Uniloc's assertion that the three entities do not have any relevant or duplicative information.[3] (Dkt. No. 28 at 7; Dkt. No. 30 at 5.) In addition, Google's potential witnesses from Marathon and Acacia are just as likely to reside in Texas as they are in California. *See* discussion *supra* Section III.B.ii. Accordingly, it is exceedingly difficult for the Court to determine the

---

[3] Google states that Fortress holds a security interest in the patents-in-suit, but does not explain how Fortress's security interest would affect the invalidity, infringement, or damages arguments in this case.

11

relevance of each witness, let alone the cost attendance for each of these witnesses. The Court

must work with what the parties give it. In this regard, the Parties have not given the Court very

much.

Even if the Marathon, Acacia, and Fortress witnesses are relevant and reside in

California, Uniloc has named six former Uniloc employees who reside in or near the Eastern

District of Texas. (Dkt. No. 28 at 2, 9.) Four of Uniloc's identified nonparty witnesses have

declared that they are willing to testify within the District. (Dkt. No. 28, Exs. F–I.) This Court

recognizes that the face of each declaration offers limited insight as to the weight that should be

attached to the witnesses' testimony. *See* discussion *supra* Section III.B.ii. Nevertheless, Google

bears the brunt of this absence as it has the burden of proof.

Therefore, this factor is neutral.

### iv.   All Other Practical Problems

"Practical problems include those that are rationally based on judicial economy.

Particularly, the existence of duplicative suits involving the same or similar issues may create

practical difficulties that will weigh heavily in favor or against transfer." *Eolas Techs., Inc. v.

Adobe Sys., Inc.*, 6:09-cv-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google,

Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011). At the time of filing, this case was still in its infancy,

and therefore, any costs associated with this case would have been mitigated in the event of a

transfer. (Dkt. No. 21 at 10.) At the time of the Complaint, seventeen other cases involving one or

more of the Asserted Patents had been or were currently being litigated here, including one case

that had a *Markman* hearing on the three asserted patents. (Dkt. No. 28 at 10.)

Although the undersigned presided over fifteen of these cases at the time of the Complaint,

Uniloc initiated fourteen of those cases "more or less simultaneously with the present case." (Dkt.

No. 28, Ex. D18.) *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340–41 (Fed. Cir. 2014); *see also*

*In re Google*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017). In one of the two remaining cases, this Court (but not this judge) held a Markman hearing on all three asserted patents. (Dkt. No. 28 at 10; Dkt. No. 28, Ex. D17.) The Court acknowledges that the Markman hearing was not held in front of the undersigned. *In re Google*, 2017 WL 977038, at *2 ([T]he district court concluded that it would benefit from the "institutional knowledge" gained through previous, related litigation in the Eastern District of Texas. But the presiding judge in those cases has since retired.").

The Court finds that this factor is neutral.

### C.  Public Interest Factors

*i.  The Administrative Difficulties Flowing From Court Congestion*

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. Though the statistics vary slightly by source, this Court has consistently found that median time to trial in this District is several months faster than the Northern District of California. *See, e.g., ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 2:13-cv-1112, 2015 WL 1885256, at *10 (E.D. Tex. Apr. 24, 2015); *ContentGuard Holdings, Inc. v. Google, Inc.*, No. 2:14-cv-61 (Dkt. No. 38) (E.D. Tex. Apr. 16, 2014) ("The six-month difference in median time, though not substantial, is not negligible.").

Google argues that merely comparing the median time to trial is too speculative. (Dkt. No. 21 at 14–15.) Without citation, Google states that the average time to trial in The Eastern District of Texas is comparable to the Northern District of California. *Id.* at 14. However, even considering the average time to trial, this Court has found that average time to trial in this District is several months faster than the Northern District of California. *See Found. Med., Inc. v. Guardant Health, Inc.*, No. 2:16-cv-523, 2017 WL 590297, at *3 (E.D. Tex. Feb. 14, 2017) ("[Defendant] itself cites

satistics showing that this district has an average time to trial of 20.9 months and the Northern

District of California has an average time to trial of 26.7 months.").

This factor therefore weighs slightly against transfer.

### ii.   *Local Interest in Having Localized Interests Decided at Home*

Interests that "could apply virtually to any judicial district or division in the United States,"

such as the nationwide sale of infringing products, are disregarded in favor of particularized local

interests. *Volkswagen II*, 545 F.3d at 318.

In this case, the Northern District of California has a vested interest in the outcome of the

case because Google maintains its headquarters in that district. (Dkt. No. 21 at 1–2.) Google argues

that the Eastern District of Texas has little connection to this case because the patented invention

at issue was developed outside of Texas. (Dkt. No. 21 at 11–12.) In addition, the accused product

is available nationwide, and as a result, use of Hangouts within the Eastern District of Texas does

not implicate the interests of this District any more than the local interests of any other district.

However, this District also has a local interest in this dispute. Uniloc, a Texas corporation, has

maintained offices in this District since 2007 and has had its principal place of business in this

District since April 2012. (Dkt. No. 28 at 2.) This District has a significant interest in protecting

the intellectual property rights of its residents. *See ThinkTank One Research, LLC v. Energizer

Holdings, Inc.*, No. CV M-15-0389, 2015 WL 4116888, at *3 (E.D. Tex. July 7, 2015).

Thus, given that both this District and the Northern District of California have localized

interests in this case, the Court finds that this factor is neutral.

### iii.   *Avoidance of Unnecessary Conflicts of Law*

The Court agrees with the parties that there are no conflict-of-law issues apparent in this

case. This factor is also neutral.

### iv.   *The Familiarity of the Forum with the Governing Law*

14

The Court agrees with the parties that both courts are equally familiar with patent law. The final public factor is neutral.

## IV.   CONCLUSION

Having considered the relevant factors, the Court finds that the relative ease of access to sources of proof, the availability of compulsory process, and the administrative difficulties flowing from court congestion factors weigh slightly against transfer, and all other factors are neutral. The Court is of the opinion that Google has not satisfied its "significant burden" to show that the asserted transferee district is clearly more convenient. *Volkswagen II*, 545 F.3d at 315 n.10. "The court should not transfer venue where the result will be merely to shift the expense and inconvenience from one party to the other." *See Frederick*, 558 F. Supp. 2d at 703 (quoting *Enserch Int'l Expl., Inc. v. Attock Oil Co.*, 656 F. Supp. 1162, 1167 n.15 (N.D. Tex. 1987)).  For the reasons stated above, the Court hereby **DENIES** Google's Motion to Transfer Venue (Dkt. No. 21).

**So ORDERED and SIGNED this 15th day of May, 2017.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE