# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **MV3 PARTNERS LLC,** | § | |
| | § | **Civil Action No.: 6:18-cv-308-ADA** |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **ROKU, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## PLAINTIFF MV3 PARTNERS LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     LEGAL PRINCIPLES ................................................................................... 1

III.    ROKU IMPROPERLY ATTEMPTS TO NARROWLY DEFINE BROADCAST
        TELEVISION SIGNALS IN ITS BACKGROUND DISCUSSION ............................... 3

IV.     THE DISPUTED CLAIM TERMS ...................................................................... 4

        A.      "television signal" (Claims 1 and 30) ....................................................... 4

        B.      "docking port" (Claims 1, 30, and 32) ...................................................... 7

        C.      "accepted in" (Claims 1 and 32) ............................................................ 13

                "configured to accept" (Claims 1, 23, 32, and 55) ..................................... 13

        D.      "mobile set top box" (All Asserted Claims) ............................................. 15

        E.      "adaptive circuitry" (Claims 1, 30, 32) ................................................... 18

        F.      "determining the native display resolution of the second size format of the
                display device based on a response resulting from the query of the display
                device" (Claims 1 and 30) ................................................................... 20

        G.      "determining, based on the validity of the user, that the received first
                media content is permitted to be provided to the display device" (Claims
                1, 30, 32) ......................................................................................... 21

        H.      "multicast broadcasts" (Claims 1, 30, and 32) .......................................... 22

V.      CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
618 F.3d 1354 (Fed. Cir. 2010)...........................................................................15, 16

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313 (Fed. Cir. 2003)....................................................................................9

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
672 F.3d 1335 (Fed. Cir. 2012)....................................................................................2

*Avid Tech., Inc. v. Harmonic, Inc.*,
812 F.3d 1040 (Fed. Cir. 2016)..............................................................................2, 12

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006)......................................................................................2

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002)....................................................................................15

*Cordis Corp. v. Medtronic AVE, Inc.*,
339 F.3d 1352 (Fed. Cir. 2003)....................................................................................2

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
849 F.2d 1430 (Fed. Cir. 1988)..................................................................................19

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*,
114 F.3d 1547 (Fed. Cir. 1997)....................................................................................3

*Ecolab Inc. v. Paraclipse, Inc.*,
285 F.3d 1362 (Fed. Cir. 2002)....................................................................................2

*Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n.*,
383 F.3d 1352 (Fed. Cir. 2004)....................................................................................2

*Hoganas AB v. Dresser Indus., Inc.*,
9 F.3d 948, 950 (Fed. Cir. 1993) .................................................................................9

*Hormone Research Found., Inc. v. Genentech, Inc.*,
  904 F.2d 1558 (Fed. Cir. 1990).............................................................................3

*IMS Tech., Inc. v. Haas Automation, Inc.*,
  206 F.3d 1422 (Fed. Cir. 2000)...........................................................................15

*Johnson Worldwide Assoc., Inc. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 1999)...............................................................................3

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed.Cir. 2004)..............................................................................17

*Lucent Techs., Inc. v. Gateway, Inc.*,
  525 F.3d 1200 (Fed. Cir. 2008)...........................................................................21

*Martek BioSciences Corp. v. Nutrinova, Inc.*,
  579 F.3d 1373 (Fed. Cir. 2009)...........................................................................12

*McCarty v. Lehigh Val. R. Co.*,
  160 U.S. 110, 116 S.Ct. 240 (1895)......................................................................3

*Merck & Co. v. Teva Pharm. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005)...........................................................................19

*nCube Corp. v. Seachange Int'l, Inc.*,
  436 F.3d 1317 (Fed. Cir. 2006)...........................................................................12

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*,
  386 F.3d 1133 (Fed. Cir. 2004)..............................................................................9

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)......................................................................18, 23

*Pitney Bowes, Inc. v. Hewlett-Packard, Co.*,
  182 F.3d 1298 (Fed. Cir. 1999)..............................................................................3

*Process Control Corp. v. HydReclaim Corp.*,
  190 F.3d 1350 (Fed. Cir. 1999)..............................................................................3

*Purdue Pharma L.P. v. Endo Pharms., Inc.*,
  438 F.3d 1123 (Fed. Cir. 2006)..............................................................................2

*SanDisk Corp. v. Memorex Prod., Inc.*,
  415 F.3d 1278 (Fed. Cir. 2005)...........................................................................13

*Scripps Clinic & Res. Found. v. Genentech, Inc.*,
  927 F.2d 1565 (Fed. Cir. 1991)...........................................................................19

*Seachange Int'l, Inc. v. C-COR Inc.*,
 413 F.3d 1361 (Fed. Cir. 2005)............................................................................2

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
 358 F.3d 870 (Fed. Cir. 2004)............................................................................11

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
 522 F.3d 1279 (Fed. Cir. 2008)..........................................................................17

*Unwired Planet, LLC v. Apple Inc.*,
 829 F.3d 1353 (Fed. Cir. 2016)............................................................................6

## I.      INTRODUCTION

Plaintiff MV3 Partners LLC ("MV3") hereby submits the following Responsive Claim Construction Brief, following Defendant's Opening Claim Construction Brief (D.I. 68) ("Roku's Brief"), to detail how Roku's proposed constructions are unduly narrow and oftentimes technically inaccurate.  As shown in MV3's Opening Claim Construction Brief (D.I. 64), Roku's positions attempt to limit the scope of the claims of U.S. Patent No. 8,863,223 (the "'223 Patent" or "Patent-in-Suit"), completely disregarding the intrinsic evidence, knowledge of one of ordinary skill in the art, the plain and ordinary meaning, and established claim construction principles.  Instead, Roku attempts to distort the construction of the terms in dispute, the record, and the law solely in an effort to avoid infringement.

