UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| MV3 PARTNERS LLC,<br><br>    Plaintiff,<br>v.<br><br>ROKU, INC.,<br><br>    Defendant. | Civil Action No.: W-6:18-cv-00308-ADA<br><br>**JURY TRIAL DEMANDED** |

**ROKU'S OPPOSED MOTION TO PRECLUDE MV3 AND
DR. DANIEL SCHONFELD FROM RELYING ON THE DOCTRINE OF
EQUIVALENTS FOR THE "QUERYING THE DISPLAY DEVICE" LIMITATION**

As Roku indicated in its summary judgment motion, (Roku Summ. J. Mot. (Dkt. 142) at 10), it is moving to preclude a new MV3 doctrine of equivalents theory. During the recent deposition of Dr. Schonfeld, MV3's technical expert, he attempted to account for the lack of a query in a Roku TV by introducing, for the first time, a doctrine of equivalents theory for the "querying the display device" limitations of the '223 patent's claims. MV3 did not include this theory in its final infringement contentions, nor was it in Dr. Schonfeld's expert report.

MV3 already moved — over two months ago, on January 16, after fact discovery was complete and after opening expert reports were finalized and being exchanged — to amend its infringement contentions to add a different, new theory, the DIAL operation, to its case. MV3 and Dr. Schonfeld should be precluded from introducing yet another new infringement theory under the doctrine of equivalents at this stage of the case.

Now, it is way too late for MV3 to add another new theory to the case. Final infringement contentions were served over six months ago. Fact discovery closed almost three months ago. Dr. Schonfeld's expert report was served over two months ago. And, this Court issued an order over a year ago in response to Roku's motion to dismiss MV3's complaint for its failure to identify the limitations it alleged are met under the doctrine of equivalents, (Dkt. 26), instructing MV3 to proffer its infringement contentions in good faith, (Dkt. 35).

There is no excuse for MV3 to have waited until the deposition of its expert to add a "querying the display device" doctrine of equivalents theory to the case. In fact, even prior to the beginning of fact discovery, Roku provided to MV3 hardware reference guides containing schematics that show that the display panel of a Roku TV is not queried.

Allowing MV3 to add a "querying the display device" doctrine of equivalents theory to the case now would also severely prejudice Roku. Roku did not have timely notice of the new

1

position, and has not been able to test and develop its defenses to the position through the discovery process. Nor will its expert, Dr. Russ, have the benefit of the discovery process to which MV3's new doctrine of equivalents theory should have been subjected and the final infringement contentions through which the theory should have been expressed.

Counsel for Roku conferred with counsel for MV3 about this motion by email on March 24, 2020, and the issue was not resolved.

## I.   BACKGROUND

MV3 filed the present action on October 17, 2018, alleging infringement of U.S. Patent No. 8,863,223 (the '223 patent). Roku filed a motion to dismiss the complaint due to MV3's failure to identify any limitation for which it alleged the doctrine of equivalents was met. (Dkt. 26). Roku's motion was denied. In the denial, however, the Court indicated, "the Court will . . . set[] a deadline for Plaintiff to proffer its infringement contentions, which the Court anticipates Plaintiff will provide in good faith. (Dkt. 35). The Court then, through its procedural schedule, set a deadline of September 18, 2019, for MV3's service of final infringement contentions and re-iterated a February 4, 2019, service date for preliminary infringement contentions it had previously set. (Dkt. 51.) Roku later agreed to MV3's request to extend the final infringement contentions date to September 24, 2019.

On February 4, 2019, MV3 served its initial infringement contentions, and on September 24, 2019, MV3 served its final infringement contentions. Neither of MV3's infringement contentions contain any doctrine of equivalents arguments, including any for the "querying the display" claim requirement. (Ex. 1, Plaintiff MV3 Partners LLC's Initial Disclosure of Asserted Claims, Accused Instrumentalities, and Infringement Contentions, 64-65; Ex. 2, Plaintiff MV3 Partners LLC's Final Initial Disclosure of Asserted Claims, Accused Instrumentalities, and

Infringement Contentions, at 77-79.)  Instead, MV3's initial and final infringement contentions allege that Roku products meet this limitation literally.  (*Id.*)

On January 15, 2020, MV3 served its expert report on infringement.  Dr. Schonfeld's expert report is silent on any doctrine of equivalents argument for the "querying the display device" limitation.  (Ex. 3, Opening Report of Dan Schonfeld, Ph.D. at ¶ 370, charts at 39-42.)