MV3, conversely, does not believe that any terms of the '223 Patent require construction. Alternatively, MV3 proposes constructions that are clear and understandable, and provide meaningful information to the Court and jury in understanding the inventions claimed by the '223 Patent and determining infringement.  Consistent with applicable legal principles, MV3's constructions are derived from and supported by the claims themselves, as well as the specification of the '223 Patent, and are consistent with ordinary meaning as understood by those of skill in the art at the time of filing the '223 Patent.  Accordingly, MV3 respectfully requests that its constructions be adopted as the Order of this Court.

## II.     LEGAL PRINCIPLES

Roku's Brief is replete with mischaracterizations and misapplications of established legal doctrines, including the doctrines of claim differentiation, prosecution history estoppel, and the reliance on extrinsic evidence instead of intrinsic evidence.  MV3 is accordingly compelled to clarify these issues for the Court.

First, the doctrine of claim differentiation requires that "each claim in a patent is

presumptively different in scope." *Ecolab Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1375 (Fed. Cir. 2002). That is, "claims are interpreted with an eye toward giving effect to all terms in the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). For example, the fact that two claims use "different terms in parallel settings" supports a conclusion that "the two terms were not meant to have the same meaning." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012) (citation omitted). Thus, constructions that read terms out of claims are rarely, if ever, proper. Roku's arguments in support of its constructions regularly violate this principle.

Second, to limit a claim term based on the prosecution history, the doctrine of prosecution disclaimer requires that the patentee has made "a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). That is, a disavowal of scope must be unambiguous. *See Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1373 (Fed. Cir. 2005) ("A disclaimer must be clear and unambiguous.") (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-25 (Fed. Cir. 2003)). The Federal Circuit has declined to find prosecution disclaimer where the alleged disavowal is "amenable to multiple reasonable interpretations." *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003). The Federal Circuit recently reiterated that the standard for finding disclaimer is "demanding" and a "high one." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (reversing finding of prosecution history disclaimer). Simply illustrating differences between the prior art and the claimed invention does not give rise to a disavowal of scope. *See Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n.*, 383 F.3d 1352, 1375 (Fed. Cir. 2004). In contravention of this basic legal principle, Roku's arguments consist of repeated reliance on statements from the '223 Patent prosecution history in an attempt to limit the claims. Such

statements, however, clearly fail to satisfy the threshold that the standard requires for a disclaimer.

Finally, it is well-established that a limitation that does not exist in a claim should not be read into that claim. *McCarty v. Lehigh Val. R. Co.*, 160 U.S. 110, 116 S.Ct. 240 (1895). In addition, where the specification or the prosecution history does not use a claim term in a unique or special way, the term will be given its "ordinary and accustomed meaning" to one skilled in the art at the time of the invention. *See Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1555 (Fed. Cir. 1997). Further, a patentee can act as his own lexicographer to specifically define terms of a claim contrary to their ordinary meaning if he does so in a way which puts one ordinarily skilled in the art on notice of the redefining. *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999). However, other than cases where terms of a claim are specifically defined contrary to their ordinary meaning, the specification is not used to supply meaning to a claim term unless "the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used." *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999). In the event that the intrinsic evidence alone does not resolve all ambiguities, extrinsic evidence may be considered in the determination of meanings or the scope of technical terms in the claims. *See Pitney Bowes, Inc. v. Hewlett-Packard, Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999); *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558 (Fed. Cir. 1990). Roku's arguments in support of its constructions regularly violate this principle.

## III.   ROKU IMPROPERLY ATTEMPTS TO NARROWLY DEFINE BROADCAST TELEVISION SIGNALS IN ITS BACKGROUND DISCUSSION

Roku improperly focuses on broadcast television signals and its use with a TV in an attempt to distract the Court. Specifically, Roku incorrectly focuses on how traditional set top boxes and TVs require tuners in order to decode broadcast television signals into TV content, whereas

streaming media devices can be used to stream TV content without decoding a broadcast television signal.  The subject invention is directed to a mobile set top box that combines the functionality of a set top box and a mobile communication system.  Particularly, the functionality of the mobile set top box includes the ability to receive television content over broadcast, cable, satellite, and Internet.

## IV.    THE DISPUTED CLAIM TERMS

Although a proper claim construction is found in MV3's Opening Claim Construction Brief, the following is meant to emphasize MV3's construction of the disputed claim terms and illustrate the errors in Roku's proposed claim construction.

### A.    "television signal" (Claims 1 and 30)

| MV3's Construction | Roku's Construction |
|---|---|
| No construction necessary.  Alternatively, the following is provided in the event the Court determines a construction is necessary: "signal used to convey television content over a communication network such as broadcast, cable, satellite, and Internet networks" | "audio, video, and, optionally, data signals for broadcasts over the air, by satellite, and by cable over a range of frequencies" |

Roku's proposed construction relies on various assertions, none of which are the "words or expressions of manifest exclusion" that might be sufficient to limit the claimed "television signal" to exclude signals used to convey television content over Internet networks.

First, in support of its argument for limiting the "television signal," Roku mischaracterizes claim 1 by alleging that the "television signal" that is rendered into a "second media content" and the "first media content" from the "mobile computing device" must have "different meanings." (D.I. 68 at 10.)  Indeed, there is no such conflation when one considers the entirety of the claim limitation in claim 1:

> 1. A mobile set top box comprising:
> a docking port configured to accept *a mobile computing device that* … ***receives media content*** from at least two different types of communications networks;

> a mobile device input that *receives media content from the mobile computing device* accepted in the docking port;
> a television signal input that receives at least one type of television signal;
> a video processor *configured to receive and process the media content from the mobile device input* […];
> …
> execute an upconversion process by *processing first media content from the mobile computing device …*;
> *render a television signal into second media content* for display on the display device …;
> *an output configured to deliver the* **upconverted first media content and the rendered second media content** *from the mobile set top box to the display device.*

(Emphasis added.)  Claim 1 of the '223 patent illustrates that the mobile set top box includes a television input that receives at least one type of television signal.  In addition, the mobile set top box can also communicate with a mobile computing device that receives media content.  Further, the mobile set top box can receive and process the "first media content" from the mobile computing device and render the "television signal" into a "second media content."  There is no conflation between the "first media content" and the "second media content" because one is associated with the mobile computing device and the other is associated with the mobile set top box.