On March 13, 2020, during his deposition, Dr. Schonfeld, for the first time, attempted to present a new doctrine of equivalents theory for the "querying the display device" limitation to account for the lack of a query in a Roku TV.  Dr. Schonfeld testified that "[m]y understanding from reading Dr. Russ' report is he claims that that cannot be done because the panel itself has no logic to store any parameters; it's just glass.  That's not necessarily my general understanding. But to the extent that he's correct, then I would be -- then I believe this would be met under the doctrine of equivalents because in that case the --." (Ex. 4, Schonfeld Tr. at 425:5–425:12.)

## II.  THE LAW — NOTICE AND DISCLOSURE REQUIRED FOR INFRINGEMENT THEORIES

Fed. R. Civ. P. 16 prescribes that a scheduling order may only be modified for good cause and with the judge's consent.  *See* Fed. R. Civ. P. 16(b)(4).  The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.  *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) ("good cause" to amend infringement contentions "requires a showing of diligence").

MV3 is required, as demonstrated by MV3's January 16, 2020, motion to amend its final infringement contentions, to seek leave of Court to add a new infringement theory to the case. This is consistent with the scheduling order in this case, which states that "the parties may amend

3

<u>preliminary infringement contentions</u> . . . without leave of the court so long as counsel certifies that it undertook reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served and should do so seasonably upon identifying any such material." (Dkt. 51, n1 (emphasis added).)

The purpose of infringement contentions is to provide notice of the plaintiff's theories of infringement so issues are identified for discovery, invalidity positions, summary judgment, and trial. *E.g., Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 707 (E.D. Tex. 2008); *O2 Micro*, 467 F.3d at 1365. Infringement contentions must set forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves. *Loggerhead Tools, LLC v. Sears Holdings Corp.*, No. 12-cv-9033, 2016 LEXIS 127629 *7 (E.D. Ill. Sep. 20, 2016).

### III. MV3 IS PRECLUDED FROM ADDING A NEW DOCTRINE OF EQUIVALENTS INFRINGEMENT THEORY

Neither of MV3's infringement contentions contain any doctrine of equivalents arguments, including any for the "querying the display" claim requirement. (Ex. 1, Plaintiff MV3 Partners LLC's Initial Disclosure of Asserted Claims, Accused Instrumentalities, and Infringement Contentions at 64-65; Ex. 2, Plaintiff MV3 Partners LLC's Final Initial Disclosure of Asserted Claims, Accused Instrumentalities, and Infringement Contentions, at 77-79.) Instead, MV3's initial and final infringement contentions allege that Roku products meet this limitation literally. (*Id.*)

MV3 did not, at any point in time, move to amend its infringement contentions to add a doctrine of equivalents theory for the "querying the display" limitation. Notably, MV3 did move to amend its infringement contentions on January 15 (on the same date expert reports were being exchanged) to add new infringement theories. (Dkt. 93.) The January 15 motion that was filed

two months ago, however, had nothing to do with the "querying the display" argument. It did not include or discuss the "querying the display" doctrine of equivalents argument.

Good cause cannot be met. *O2 Micro*, 467 F.3d at 1366. Further, under the circumstances, MV3 did not exercise good faith in including doctrine of equivalents infringement allegations in its infringement contentions. (Dkt. 35.) Here, there can be no showing of diligence by MV3. Allowing MV3 to add a new infringement theory, under the doctrine of equivalents, at this stage of the case would also severely prejudice Roku.