Roku also erroneously argues that "the 'television signal' limitation would be rendered superfluous by '[first] media content' that represents TV programming."  (D.I. 68 at 9.)  Nothing in the claim language or the specification of the '223 Patent precludes the "first media content" from the mobile computing device from being TV content or TV programming as suggested by Roku.  In fact, claim 11, which depends on claim 1, requires that the "first media content" comprise "one or more of **TV programming**, a live event, a movie, or content from a video sharing website." (Emphasis added.)

Second, Roku cites to the "Background of the Prior Art" of the '223 Patent specification to assert that its discussion of prior art set top box functionality limits the scope of the claimed "television signal."  (D.I. 68 at 10-11.)  Of course, a mere statement referencing prior art set top

5

boxes in the "Background of the Prior Art" section is not sufficient to find words of manifest exclusion or restriction in claim scope.  *See Unwired Planet, LLC v. Apple Inc*., 829 F.3d 1353, 1358-59 (Fed. Cir. 2016) (holding that reference in summary of the invention to "the present invention" is insufficient to limit otherwise clear claim language).  And the "Background of the Prior Art" section does not say that ***all*** "set top box[es] receive[] a television signal over the cable lines or from a satellite dish," but rather a "[***common***] set top box receives a television signal over the cable lines or from a satellite dish."  ('223 Patent at 1:25-26.)  Further, the "Background of the Prior Art" describes the prior art set top boxes as "a dedicated computing device that serves as an interface between a display and a ***broadband network***."  (*Id.* at 1:21-23.)  At the time of the invention, "broadband" would have been understood to a person of ordinary skill in the art as "a high-speed, higher bandwidth connection to the Internet than is offered by a standard telephone line."  Ex. B, "broadband" (available at https://www.encyclopedia.com/economics/encyclopedias-almanacs-transcripts-and-maps/broadband-technology (last visited June 12, 2019)) (noting that "[c]able modems are the most popular broadband connection among consumers.")  In other words, the "Background of the Prior Art" does not limit the prior art set top boxes to ones that receive traditional broadcast television signals as asserted by Roku.  (Ex. A, Declaration of Dan Schonfeld, Ph.D. In Support of Plaintiff MV3's Responsive Claim Construction Brief ("Schonfeld Decl.") at ¶¶ 31-32.)

Third, Roku relies on a single reference cited during the prosecution of the '223 Patent and Dr. Akl's declaration to assert that the term "television signal" is limited to "broadcast signals" and "does not refer to data broadcast over the Internet."  (D.I. 68 at 11-12.)  However, Roku's interpretation of "television signal" and reliance on Dr. Akl and the single reference is inconsistent with the intrinsic and extrinsic evidence and the ordinary meaning.  With respect to the intrinsic

6

evidence, Appendix A of the '223 Patent identifies specifications for the transmission and reception of video and audio content over an Internet connection as discussed in MV3's Opening Claim Construction Brief.  (D.I. 64 at 14-16, Schonfeld Decl. at ¶ 32)  Further, Roku's expert acknowledges that "the specification explicitly states that the purpose of the mobile set top box is to provide Internet access to televisions."  (D.I. 68-5 at 19.)  As to the extrinsic evidence, IPTV or Internet Protocol Television is a service that delivers television content through the Internet using Internet Protocol.  (Ex. C, Newton's Telecom Dictionary (24th ed. 2008) at 514-515 (defining IPTV and stating that "[a]t the subscriber premises, the *signal* is decompressed in a set-top box") (emphasis added).)

Roku also relies on paragraph 53 of Dr. Akl's declaration which allegedly relies on the FCC's description of television transmission standards.  However, Roku's cited extrinsic evidence notes that the term "broadcast" is "deliberately restrictive" as used in "Parts 73 and 74 of the FCC" because it "does not include satellite transmission, and it does not include point-to-multipoint transmission over a wired or fiber network."  (D.I. 68-7; *see also* Schonfeld Decl. at ¶ 32.)

Thus, the Court should reject Roku's construction that attempts to narrow the functionality of the mobile set top box to that of the traditional cable or satellite set top box that can only receive television signals over the cable lines or from a satellite dish.

**B.**      **"docking port" (Claims 1, 30, and 32)**

| MV3's Construction | Roku's Construction |
|---|---|
| No construction necessary.  Alternatively, the following is provided in the event the Court determines a construction is necessary: "hardware and/or software that enables a wired or wireless connection" | "physical interface into or on which another component may be placed" |

Roku's argument that "docking port" indicates a physical interface that holds the mobile computing device is the product of circular reasoning and ignores the weight of the intrinsic

evidence.  In particular, Roku's argument as to why its construction is supported by the claims is largely based on the circular argument that its interpretation of disputed terms "configured to accept" and "accepted in" must be correct and that it is limited to a physical attribute.  (D.I. 68 at 13.)  However, this rationale ignores the whole point of the claim construction exercise.  It is up to the Court—not Roku—to determine the proper meaning of the terms "configured to accept" and "accepted in" in the context of the '223 Patent.  As MV3 demonstrated in its Opening Brief and in the discussion below, that the intrinsic evidence overwhelmingly establishes that "configured to accept" and "accepted in" incorporates wired and wireless connection.  Therefore, it is up to the Court to select the proper meaning of the term "configured to accept" and "accepted in."