### A. There is No Explanation for MV3's Failure to Allege Its New Doctrine of Equivalents Theory Before Now

There is no explanation for MV3's failure to express a "query the display device" doctrine of equivalents theory prior to now. In particular, the reason that MV3 is attempting to raise a new theory at this time cannot be tied to it having a lack of information about Roku TVs. To the contrary, for example:

- In April 2019, prior to the start of fact discovery, Roku provided Roku TV reference guides to MV3. The reference guides contain a detailed description of the design and components of Roku TVs. They include board-level schematics that show that the display panel of a Roku TV is not queried.

- Roku produced detailed technical specifications. They included board-level schematics that show the components of Roku TVs, how the components are interconnected, and what signals travel between the components.

- Roku made its source code available at the outset of fact discovery. The source code Roku made available on September 9, 2019, includes the code for the operations for the Roku TV that establish that the panel of the TV is not queried.

- Roku produced critical components lists and bills of materials (BOMs) that identify exactly each component in the Roku TVs, including the type, manufacturer, and model number for each component.
- MV3 deposed two Roku corporate technical witnesses, Messrs. Mendenhall and Thomas, on October 11, 2019, and October 23, 2019. Those witnesses were prepared to answer MV3's questions about the components, including the panel, of a Roku TV. Both were asked about the components of a Roku TV and the operation of the components, and MV3 questioned Mr. Mendenhall about the board-level schematics, components, and the panels of Roku TVs.
- MV3 also deposed two Roku TV engineers, Messrs. Krakow and Wegesin, in December 2019. MV3 asked them about the board-level schematics, construct, design, components, and operation of the Roku TVs.

Stated more succinctly, MV3 had everything it needed to understand that the display panel of a Roku TV is not capable of being queried. In fact, prior to the beginning of fact discovery, Roku provided to MV3 hardware reference guides containing schematics that show that the display panel of a Roku TV is not queried.

### B. Roku Would Be Severely Prejudiced by the Addition of a New Doctrine of Equivalents Theory

The inclusion of MV3's new "querying the display device" doctrine of equivalents theory at this point in the case would be prejudicial to Roku. Neither Roku nor Dr. Russ, Roku's technical expert, has had an opportunity to even consider MV3's new theory.

Since Roku has not had notice of the new position, it has not been able to test and develop its defenses to the position through the discovery process. Nor has Dr. Russ had the

benefit of the discovery process to which MV3's new theory should have been subjected and the final infringement contentions through which the theory should have been expressed.

As part of the prejudice, Roku has not had the opportunity to explore through discovery the factual underpinnings (*e.g.,* interchangeability, function, way, and result) of the doctrine of equivalents fact question.  Roku has not been able to propound discovery requests, ask deposition questions, or seek information from outside resources on the subject.  Nor have Roku and Dr. Russ had an opportunity to search for, explore, and consider prior art that is necessary to inform the bounds through ensnarement of any doctrine of equivalents scope and also for the invalidity of the claims if they are expanded using the new theory.

## IV.  CONCLUSION

This Court should preclude MV3 and Dr. Schonfeld from introducing evidence or testimony relating to the new theory that the "querying the display device" limitation is met

under the doctrine of equivalents. The new theory is untimely, and its introduction would unfairly prejudice Roku.

Respectfully submitted,

/s/ Alexander J. Hadjis

Alexander J. Hadjis (*pro hac vice*)
Lisa M. Mandrusiak (*pro hac vice*)
Michael D. West (*pro hac vice*)
OBLON, MCCLELLAND, MAIER
 & NEUSTADT, L.L.P.,
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000
ahadjis@oblon.com
lmandrusiak@oblon.com
mwest@oblon.com

Richard D. Milvenan
State Bar No. 14171800
McGINNIS LOCHRIDGE LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000
rmilvenan@mcginnislaw.com

David N. Deaconson
State Bar No. 05673400
Pakis, Giotes, Page & Burleson, P.C.
400 Austin Avenue
Waco, TX 76701

ATTORNEYS FOR DEFENDANT
ROKU, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2020, I served a copy of this document by email to all counsel of record.

/s/ Lisa Mandrusiak
Lisa Mandrusiak