Roku also mischaracterizes the claims by arguing that the "'docking port' does not enable a wired or wireless connection" and that such wired or wireless connection is limited to the "media device input."  Roku's argument ignores the claimed relationship between the "docking port" and the "mobile device input."  In particular, the limitation states that the "mobile device input [] *receives media content from the mobile computing device **accepted in the docking port**.*"  In other words, the claim can be read as requiring that "media device input" be a part of the "docking port." (Schonfeld Decl. at ¶ 36) (emphasis added).  Further, Roku's argument is inconsistent with claim 21, which depends on claim 1, and claim 53, which depends on claim 32.  Specifically, claims 21 and 53 recite a mobile phone that communicates with the mobile set top box "via a first wireless or wired connection."  The aforementioned mobile set top box is the claimed mobile set top box that "comprises" a "docking port configured to accept a mobile computing device" and a "mobile device input that receives media content from the mobile computing device accepted in the docking port."  There is nothing in the claim teaching or suggesting that the claimed "'docking port' does not enable a wired or wireless connection."

Further, Roku cannot point to any support from the patent or its prosecution history for inserting the word "physical interface" into the claim.  The Federal Circuit has consistently held that it "is improper for a court to add extraneous limitations to a claim, that is, limitations added wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim."  *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 950 (Fed. Cir. 1993) (internal quotation marks and citing quotations omitted).  "The danger of improperly importing a limitation is even greater when the purported limitation is based upon a term not appearing in the claim."  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1325 (Fed. Cir. 2003).  Roku is attempting to do precisely what the Federal Circuit has cautioned against.  The word "physical interface" does not appear in either of the asserted claims or the claim from which they depend.  Accordingly, Roku's proposed constructions should be rejected.

Roku argues that its limited construction of "docking port" should be adopted because exemplary embodiments (*e.g.*, Figures 2 through 4) show a mobile phone "physically sitting in the docking port of the docking station."  (D.I. 68 at 14.)  Roku mischaracterizes Figures 2 through 4.  Instead, the specification explains that the figures disclose an "integrated" mobile phone and docking station and not limited to "physically sitting in" as Roku asserts.  ('223 Patent at 5:59-63.)  The specification, moreover, discloses the nature of functionality of the docking port as including wired and wireless connection between a mobile phone and mobile set top box.  The fact that Roku's construction excludes these embodiments is reason enough to reject it.  *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004) ("claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.").  As MV3's Opening Claim Construction Brief explained, the specification details how the "mobile phone can connect to the docking station through a wired or wireless connection."

(D.I. 64 at 19.)  Further, the specification of the '223 Patent in Figure 2 teaches that the "[h]andset and docking station *may* be integrated into a single device."  (*Id.*)  Moreover, the specification of the '223 Patent explains that "in the embodiment in which the handset and docking station are integrated, no such connection is necessary."  (*Id.*)  In addition, the specification states that the "functionality of the mobile set top box can be in either [the docking station or mobile computing device]."  (*Id.*)  Roku's construction excludes these embodiments and for that reason it should be rejected.

Roku's reliance on the '223 Patent's prosecution history is also misplaced.  Although Roku suggests that the patentee disclaimed a wireless connection through the "docking port" during prosecution, this is not supported by the actual history.  In fact, none of the statements in the prosecution history on which Roku relies constitute a disclaimer, let alone a "clear and unmistakable" disavowal of claim scope.

In responding to the Examiner's combination of two references—Tee and Kung— the patentee canceled independent claim 1 and substituted new independent claims 27 and 33 (D.I. 68-3 at MV3_Roku0000565-567).   In responding, the patentee noted that substituted claim 27 included:

> Among other features, independent claim 27 recites a mobile set top box that includes a docking port configured to accept a mobile computing device that has a native resolution of a first size format and receives media content from at least two different types of communications networks, and a processor coupled to an electronic storage that includes instructions that, when executed, cause the processor to receive media content in the first size format from an input, analyze the media content received from the input to determine an attribute of the media content, determine, based on the attribute of the media content and an attribute of a user of the mobile set top box, that the accessed media content is permitted to be provided to a display device, and scale the accessed media content from the first size format to a second size format to generate rescaled media content.

(Id. at MV3_Roku0000569.)  Using claim 27, the patentee distinguished the references on multiple

grounds.  For example, the patentee noted that "Tee disclose[d] that the mobile terminal 110 may relay a video stream to a remote device" but "[did] not disclose a mobile set top box that includes a docking port configured to receive a mobile computing device." (*Id.* at MV3_ROKU0000570.) The patentee further noted that in Tee, the "mobile terminal 110 is specifically a wireless terminal that includes a first wireless interface for receiving video data and a second wireless interface for transmitting video data." (*Id.*)  In addition, the patentee observed that Tee did not teach "analyzing the video data received by the first wireless interface of the mobile terminal 110 to determine an attribute of the video data" nor did it "determine that the video data is permitted to be provided to a device that is separate from his mobile terminal." (*Id.*)

In other words, the patentee argued that the cited combination did not disclose among other features:  (1) a mobile set top box that is capable of receiving video data, through either a wired or wireless connection, from a mobile computing device through the docking port as required by the claim; or (2) a processor that includes the claimed instructions such as analyzing the media content received from the input to determine an attribute of the media content.

Moreover, the language used by the patentee during prosecution history does not demonstrate that he intended to limit the scope of the "docking port configured to accept a mobile computing device" limitation.  The patentee said nothing to suggest that Tee failed to satisfy the claims because it failed to disclose only a wired or physical connection between the mobile set top box and the mobile computing device.  Roku cannot manufacture a clear and unmistakable disclaimer based on a subject never discussed in the prosecution history.  *See SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 881 (Fed. Cir. 2004) (silence is not disclaimer because "we can draw no inference from what [the patentees] did not argue") (internal citation omitted).

As further evidence that the patentee did not disclaim a mobile set top box that is capable

11

of receiving video data, through a wireless connection, from a mobile computing device through the docking port, in distinguishing Tee and Kung, the patentee amended, among other claims, dependent claim 22, which depends on claim 27:

> 22. (Currently Amended) The ~~system~~mobile set top box of ~~claim 2~~ claim 20, wherein ~~said~~ the mobile phone communicates with ~~said~~ the set top box via a first wireless or wired ~~technology~~ connection, and ~~said~~ the display device communicates with ~~said~~ the set top box via a second wireless or wired ~~technology~~connection.

(D.I. 68-3 at MV3_Roku565-567.)  A review of amended claim 22 shows that the invention covers both wired and wireless connection between the mobile set top box and a mobile phone.

Courts have found no clear and unmistakable disavowal when the prosecution history at best is ambiguous, such as when the prior art is distinguished on a multitude of grounds or the language used does not clearly limit claim scope.  *See nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1322 (Fed. Cir. 2006) (prosecution history did not support limiting claim term to "logical addresses" in part because the "inventor differentiated the invention from prior art of Mizhuar in several ways"); *Martek BioSciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1373 (Fed. Cir. 2009) (rejecting disclaimer in part because of "applicant's statements distinguishing the prior art at issue from the claimed invention on alternative grounds"); *Avid Tech.*, 812 F.3d at 1046-47 (statements regarding "central controller" susceptible to multiple interpretations were not a clear and unmistakable disclaimer).

For the reasons described above, the applicant never disclaimed the "docking port configured to accept a mobile computing device" limitation to exclude wireless connection between the mobile set top box and the mobile computing device.  Thus, Roku cannot, as it must, demonstrate that the patentee made "clear and unmistakable prosecution arguments limiting the meaning of a claim term in order to overcome a rejection," particularly because the patentee's prosecution statements are "subject to more than one reasonable interpretation, one of which is

consistent with a proffered meaning of the disputed term." *See SanDisk Corp. v. Memorex Prod., Inc.*, 415 F.3d 1278, 1286-1287 (Fed. Cir. 2005). Thus, Roku's proposed construction should be rejected.

### C.    "accepted in" (Claims 1 and 32)

| MV3's Construction | Roku's Construction |
| --- | --- |
| No construction necessary. Alternatively, the following is provided in the event the Court determines a construction is necessary: "connected through a wired or wireless connection" | "held in" |

**"configured to accept" (Claims 1, 23, 32, and 55)**

| MV3's Construction | Roku's Construction |
| --- | --- |
| No construction necessary. Alternatively, the following is provided in the event the Court determines a construction is necessary: "capable of connecting through a wired or wireless connection" | "designed to hold" |

As discussed in MV3's Opening Claim Construction Brief, the terms "accepted in" and "configured to accept" concerns the wired or wireless connection of various limitations—*e.g.*, docking port and mobile computing device and docking port and display device—in the context of the claimed invention. (D.I. 64 at 6; Schonfeld Decl. at ¶ 38.) For example, claims 1 and 32 of the '223 Patent state: (1) "a docking port ***configured to accept*** a mobile computing device; and (2) "a mobile device input that receives media content from the mobile computing device ***accepted in*** the docking port." (Emphasis added.)

Roku's proposed construction is flawed as it improperly seeks to import a limitation on the terms "accepted in" and "configured to accept"—*e.g.*, requiring that the mobile device be *held in* the docking port. Roku's proposed construction requiring that the terms "held in" and "configured to hold" be read into the claims are not supported by the specification of the '223 Patent. For example, "held in" implies that the connection between the mobile device and the docking port

not allow wired or wireless connection.  Such a construction is counter to both the claims and specification of the '223 Patent.  Indeed, Roku's proposed construction would eliminate both embodiments and claims of the '223 patent, which disclose connection through both a wired and wireless connection.

Further, Roku's extrinsic evidence is in accord as it shows that "accepted in" and "configured to accept" is not limited to a physical relationship as suggested by Roku.  For example the cited Oxford Dictionary defines "accept" as "receive as adequate, valid, or suitable."  (D.I. 68-13.)  Further, the cited Cambridge Dictionary "in" as "positioned inside or ***within the limits of something***, or contained, surrounded, or enclosed by something.  (D.I. 68-12) (Emphasis added.)  In other words, Roku's definition is more narrow than the very extrinsic evidence that it relies on.

As previously discussed, Roku mischaracterizes Figures 2 through 4 because the specification explains that the figures disclose an "integrated" mobile phone.  ('223 Patent at 5:59-63.)  As MV3's Opening Claim Construction Brief explained, the specification details how the "mobile phone can connect to the docking station through a wired or wireless connection."  Further, neither the claims nor the specification disclose a "mobile phone held in a cradle sized to fit the phone" as Roku asserts.

And as previously discussed, the applicant never disclaimed the "docking port configured to accept a mobile computing device" limitation to exclude wireless connection between the mobile set top box and the mobile computing device

Thus, the Court should not insert the extraneous limitation of "held in" into the construction of "accepted in" and should instead construe the term to mean "connected through a wired or wireless connection."

14

### D.      "mobile set top box" (All Asserted Claims)

| MV3's Construction | Roku's Construction |
|---|---|
| No construction needed as the preamble is not limiting.<br><br>Alternatively, the following is provided in the event the Court determines a construction is necessary: "hardware and/or software that combines the functionality of a set top box and a mobile communication system" | "a device that converts an input television signal to an output signal to a television set and also permits content from a mobile computing device to be displayed on the same television set to which the device is connected" |

Roku fails to defend its assertion that "mobile set top box" is limiting in all the asserted claims of the '223 Patent.  The *Catalina Marketing* case cited by Roku is instructive to explain why the preambles of all the asserted claims are not limiting.  *See generally Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002).  As stated therein, "a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'"  *Id.* at 808.  Moreover, "[a] preamble is not regarded as limiting ... when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention."  *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358-59 (Fed. Cir. 2010) (quoting *Catalina Marketing*, 289 F.3d at 809).  For example, *IMS Technology, Inc. v. Haas Automation, Inc.* involved the preamble, "A programmable microcomputer control apparatus... comprising."  *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1427 (Fed. Cir. 2000).  The Federal Circuit ruled that the preamble phrase "control apparatus" did not limit the claim because the claim body "completely set forth the invention," and the preamble phrase "merely gives a descriptive name to the set of limitations" in the claim body.  *Id.* at 1434.

Roku's proposed construction ignores these principles.  For example, the '223 Patent is directed toward a system and method for combining the functionality of a set top box and a mobile computing device using a mobile set top box, and claims 1 and 32 and their asserted dependent

claims include in their preamble the phrase "[a] mobile set top box."  Here, the term "mobile set top box" merely gives a name to the claim structure, which does not make the term a limitation. *Am. Med. Sys.*, 618 F.3d at 1359 (preamble phrase does not limit claim scope where it merely provides a descriptive name for the invention set forth in the bodies of the claims)   For instance, independent claims 1 and 32 comprise a docking port, which includes a mobile device input, for connecting the mobile communicating device, a video processor, the steps of upconversion, and an output.  Consequently, the term "mobile set top box" merely describes the environment in which the invention is intended to operate, and recites no structure that is required or additional to those recited in the bodies of the claims.

To support its preamble limiting argument, Roku mischaracterizes the prosecution history. First, the amendments to the claims during the prosecution reveal that it did not rely on the preambles to distinguish the claimed invention.  Specifically, during prosecution, the Patent Office rejected claims over Tee in view of Kung.  (D.I. 68-3 at MV3_ROKU0000569.)  The prosecuting attorney responded by canceling the pending independent claim 1 and substituting new claims.  *Id*. (compare canceled claim 1 with new independent claim 27).   And rather than attempting to distinguish the claimed invention based on the preamble, the prosecuting attorney relied on the structural components to distinguish the cited references.  In particular, the response to the Office Action states that:

> As such, neither Tee nor Kung describes or suggests a mobile set top box that includes a docking port configured to accept a mobile computing device that has a native resolution of a first size format and receives media content from at least two different types of communication networks …, as recited in independent claim 27. Further, it would not have been obvious to modify Tee to include a docking station having the features recited in claim 27 ….

(*Id*. at MV3_ROKU0000570.)

16

Indeed, these new limitations were placed ***in the body of the claims***.  And Roku does not dispute that the body of the claim includes a structurally complete invention.

Roku also asserts that the preamble is limiting because independent claims 1 and 32 include the term "mobile set top box" in the bodies of the claim.  (D.I. 68 at 19.)  However, as previously discussed, the bodies of the claims make clear the systems and methods are configured to combine the functionality of a set top box and a mobile computing device using a named structure—a mobile set top box.  In other words, the use of the term, "mobile set top box," in the preamble is duplicative of the language in the bodies of the claims.  *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1288-89 (Fed. Cir. 2008) ("If [the preamble] is reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim . . . we do not construe it to be a separate limitation.").

MV3 believes no construction is necessary for the asserted claims that include the term "mobile set top box" in the preamble because the preamble is not limiting.  With respect to the independent method claim 30, which only uses the term in the claim's body, MV3 believes the term, while used in this specific claim, needs no construction because the term is easily understood from the word itself, as reflected in the specification of the '223 Patent.  (*See*, *e.g.*, '223 Patent at 2:65-3:40.)  If the Court determines that the term "mobile set top box" requires a construction, the Court should choose MV3's simple construction that correctly construes the meaning to a person of ordinary skill, while Roku's construction improperly imports numerous limitations into the claim.  In particular, Roku attempts to read in additional limitations such as a "television set." Such a proposed construction violates the doctrine of claim differentiation given that, for example, dependent claims 5 and 37 state that "the display device is one of a television (TV), monitor, or projector."  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed.Cir. 2004)

("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest".)  And as Roku admits in its Opening Brief, "[a] monitor, a projector, and a TV are very different items."  (D.I. 68 at 3.)  Thus, Roku's proposed construction should be rejected.

### E.   "adaptive circuitry" (Claims 1, 30, 32)

| MV3's Construction | Roku's Construction |
| --- | --- |
| No construction necessary.  Alternatively, the following is provided in the event the Court determines a construction is necessary: "circuitry that is adapted to process the media content transmitted from unicast and multicast broadcasts" | "a circuit that adjusts the operational characteristics of its components based on changes in its input signal" |

Roku does not dispute that its proposed construction finds no support in the claim language or the specification.  Instead, Roku's only support for its reading "a circuit that adjusts the operational characteristics of its components based on changes in its input signal" into the '223 Patent  is extrinsic evidence—the testimony of Dr. Akl.  Roku's decision to rely solely on Dr. Akl's testimony for its construction of "adaptive circuitry" and ignore the surrounding claim language is contrary to *Phillips*.

As discussed in MV3's Opening Claim Construction Brief, the Court does not need to construe "adaptive circuit" because the term is effectively defined by the surrounding claim language.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 & 1323 (Fed. Cir. 2005) (ruling that the claims define the scope of patent protection).  For example, Claims 1, 30, and 32 describe the "adaptive circuitry" as circuity that "process[es] the media content transmitted from unicast and multicast broadcasts."  The claims further make clear that the function of the "adaptive circuity" is implemented in the "video processor."  ("the video processor including adaptive circuitry to process the media content transmitted from unicast and multicast broadcasts").

The  fact  that  Roku's  proposed  construction  uses  the  terms  "a circuit",  "adjust,"

"operational characteristics," "components," and "input signal" to define "adaptive circuitry" confirms that it seeks to add numerous limitations to—and thereby change the meaning of—a term. *See Scripps Clinic & Res. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991) (the purpose of claim construction is to interpret claim language to explain and understand—but not change—the scope of a claim). In particular, requiring the claimed "adaptive circuitry" to "adjust[] the operational characteristics of its components based on changes in its input signal" adds extraneous limitations, especially considering that not one claim, nor the specification, nor the prosecution history mentions this added functionality. Roku's construction serves no purpose but to narrow the claims and generate ambiguity. Furthermore, as discussed in MV3's Opening Claim Construction Brief, the Court should reject Roku's proposed construction because it contradicts the '223 Patent's specification. *See Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (reversing claim construction that was inconsistent with specification).

Thus, where, as here, the meaning of the words actually appearing in the claim are not disputed, it is error to import limitations into the claim in order to provide structures capable of achieving the recited objectives in the patent specification. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988) (holding that it is improper to read a limitation "into a claim from the specification wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim."). Roku's exclusive reliance upon extrinsic evidence that is, at best, removed from the context of the '223 Patent cannot alter the claims clear description of "adaptive circuitry." Therefore, Roku's proposed construction should be rejected.

F.    **"determining the native display resolution of the second size format of the display device based on a response resulting from the query of the display device" (Claims 1 and 30)**

| MV3's Construction | Roku's Construction |
|---|---|
| No construction necessary.  Alternatively, the following is provided in the event the Court determines a construction is necessary: "determining the maximal allowed display resolution of the second size format of the display device based on a response resulting from a request for information from the display device" | "using the particular data provided by the display device to calculate the number of physical horizontal and vertical pixels in the screen of the display device" |

The intrinsic evidence does not limit "native resolution" to the number of physical and horizontal pixels contained within a screen as argued by Roku.  Although the '223 Patent mentions the up-converting of content intended for a mobile computing device and the reformatting of content to fit any display ('223 Patent at 2:58-61, 4:13-15) that does not automatically mean that "native display resolution" is exclusively defined as the number of physical and horizontal pixels. As discussed in MV3's Opening Claim Construction Brief, the '223 Patent confirms that resolution is **not** limited to the number of pixels, as the specification mentions "HD-TV," which refers to not just pixel numbers but also interlaced ("1080i") and progressive ("1080p") scanning.

Roku's extrinsic evidence is in accord.  For instance, Roku's definition from Webster's New World Telecom Dictionary defines resolution in terms of "areal density" of the pixels, not just the number.  (D.I. 68-18.)  A video image with a certain number of pixels displayed on a small screen (*i.e.*, mobile phone) will have a noticeably different amount of detail than the same image displayed on a big screen television.  This is why Roku's extrinsic evidence includes areal density as a metric for defining resolution.

Roku's other restriction—replacing "determining" with "calculating" and "query" with "using the particular data provided"—improperly narrows the claims.  There is no language in the specification to support this construction, nor does the prosecution history show any intent by the

20

inventor to narrow the terms "determining" and "query." Narrowing claim terms from their common and ordinary meaning requires clear disavowal of claim coverage. *See Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1211-1212 (Fed. Cir. 2008). Moreover, the substitution of "calculating" in place of "determining" and the substitution of "using the particular data provided" in place of "query" is unhelpful and provides "no meaningful guidance as to the meaning of the term." (D.I. 64 at 11.)

Despite not being explicitly included in its construction, Roku's argument suggesting an additional restriction—linking two independent claim limitations—should be similarly rejected. Roku proposes "a step-wise construction where the 'querying' step must be completed before the specific information achieved can be used in the 'determining' step." In particular, Roku's new restriction would require the "querying the display device" limitation to be completed before the "determining the native display resolution of the second size format of the display device" limitation. This all-new temporal requirement is found nowhere in the claim element being construed. Roku's sole argument is that "results from the querying step to be obtained" is "then used in a separate step to determine the native resolution of the display device." These two limitations, however, are independent, and there is no evidence that the latter refers back to the former. For instance, the claimed limitations include circumstances where the native display resolution of the second size format is determined concurrently or after a response resulting from the query of the display device.

Thus, Roku's proposed construction should be rejected.

G.     **"determining, based on the validity of the user, that the received first media content is permitted to be provided to the display device" (Claims 1, 30, 32)**

| MV3's Construction | Roku's Construction |
|---|---|
| No construction necessary. Alternatively, the following is provided in the event the Court | "establishing whether the first media content is permitted to be provided to the display |

| | |
|---|---|
| determines a construction is necessary: "determining based on the validity of the user that the received first media content is allowed to be provided to the display device" | device after verifying the validity of the mobile computing device user" |

As with the "determining the native display resolution of the second size format of the display device based on a response resulting from the query of the display device" limitation, Roku's improper temporal requirement should be rejected. Roku's restriction—replacing "based on" with "after"—conflicts with the claim language and improperly narrows the claims. As stated in MV3's Opening Claim Construction Brief, the term "based on" has a well-known meaning, and a decision that occurs "after" certain criteria is met is a different requirement altogether. (D.I. 64 at 17.) For instance, instructions for "determining, based on the validity of the user, that the received first media content is permitted to be provided to the display device" can include circumstances where the validity of the user is determined concurrently or after providing the media content to the display device. (*Id.*)

Roku's reliance on the prosecution history and the IPR is also misplaced. (D.I. 68 at 28-29.) It is true that the "authenticating the validity of a user associated with the mobile computing device" limitation and the "determining, based on the validity of the user, that the received first media content is permitted to be provided to the display device" are separate because each are independent limitations. However, just because limitations are separate does not require that the limitations be linked in order to incorporate a narrowing temporal requirement.

Thus, there is no language in the specification to support Roku's proposed construction, nor does the prosecution history show any intent by the inventor to narrow the term "based on" from its plain and ordinary meaning. Therefore, Roku's proposed construction should be rejected.

### H.    "multicast broadcasts" (Claims 1, 30, and 32)

| MV3's Construction | Roku's Construction |
|---|---|
| No construction necessary.  Alternatively, the | "transmitting from one sender simultaneously |

| following is provided in the event the Court determines a construction is necessary: "communication to one or more recipients" | to more than one receiver" |
|---|---|

Roku would have the Court adopt a very narrow construction of "multicast broadcasts" by limiting the term to "transmitting from one sender simultaneously." Roku's argument in favor of its construction is not based on anything in the '223 Patent or prosecution history. There is no mention in the intrinsic evidence that a "multicast broadcast" is limited to "transmitting from one sender simultaneously." Further, Dr. Akl's deposition confirms the ambiguity of the word "simultaneously" as Dr. Akl could not confirm whether a single server could send multiple communications simultaneously. (Ex. D, Akl Dep. Tr. at 69:17-73:4.) Rather, Roku's position is supported solely by extrinsic evidence in the form of a conveniently selected narrow dictionary definition taken in isolation. As shown in MV3's Opening Claim Construction Brief, there are different definitions of "multicast broadcast" that are not as narrow as the one selected by Roku. (D.I. 64 at 22-24; *see also* Schonfeld Decl. at ¶¶ 44-45.) For example, multicast can include more than one sender communicating to more than one recipient, and certain applications of multicast involve communication to more than one recipient "nearly" simultaneously. (D.I. 64 at 23.)

In *Phillips*, the Federal Circuit cautioned against the blind adoption of dictionary definitions and held that any use of extrinsic evidence must be consistent with the intrinsic evidence. 415 F.3d at 1319, 1321. Here, there is nothing in the patent or its prosecution history which supports the adoption of a narrow dictionary definition of "multicast broadcasts." Specifically, there is nothing which in any way suggests that it is limited to "transmitting from one sender simultaneously." Roku would have the Court adopt a narrow dictionary definition even though there is not anything in the '223 Patent that supports the narrow definition. On the other hand, more general dictionary definitions of "multicast broadcasts," which are not limited to "transmitting from one sender simultaneously," are fully consistent with the '223 Patent and its

23

prosecution history.  Thus, Roku's proposed construction should be rejected.

## V.  CONCLUSION

For all the foregoing reasons, the Court should reject Roku's proposed claim constructions and adopt those set forth in MV3's Opening Claim Construction Brief.

Dated:  June 12, 2019                         RESPECTFULLY SUBMITTED,

By:  */s/ J. Mark Mann*_____
     J. Mark Mann (Texas Bar No. 12926150)
     mark@themannfirm.com
     G. Blake Thompson (Texas Bar No. 24042033)
     blake@themannfirm.com
     **MANN | TINDEL | THOMPSON**
     300 W. Main Street
     Henderson, Texas 75652
     913 Franklin Ave., Suite 201
     Waco, Texas 76701
     Telephone:  (903) 657-8540
     Facsimile: (903) 657-6003

     Andy Tindel (Texas Bar No. 20054500)
     atindel@andytindel.com
     **MANN | TINDEL | THOMPSON**
     112 E. Line Street, Suite 304
     Tyler, Texas 75702
     Telephone: (903) 596-0900
     Facsimile: (903) 596-0909

     Craig D. Cherry (Texas Bar No. 24012419)
     ccherry@haleyolson.com
     **HALEY & OLSON, P.C.**
     100 N. Ritchie Road, Suite 200
     Waco, Texas 76701
     Telephone: (254) 776-3336
     Facsimile: (254) 776-6823

     Jonathan K. Waldrop (CA Bar No. 297903)
     (Admitted in this District)
     jwaldrop@kasowitz.com
     Darcy L. Jones (CA Bar No. 309474)
     (Admitted in this District)
     djones@kasowitz.com
     Marcus A. Barber (CA Bar No. 307361)
     (Admitted in this District)
     mbarber@kasowitz.com
     John W. Downing (CA Bar No. 252850)
     (Admitted in this District)
     jdowning@kasowitz.com
     Heather S. Kim (CA Bar No. 277686)
     (Admitted in this District)
     hkim@kasowitz.com
     Jack Shaw (CA Bar No. 309382)
     (Admitted in this District)
     jshaw@kasowitz.com
     Gurtej Singh (CA Bar No. 286547)
     (Admitted in this District)
     gsingh@kasowitz.com

**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Daniel C. Miller (NY Bar No. 4232773)
(*pro hac vice*)
**KASOWITZ BENSON TORRES LLP**
1399 New York Avenue NW, Suite 201
Washington, DC  20005
Telephone:  (202) 760-3400
Facsimile:   (202) 760-3401
Email: dcmiller@kasowitz.com

Rodney R. Miller (Texas Bar No. 24070280)
(Admitted in this District)
**KASOWITZ BENSON TORRES LLP**
1349 West Peachtree Street N.W., Suite 1500
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081
Email: rmiller@kasowitz.com

**Attorneys for Plaintiff**
**MV3 Partners LLC.**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE] — Document Filing System, to all counsel of record, on this 12th day of June, 2019.

*/s/ J. Mark Mann*
J. Mark Mann