**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **MV3 PARTNERS LLC,** | § | |
| | § | **Civil Action No.: 6:18-cv-308-ADA** |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **ROKU, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## PROPOSED JOINT FINAL PRETRIAL ORDER

The Pretrial Conference is scheduled for May 20, 2020 at 9:00 a.m. in Waco, Texas. Pursuant to the Court's Scheduling Order (Dkt. 51) and Rule 16 of the Federal Rules of Civil Procedure, Plaintiff MV3 Partners LLC ("MV3") and Defendant Roku, Inc. ("Roku") (collectively, "Parties") submit this Joint Final Pretrial Order. Subject to the other rulings made at the Pretrial Conference, the Court enters this Order.

**A.     COUNSEL FOR THE PARTIES**

**Attorneys for Plaintiff MV3 Partners LLC:**

> J. Mark Mann (Texas Bar No. 12926150)
> mark@themannfirm.com
> G. Blake Thompson (Texas Bar No. 24042033)
> blake@themannfirm.com
> MANN | TINDEL | THOMPSON
> 300 W. Main Street
> Henderson, Texas 75652
> 913 Franklin Ave., Suite 201
> Waco, Texas 76701
> Telephone:  (903) 657-8540
> Facsimile: (903) 657-6003
>
> Andy Tindel (Texas Bar No. 20054500)

atindel@andytindel.com
MANN | TINDEL | THOMPSON
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@haleyolson.com
HALEY & OLSON, P.C.
100 N. Ritchie Road, Suite 200
Waco, Texas 76712
Telephone: (254) 776-3336
Facsimile: (254) 776-6823

Jonathan K. Waldrop (CA Bar No. 297903)
jwaldrop@kasowitz.com
Darcy L. Jones (CA Bar No. 309474)
djones@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
hkim@kasowitz.com
Jack Shaw (CA Bar No. 309382)
jshaw@kasowitz.com
ThucMinh Nguyen (CA Bar No. 304382)
(Admitted *pro hac vice*)
tnguyen@kasowitz.com
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Paul G. Williams (GA Bar No. 764925)
(Admitted *pro hac vice*)
pwilliams@kasowitz.com
KASOWITZ BENSON TORRES LLP
1349 West Peachtree Street N.W., Suite 1500
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081


**Attorneys for Defendant Roku, Inc.:**

David N. Deaconson
Texas Bar No. 05673400

PAKIS, GIOTES, PAGE & BURLESON, P.C.
P.O. Box 58
Waco, Texas 76703-0058
(254) 297-7300
deaconson@pakislaw.com

Richard D. Milvenan
Texas Bar No. 14171800
McGINNIS LOCHRIDGE LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000
rmilvenan@mcginnislaw.com

Darryl Adams
Texas Bar No. 00796101
SLAYDEN GRUBERT BEARD LLC
401 Congress Ave., Ste. 1650
Austin, Texas 78701
dadams@sgbfirm.com

Alexander J. Hadjis (*pro hac vice*)
Lisa M. Mandrusiak (*pro hac vice*)
Michael D. West (*pro hac vice*)
Tia D. Fenton (*pro hac vice*)
W. Todd Baker (*pro hac vice*)
OBLON, MCCLELLAND, MAIER
& NEUSTADT, L.L.P.
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000
ahadjis@oblon.com
lmandrusiak@oblon.com
mwest@oblon.com
tfenton@oblon.com
wtbaker@oblon.com

## B.    STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction of the action under Title 28, U.S.C. §§ 1331

and 1338(a), because this action arises under the Patent Laws of the United States, 35 U.S.C.

§ 1 *et seq.*  Subject matter jurisdiction, personal jurisdiction, and venue under 28 U.S.C. §§

1391(b) and 1400(b) are not disputed in this case.

3

## C.   NATURE OF ACTION

### 1.   MV3's Position

MV3 alleges that Roku has directly infringed U.S. Patent No. 8,863,223 ("the '223 Patent"), either literally and/or under the doctrine of equivalents, and has indirectly infringed the '223 Patent by inducing infringement by others.  MV3 is asserting claims 1, 15, 21, 23, 30, 32, 33, and 53 of the '223 Patent (the "Asserted Claims").  The accused products in this case are the Roku Ultra, Roku Express, Roku Express+, Roku Premiere, Roku Premiere+, Roku Streaming Stick, Roku Streaming Stick+, and Roku Smart Soundbar ("Roku Accused Players"), and Roku TVs (collectively, the "Roku Accused Products").

MV3 contends that Roku is precluded from asserting the defenses of prosecution history estoppel and claim limitation vitiation because Roku failed to raise them in its pleadings, during fact discovery, expert reports, or during expert discovery.  *See* MV3's Motion *in Limine* No. 4 to Exclude Certain References to Arguments Relating to Non-Infringement and Invalidity at 2-5.  MV3 also contends that Roku waived the lack of written description defense as it did not raise it in its claim construction briefing or at the July 19, 2019 *Markman* hearing.  (Dkts. 65, 72, 76, and 83.)

MV3 seeks damages that are adequate to compensate it for Roku's infringement, but in no event less than a reasonable royalty, which (1) may take the form of a lump sum amount constituting a paid up royalty for the life of the '223 Patent, or (2) may be based on the application of a royalty rate to a royalty base in which the royalty rate may take the form of (a) a percentage royalty rate (or rates) or (b) a per-unit royalty rate (or rates).  MV3 also seeks prejudgment interest from the date of infringement to the date of judgment, an on-going royalty for future infringement, any supplemental damages as appropriate, post-judgment interest and costs pursuant to 35 U.S.C. § 284, and attorneys' fees pursuant to 35 U.S.C. § 285.

### 2.    Roku's Position

Roku alleges that it does not infringe, directly or indirectly, any of claims 1, 15, 21, 23, 30, 32, 33, and 53 of the '223 Patent, literally or under the doctrine of equivalents.  Roku also alleges that prosecution history estoppel and claim limitation vitiation prevent MV3 from relying on the doctrine of equivalents.  Roku is entitled to findings and declaratory judgments of non-infringement of each of the asserted claims.

Roku further alleges that the claims of the '223 Patent are invalid as anticipated, obvious, and for violating the written description requirement.  Roku also alleges that the '223 Patent is unenforceable by virtue of MV3's inequitable conduct in the preparation and prosecution of the patent.  Roku is entitled to findings and declaratory judgments of invalidity of each of the asserted claims and unenforceability of the '223 Patent.

MV3 is not entitled to an award of damages.  In the event Roku is found to infringe an asserted claim that is not invalid and not unenforceable, damages, if any, are limited to a reasonable running royalty applied up to the date of trial and are limited to the value of the infringing Roku player and/or Roku TV products apportioned down to a reasonable royalty to account for the accused screen mirroring and/or DIAL features supported by those products.

Roku requests its costs, expenses, and attorney fees, including those based on a finding that this is an exceptional case under 35 U.S.C. § 285.

## D.    CONTENTIONS OF THE PARTIES

### 1.    MV3's Statement of Contentions

By providing these contentions, MV3 does not concede that all of these issues are appropriate for trial.  In addition, MV3 does not waive any of its pending motions *in limine*.

a.    MV3 is the owner of all rights, title, and interest in and to the '223 Patent and possesses all rights of recovery under the '223 Patent.

b.      Claims 1, 15, 21, 23, 30, 32, 33, and 53 of the '223 Patent are at issue and asserted in this case against Roku, Inc.

c.      MV3 accuses the following Roku media player products: Roku Ultra, Roku Express, Roku Express+, Roku Premiere, Roku Premiere+, Roku Streaming Stick, Roku Streaming Stick+, and Roku Smart Soundbar, and Roku TVs of infringing its '223 Patent.

d.      In March 2014, Roku first released Roku Accused Players with screen mirroring and casting ("the accused functionalities").

e.      In August 2014, Roku TVs with the accused functionalities were released.

f.      MV3 contends that Roku has directly infringed claims 1, 15, 21, 23, 30, 32, 33, and 53 of the '223 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling, or importing into the United States the Roku Accused Products.

g.      MV3 contends that Roku has indirectly infringed claims 1, 15, 21, 23, 30, 32, 33, and 53 of the '223 Patent under 35 U.S.C. § 271(b), by inducing the infringement of others, including end users, third-party developers, and Roku's service operators through licensing relationships and partners through Roku's Roku TV licensing program, in making, using, offering to sell, and/or selling the Roku Accused Products and services in an infringing manner. For example, Roku is actively inducing infringement of others by providing live TV streaming third-party apps, integrating Roku's infringing technology into third-party Smart TVs, and providing user manuals, access to support, training, and instructions for its infringing products. As another example, Roku has provided its partners with technical documents that instruct the partners on how to design and manufacture infringing Roku TVs.

h.      MV3 asserts that the '223 Patent is directed to a device that combines the

6

functionality of a set top box and a mobile communication system.  The device receives media content from a mobile device through a wired or wireless connection, upconverts the media content to the maximum allowable display resolution for the connected display device, and transmits the upconverted media content to the connected display device through a wired or wireless connection.

i.      MV3 contends that each Roku Accused Product provides the functionality of a set top box and a mobile communication system.  Each Roku Accused Product receives media content from a mobile device, upconverts the media content to the maximum allowable display resolution for the display device, and transmits the upconverted media content for displaying.  Each Roku Accused Product also receives television content, renders it, and transmits it for displaying.

j.      The '223 Patent discloses that various prior art references attempted to combine the functionality of a set top box and a mobile phone but had very limited applications.  ('223 Patent at 1:65-2:28.)  It also explains that there were limitations such as insufficient bandwidth to support 1080p resolution (full HD).  ('223 Patent at 2:30-46.)

k.      The set top box taught by the '223 Patent claims a technical solution to such problems by combining the functionality of a set top box and a mobile communication system such that content intended for a mobile phone can be upconverted for display on a larger display.  ('223 Patent at 2:53-62.)

l.      MV3 contends that the inventions embodied by the Asserted Claims of the '223 Patent are entitled to the priority date of December 31, 2008.

m.      The patented technology at issue in this case relates to screen mirroring and casting that allow users to stream media content from their mobile device that is upconverted

and then sent to a display device by screen mirroring or casting content displayed on the mobile device ("accused casting functionalities").

n.      MV3 asserts that the Roku Accused Products implement the accused casting functionalities.

o.      Roku's product literature and websites describing the accused casting functionalities are substantially identical across all of the Roku Accused Products.  Roku's source code production also demonstrates that the Roku Accused Products all behave substantially the same with respect to the relevant functionality.  Of note, Roku produced only one set of source code for all Roku Accused Products.[1]

p.      Each of the Roku Accused Products practices the '223 Patent at least because they implement the accused casting functionalities, implement adaptive protocols, upconvert media content from the mobile device, and transmit the upconverted media content for displaying.

i.      For example, the '223 Patent discloses a mobile set top box, which the Court construed to mean "a device that combines the functionality of a set top box and a mobile communication system."  The Roku Accused Products each contain functionality that works as a mobile set top box.  *See, e.g.,* [ROKU00009465-ROKU00009559 at ROKU00009532]. Moreover, the Roku Accused Products combine the functionality of a set top box and a mobile communication system.

ii.      The '223 Patent discloses a mobile device input that receives media content from the mobile computing device (*e.g.,* mobile phone) accepted in the docking port.

---

[1] Per Paragraph E(1) below, the Parties stipulate that the source code Roku produced in this case is representative of the source code of all Roku Accused Products.

('223 Patent, Claim 1.)  Each of the Roku Accused Products includes a mobile device input (*e.g.*, an input allowing for a wireless connection between the Roku Accused Players and mobile device, and the Roku TV and mobile devices), and receives media content (*e.g.*, recorded video received by communication means such as email, downloading, or streaming from the Internet; and video obtained through Applications, such as Hulu Live, Netflix, and YouTube, which are available via the Google Play Store) from the mobile computing device (*e.g.*, mobile phone) accepted in the docking port.  *See, e.g.*, MV3_ROKU0006063-MV3_ROKU0006067.

       iii.       The '223 Patent discloses a television signal input that receives at least one type of television signal.  ('223 Patent, Claim 1.)  Each of the Roku Accused Products includes a television signal input (*e.g.*, input allowing for a wireless connection between the Roku Accused Players and a  network, and the Roku TV and a WiFi network) that receives at least one type of television signal  (*e.g.*, live streaming of television content obtained through applications on the Roku Streaming Media Devices and Roku TV, such as Hulu Live, Netflix, and YouTube, which are available on the Roku Streaming Media Device and Roku TV; and/or live-streaming of television content received from the RF coaxial interface on Roku TV).  Additionally, Roku TVs include a tuner input.

       iv.       The '223 Patent discloses an upconversion process from the mobile computing device to a separate display device of media content.  ('223 Patent, Claim 1.)  Each of the Roku Accused Devices has a process that is enabled to execute an upconversion process (*e.g.*, video upscaling from 720p to 1080p HD and/or from 1080p HD to 4K resolution) of media content from a mobile computing device (*e.g.*, mobile phone), and to transmit the

upconverted media to a separate display device (*e.g.*, an LCD display; an LED display of the TCL 50" Roku TV).

q.     Roku actively induces infringement by encouraging the infringement of the Roku Accused Products by third parties, including, for example, its partners and end-users.

i.     For example, Roku provides its OEM partners with technical materials that instruct Roku's partners on how to design and manufacture Roku TVs.  Further, Roku's licensing agreements with OEMs provide Roku with control over the technical design and appearance of the product.

ii.     Roku TV also includes certain components that are configured by Roku to infringe the '223 Patent and that are, subsequently, implemented by licensed OEMs in Roku TV.

iii.     Moreover, Roku instructs end-users of Roku TV on how to use the accused casting functionalities and cast media content from mobile phones to Roku TV.  *See, e.g.*, MV3_ROKU0006063- MV3_ROKU0006067.

iv.     Further, Roku instructs developers on how to implement software and/or applications (such as Channels) that practice the accused functionalities and encourages third-parties to offer channels on the Roku OS.

v.     Roku knew or should have known that such encouragement would induce infringement.  Such induced infringement occurred at least since Roku became aware of the '223 Patent.

r.     MV3 contends that it has been damaged by Roku's conduct and is entitled to damages adequate to compensate for the infringement by Roku, but in no event less than a reasonable royalty, which (1) may take the form of a lump sum amount constituting a paid up

royalty for the life of the '223 Patent, or (2) may be based on the application of a royalty rate to a royalty base in which the royalty rate may take the form of (a) a percentage royalty rate (or rates) or (b) a per-unit royalty rate (or rates), together with prejudgment interest from the date of infringement to the date of judgment, an on-going royalty for future infringement, any supplemental damages as appropriate, enhanced damages pursuant to 35 U.S.C. § 284,[2] and post-judgment interest and costs as fixed by the Court.

s.      MV3 contends that this case is exceptional and MV3 is entitled to its costs, expenses, and reasonable attorney fees pursuant to 35 U.S.C. § 285.

t.      MV3 contends that Roku's affirmative defenses, Roku's declaratory judgment counterclaims alleging the '223 Patent is not infringed and invalid, and Roku's counterclaim alleging inequitable conduct, are without merit.

u.      MV3 contends that Roku is not entitled to recover its attorney's fees, costs (including expert witness fees), expenses incurred in this action, or pre-judgment interest.

v.      MV3 contends that jurisdiction is proper in this Court.

w.      MV3 contends that venue is proper in the United States District Court for the Western District of Texas.[3]

### 2.      Roku's Statement of Contentions

a.       Roku contends that it has not directly, under 35 U.S.C. § 271(a), or indirectly, under 35 U.S.C. § 271(b), infringed claims 1, 15, 21, 23, 30, 32, 33, and 53 of the '223 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale and/or

---

[2] Dkt. 5 at ¶ 33.
[3] On June 25, 2019, the Court denied Roku's Motion to Transfer Venue to the Northern District of California.  Dkt. 74.

selling, and/or importing into the United States the Roku Accused Products or by inducing others to infringe.

b.    Roku contends that the two accused functionalities, screen mirroring and DIAL, are fundamentally different operations.  Further, Roku's player products and Roku TVs are designed and operate differently.  In order to prove infringement, MV3 must prove that every one of the many limitations contained in each of the 18 subparagraphs of claim 1 is met for each of the accused functionalities when operated within each of the Accused Products.

c.    Roku contends that it has not directly infringed claim 1 for at least the following reasons (all references to Roku players, Roku TVs, and Roku devices (Roku players and Roku TVs) refer to each operating the accused screen mirroring and DIAL features):

- A mobile set top box comprising:

  o   Roku players and Roku TVs are not mobile set top boxes because they do not combine the functionality of a set top box and a mobile communication system

  o   Roku TVs do not function as an intermediary device/conduit to receive signals and output a signal to different display devices

  o   Roku TVs are not portable

  o   Roku players do not receive television signals and mobile content

- a docking port configured to accept a mobile computing device that has a native resolution of a first size format and receives media content from at least two different types of communications networks

  o   Roku devices do not have a docking port

  o   Roku devices do not have a docking port configured to accept the mobile computing device

- a mobile device input that receives media content from the mobile computing device accepted in the docking port

12

- o   Roku devices do not have a docking port

- o   Roku devices do not involve a mobile computing device accepted in the docking port

- o   Roku devices operating DIAL do not receive media content from a mobile computing device

- a television signal input that receives at least one type of television signal

  - o   Roku players do not receive television signals and do not have a television signal input

- a video processor configured to receive and process the media content from the mobile device input, the video processor including adaptive circuitry to process the media content transmitted from unicast and multicast broadcasts, and the video processor including circuitry and instructions operable to process a predefined protocol stack of video packets forming at least a portion of the media content

  - o   Roku devices do not process multicast or multicast broadcasts

  - o   Roku devices do not have adaptive circuitry

  - o   Roku devices do not have adaptive circuitry to process media content from unicast and multicast broadcasts

  - o   Roku devices operating DIAL do not have a video processor that is configured to receive and process media content, video packets forming a portion of the media content, from the mobile device input

- execute an upconversion process by processing first media content from the mobile computing device, wherein the first media content includes digital video image information comprising a series of digital video frames, and is modified for display on a display device that is separate from the mobile set top box, the display device having a native display resolution of a second size format that is

larger than the first size format of the mobile computing device, the upconversion process further comprising:

- o Roku TVs do not have a display device separate from mobile set top box

- o Roku devices operating DIAL do not execute an upconversion process by processing media content from the mobile computing device, wherein the first media content includes digital video image information comprising a series of digital video frames, and is modified for display on a display device

- receiving the first media content in the first size format from the mobile device input

  - o Roku devices operating DIAL do not receive media content from a mobile device input

  - o Roku devices operating DIAL do not receive media content from a mobile computing device

- querying the mobile computing device to determine the first size format

  - o Roku devices do not query the mobile computing device to determine its native resolution

  - o Roku devices do not query the mobile computing device

  - o Roku devices do not determine the first size format of the mobile computing device

  - o Roku devices do not determine the native resolution of the mobile computing device

- querying the display device

  - o Roku TVs do not query a display device

  - o Roku devices do not query the display device

  - o Roku devices do not query the display device to determine the native resolution the display device

- determining the native display resolution of the second size format of the display device based on a response resulting from the query of the display device

    o Roku devices do not determine the native display resolution of the second size format of the display device based on a response resulting from a query of a display device

    o Roku devices do determine the native resolution a display device

- authenticating the validity of a user associated with the mobile computing device

    o Roku devices do not perform user authentication

    o Roku devices do not authenticate the validity of a user

    o Roku devices do not authenticate the validity of a user associated with a mobile computing device

- determining, based on the validity of the user, that the received first media content is permitted to be provided to the display device

    o Roku devices do not determine, based on the validity of the user, that the received media content is permitted to be provided to a display device

- upscaling the received first media content from the first size format to the second size format to generate upconverted first media content, wherein upscaling includes increasing a total number of horizontal and vertical pixels in each video frame of the series of digital video frames so that pixel dimensions in each video frame match the native display resolution of the second size format of the display device

    o Roku devices do not perform upscaling in this prescribed manner

    o Roku devices operating DIAL do not upscale media content from a mobile computing device, wherein upscaling includes increasing a total

number of horizontal and vertical pixels in each video frame of a series of digital video frames so that pixel dimensions in each video frame match the native display resolution of the second size format of the display device

- render a television signal into second media content for display on the display device

  - Roku players do not render a television signal

  - Roku TVs render a television signal media content for display on a display device

- receiving the television signal from the television input

  - Roku players do not have a television signal input

  - Roku players do not receive television signals

- decoding the television signal into second media content

  - Roku players do not decode television signals

- rendering the second media content based on the native display resolution of the display device to generate rendered second media content

  - Roku players do not render second media content

  - Roku players do not render second media content based on the native display resolution of the display device to generate rendered second media content

  - Roku TVs do render second media content based on the native display resolution of a display device

- an output configured to deliver the upconverted first media content and the rendered second media content from the mobile set top box to the display device

- o Roku players do not have an output configured to deliver upconverted first media content and rendered second media content from a mobile set top box

- o Roku players do not have an output configured to deliver rendered second media content

- o Roku TVs do not have an output configured to deliver upconverted first media content and rendered second media content from mobile set top box to display device

- o Roku devices operating DIAL do not have an output configured to deliver upconverted first media content from a mobile set top box

d.    Roku contends that it has not directly infringed claim 15 for at least the following reasons (all references to Roku players, Roku TVs, and Roku devices (Roku players and Roku TVs) refer to each operating the accused screen mirroring and DIAL features):

- The mobile set top box of claim 1, wherein the upconverted first media content is generated in real time

    - o In addition to the non-infringement reasons outlined, above, for claim 1, Roku devices do not generate first media content in real time

    - o In addition to the non-infringement reasons outlined, above, for claim 1, Roku devices operating DIAL do not generate first media content

e.    Roku contends that it has not directly infringed claim 21 for at least the following reasons (all references to Roku players, Roku TVs, and Roku devices (Roku players and Roku TVs) refer to each operating the accused screen mirroring and DIAL features):

- The mobile set top box of claim 2, wherein the mobile phone communicates with the set top box via a first wireless or wired connection, and the display device communicates with the set top box via a second wireless or wired connection
  - Roku devices do not infringe for the reasons outlined, above, for claim 1

f.      Roku contends that it has not directly infringed claim 23 for at least the following reasons (all references to Roku players, Roku TVs, and Roku devices (Roku players and Roku TVs) refer to each operating the accused screen mirroring and DIAL features):

- The mobile set top box of claim 1, wherein the set top box comprises one or more connectivity ports configured to accept a wired connection that couples to the display device
  - Roku devices do not infringe for the reasons outlined, above, for claim 1

g.      Roku contends that it has not directly infringed claim 30 for at least the following reasons (all references to Roku players, Roku TVs, and Roku devices (Roku players and Roku TVs) refer to each operating the accused screen mirroring and DIAL features):

- Roku devices do not infringe for the reasons outlined, above, for claim 1

h.      Roku contends that it has not directly infringed claim 32 for at least the following reasons (all references to Roku players, Roku TVs, and Roku devices (Roku players and Roku TVs) refer to each operating the accused screen mirroring and DIAL features):

- Roku devices do not infringe for the reasons outlined, above, for claim 1

- an interactive multimedia processor integrated within the video processor, the interactive multimedia processor including circuitry and instructions to interact with at least one of a video on demand storage device, an electronic programming guide, and a digital rights management server

  o Roku devices do not have an interactive multimedia processor integrated within the video processor, the interactive multimedia processor including circuitry and instructions to interact with at least one of a video on demand storage device, an electronic programming guide, and a digital rights management server

i.    Roku contends that it has not directly infringed claim 33 for at least the following reasons (all references to Roku players, Roku TVs, and Roku devices (Roku players and Roku TVs) refer to each operating the accused screen mirroring and DIAL features):

- The mobile set top box of claim 32, wherein the predefined protocol stack of video packets forming at least a portion of the media content includes at least one of MPEG video packets, real-time transport protocol (RTP) packets, user datagram protocol (UDP) packets, internet protocol (IP) packets, and DVB-H data

  o Roku devices do not infringe for the reasons outlined, above, for claim 32

j.    Roku contends that it has not directly infringed claim 53 for at least the following reasons (all references to Roku players, Roku TVs, and Roku devices (Roku players and Roku TVs) refer to each operating the accused screen mirroring and DIAL features):

- Roku devices do not infringe for the reasons outlined, above, for claim 32

k.      Roku contends that Roku players and Roku TVs do not infringe any claims under the doctrine of equivalents.  MV3 relies on the doctrine of equivalents against the DIAL operation for the following limitations:

- "receiving the first media content in the first size format from the mobile device input"

- "querying the mobile computing device to determine the first size format"

l.      Roku also contends that the doctrine of equivalents is inapplicable for each of those limitations, because the limitations were added for patentability purposes and prosecution history estoppel prevents the doctrine from being applied to the limitations. Further, Roku contents that the doctrine of equivalents is not applicable under the doctrine of claim vitiation.

m.      Roku contends that it has not induced infringement because direct infringement cannot be proven.  Further, if a finding of direct infringement is entered, Roku contends that it has not induced infringement because it had no knowledge of the '223 patent prior to the suit was filed, and, in addition, it cannot be shown that Roku knew or knows that the acts of others that MV3 alleges Roku induced constitute patent infringement.

n.      Roku contends that each of the Asserted Claims of the '223 Patent are invalid under 35 U.S.C. §§ 102 and/or 103, at least based on the following prior art references:

- Austerlitz

  o  U.S. Patent Pub. No. 2008/0263621 to Austerlitz et al., *Set Top Box with Transcoding Capabilities*, filed Apr. 17, 2007

- Wright-Riley (I)

- o  U.S. Patent Pub. No. 2009/0163139 to Wright-Riley, *Apparatus and Method of Mobile Media Presentation Docking Station for Portable Electronic Device*, filed Sep. 27, 2005

- Chang

  - o  U.S. Patent Pub. No. 2009/0023395 to Chang et al., *Passive Interface and Software Configuration for Portable Devices*, filed Jan. 2, 2008

- Bennett

  - o  U.S. Patent Pub. No. US 2006/0031889 to Bennett et al., *Video Processing System with Simultaneous Multiple Outputs Each with Unique Formats*, filed Oct. 11, 2005

- Toyama

  - o  U.S. Patent Pub. No. 2006/0259942 to Toyama et al., *Phone-to-Mobile Connection Device*, filed May 13, 2005

- Mukerji

  - o  U.S. Patent Pub. No. 2009/0293088 to Mukerji et al., *System and Methods for Remote Access to Programming Information*, filed May 23, 2008

- Tee

  - o  U.S. Patent Pub. No. 2006/0203758 to Tee et al., *Mobile Terminal for Relaying Multimedia Data to an External Display Device*, filed Sep. 27, 2005

- Matsubara

      o   European Patent App. No. 1175069 to Matsubara et al., Mobile Communication Network Adapter, filed Feb. 14, 2001

   o.   Roku contends that the prior art can be applied to the claims to prove anticipation and obviousness as shown:

| Claim | Primary Reference | Secondary Reference(s) |
|---|---|---|
| Independents | | |
| 1, 30 | Austerlitz | - |
| | | Chang + Bennett |
| | | Toyama + Bennet |
| | Tee | Austerlitz + Chang |
| | Matsubara | Bennet |
| | Wright-Riley | - |
| | | Chang |
| | | Mukerji |
| 32 | Austerlitz | - |
| | | Chang + Bennett |
| | | Toyama + Bennet |
| | Tee | Austerlitz + Chang |
| | Matsubara | Bennett |
| | Wright-Riley | - |
| | | Chang |
| Dependents | | |
| 15 | Austerlitz | - |
| | | Chang + Bennett |
| | | Toyama + Bennet |
| | Tee | Austerlitz + Chang |
| | Matsubara | Bennett |
| | Wright-Riley | - |
| 21, 23, 33, 53 | Austerlitz | - |
| | | Chang + Bennett |
| | | Toyama + Bennet |
| | Tee | Austerlitz + Chang |
| | Matsubara | Bennett |
| | Wright-Riley | - |

| | | Chang |
|---|---|---|
| | | |

p.      Roku contends that the Asserted Claims of the '223 Patent are invalid under 35 U.S.C. § 112 for failure to comply with the written description requirement.  The disclosure of the application leading to the '223 Patent does not conveys to a person skilled in the art that Mr. Abbruzzese had possession at the time the application was filed of the later claimed subject matter.

q.      More specifically, during the lengthy prosecution of the patent, the applicant amended the claims numerous times.  On April 10, 2014, the claims were amended to include a limitation reciting:

> a video processor configured to receive and process the media content from the mobile device input, the video processor including adaptive circuitry to process the media content transmitted from unicast and multicast broadcasts, and the video processor including circuitry and instructions operable to process a predefined protocol stack of video packets forming at least a portion of the media content.

r.      Roku contends that new matter was introduced into the claims by this amendment, in violation of the written description requirement, at least in relation to the term "adaptive circuitry."

s.      Roku contends that there is no express support in the specification for "adaptive circuitry."

t.      Roku contends that there is no implicit or inherent support in the specification for the term "adaptive circuitry."

u.      Roku also contends that MV3 procured the '223 Patent through inequitable conduct, and for that reason the patent is unenforceable.  At the time of making the amendment

23

to add the "adaptive circuitry" limitation, MV3 knowingly added new matter and falsely stated to the U.S. Patent and Trademark Office that the amendment contained no new matter.  This was a but-for material misrepresentation made with an intent to deceive the Patent Office.

v.      Roku contends that MV3 is not entitled to any damages whatsoever.

w.      Roku contends that, should the patent be determined to be not invalid, infringed, and not unenforceable, MV3's damages calculations are inflated and inaccurate.  In particular, MV3 has presented a complicated matrix of twelve different damages opinion outcomes.  Those twelve outcomes are based on three different approaches — (1) a survey approach; (2) an average profit per user approach; and (3) a third party app approach.  MV3 applies each approach to a running royalty model and a lump sum model.  But, each of these approaches is premised on fundamental flaws designed to artificially inflate the result.

x.      Roku contends that, should the patent be determined to be not invalid, infringed, and not unenforceable, damages, if any, are limited to a reasonable running royalty applied up to the date of trial and are limited to the value of the Roku player and/or Roku TV products apportioned down to a reasonable royalty to account for the accused screen mirroring and/or DIAL features supported by those products.

y.      Roku contends that MV3 is not entitled to enhanced damages under 35 U.S.C. § 284.  MV3 has not pled or requested enhanced damages in its complaint or any time prior to its reference to enhanced damages in this Pretrial Order.

z.      Roku contends that this case is exceptional and Roku is entitled to its costs, expenses, and reasonable attorney fees pursuant to 35 U.S.C. § 285.

aa.     Roku contends that MV3 is not entitled to recover its attorney's fees, costs (including expert witness fees), expenses incurred in this action, or pre-judgment interest.

**E.      STIPULATIONS AND UNCONTESTED FACTS**

The parties agree to the following stipulations and uncontested facts:

**1.      The Parties' Statement of Stipulations**

The following facts, through stipulations, shall be without prejudice to any evidentiary objection:  Attached as Exhibit 1 is a copy of the Parties' Stipulations Regarding Representative Products.  The source code Roku produced in this case is representative of the source code of all Roku Accused Products.

**2.      The Parties' Statement of the Court's Claim Constructions**

Pursuant to the Court's Claim Construction Order,[4] the Court has determined the meanings of the following terms of the '223 Patent claims:

| Claim Term | Meaning |
|---|---|
| *television signal* (claims 1 and 30) | plain and ordinary meaning |
| *docking port* (claims 1, 30, and 32) | plain and ordinary meaning |
| *accepted in* (claims 1 and 32) | plain and ordinary meaning |
| *configured to accept* (claims 1, 23, 32, and 55) | plain and ordinary meaning |
| *mobile set top box* (all claims) | a device that combines the functionality of a set top box and a mobile communication system |
| *adaptive circuitry* (claims 1, 30, and 32) | plain and ordinary meaning |
| *determining based on the validity of the user, that the received first media content is permitted to be provided to the display device* (claims 1, 30, 32) | plain and ordinary meaning |
| *multicast broadcasts* (claims 1, 30, and 32) | plain and ordinary meaning |

---

[4] Dkt. 90.

**MV3's Position**

| Claim Term | Meaning |
|---|---|
| *determining the native display resolution of the second size format of the display device based on a response resulting from the query of the display device* (claims 1 and 30) | determining the maximal allowed display resolution of the second size format of the display device based on a response resulting from a request for information from the display device |

MV3 objects to Roku's inclusion of any language except for the Court's construction of this term.  (Dkt. 90).

**Roku's Position**

| Claim Term | Meaning |
|---|---|
| *determining the native display resolution of the second size format of the display device based on a response resulting from the query of the display device* (claims 1 and 30) | determining the maximal allowed display resolution of the second size format of the display device based on a response resulting from a request for information from the display device<br><br>Roku notes that the Court concluded: "[a] POSITA would understand that 'native display resolution' is not limited to the number of horizontal and vertical pixels, but also includes whether the display is interlaced or progressive, and the areal density of the pixels." |

3.     **The Parties' Statement of Uncontested Facts**

The following facts are admitted and require no proof, and may be read to the jury by the Court or by either side:

a.     MV3 Partners LLC is a limited liability company organized and existing under the laws of Florida and maintains its principal place of business in Florida.

26

b.      Roku, Inc. is a corporation organized and existing under the laws of Delaware and maintains a research and development office in Austin, Texas.

c.      Jared E. Abbruzzese is the sole named inventor of the '223 Patent.  On May 4, 2011, Mr. Abbruzzese assigned the entire right, title, and interest to the inventions in the application that issued as the '223 Patent to MV3 Partners LLC.  Mr. Abbruzzese serves as the Managing Member of MV3 Partners LLC.

d.      The '223 Patent issued on October 14, 2014 and will expire on October 9, 2029.

e.      On October 16, 2018, MV3 Partners LLC filed this patent infringement action against Roku, Inc.

## F.      CONTESTED ISSUES OF FACT AND LAW

The Parties identify the following issues of fact that remain to be litigated.  To the extent any issue of law discussed below is deemed to be an issue of fact, it is incorporated into this section.  The Parties reserve the right to identify additional factual or legal issues that may arise, including issues raised by any further discovery undertaken in this case or the Court's rulings on any pending motions or rulings made at the pretrial conference on this action.

By providing this statement, the Parties do not concede that all of these issues are appropriate for trial.  The Parties also do not waive any of their pending motions.

- **Infringement**

**MV3's Position**

1.      Whether MV3 has shown by a preponderance of the evidence that Roku Ultra, Roku Express, Roku Express+, Roku Premiere, Roku Premiere+, Roku Streaming Stick, Roku

Streaming Stick+, Roku Smart Soundbar, and Roku TV products[5] directly infringe any of the Asserted Claims of the '223 Patent.

      a.     To prove direct infringement, MV3 must prove that the Roku Accused Products practice one or more of the Asserted Claims of the '223 Patent under either literal infringement and/or the doctrine of equivalents.

      b.     Literal Infringement:  To determine literal infringement, the jury must compare each of the Roku Accused Products with each Asserted Claim and determine whether every claim limitation of each Asserted Claim is included in each product.  If every limitation of the claim is included in that product, then it literally infringes that claim.[6]

      c.     Doctrine of Equivalents Infringement:  If the Roku Accused Products do not literally infringe an Asserted Claim because a limitation is not identically present in the Roku Accused Products, then MV3 must prove that the Roku Accused Products infringe one or more of the Asserted Claims under the doctrine of equivalents.  Each of the Roku Accused Products can infringe an Asserted Claim under the doctrine of equivalents if it includes parts that are identical or equivalent to the particular limitation.  A part of a product is equivalent to a limitation of an Asserted Claim if a person of ordinary skill in the field would think that the differences between the part and the limitation were not substantial as of the time of the alleged infringement.  One way to decide whether any difference between a limitation of an Asserted Claim and a part of the Roku Accused Products is not substantial is to consider whether, as of

---

[5]  Direct infringement with respect to Roku Accused Products needs to be shown for the purpose of proving indirect infringement by Roku with respect to such products.

[6]  If a patent claim, such as independent claims 1, 30 and 32 at issue here, uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every limitation in the claim is present in a particular accused product.  The fact that an accused product also includes any other parts will not avoid infringement, as long as it has every limitation in the patent claim.

the time of the alleged infringement, the part of the Roku Accused Products (1) performed substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the limitation in the Asserted Claim.   MV3 contends that Roku is precluded from asserting the defenses of prosecution history estoppel and claim limitation vitiation because Roku failed to raise them in its pleadings, during fact discovery, expert reports, or during expert discovery.  *See* MV3's Motion *in Limine* No. 4 to Exclude Certain References to Arguments Relating to Non-Infringement and Invalidity at 2-5.   MV3 objects to Roku's contention of infringement below because it does not accurately describe the scope of MV3's doctrine of equivalents infringement allegations.

2.      Whether MV3 has shown by a preponderance of the evidence that Roku has indirectly infringed the Asserted Claims of the '223 Patent by inducing others to directly infringe literally and/or under the doctrine of equivalents.

a.      To prove indirect inducement infringement, MV3 must prove that Roku actively induced someone else (company, individual, entity, etc.) to directly infringe the '223 Patent literally and/or under the doctrine of equivalents.

b.      Inducement infringement:  Roku is liable for inducement infringement if (1) someone else or some other company or entity directly infringed the Asserted Claims, (2) Roku intended to cause someone else or some other company or entity to directly infringe the Asserted Claims, and (3) Roku was aware that these actions of others that MV3 alleges Roku induced would constitute infringement of the '223 Patent.

**Roku's Position**

1.      Whether MV3 has shown by a preponderance of the evidence that Roku Ultra, Roku Express, Roku Express+, Roku Premiere, Roku Premiere+, Roku Streaming Stick, Roku

Streaming Stick+, Roku Smart Soundbar, and Roku TV products[7] directly infringe any of the Asserted Claims of the '223 Patent.

        a.      To prove direct infringement, MV3 must prove that the Roku Accused Products practice one or more of the Asserted Claims of the '223 Patent under either literal infringement and/or the doctrine of equivalents.

        b.      Literal Infringement:  To determine literal infringement, the jury must compare each of the Roku Accused Products with each Asserted Claim and determine whether every claim limitation of each Asserted Claim is included in each product.  If every limitation of the claim is included in that product, then it literally infringes that claim.[8]

        c.      Doctrine of Equivalents Infringement:  If the DIAL operation on the Roku Accused Products does not literally infringe an Asserted Claim only because the "receiving the first media content in the first size format from the mobile device input" and "querying the mobile computing device to determine the first size format" limitations are not identically present in the Roku Accused Products, then MV3 must prove that the Roku Accused Products infringe under the doctrine of equivalents.  The "receiving the first media content in the first size format from the mobile device input" and "querying the mobile computing device to determine the first size format" can be met under the doctrine of equivalents if the DIAL operation on the Roku Accused Products includes parts and operations that are identical or equivalent to the particular limitation.  A part or operation of a product is equivalent to a

---

[7]  Direct infringement with respect to Roku player and Roku TV products needs to be shown for the purpose of proving indirect infringement by Roku with respect to such products.

[8]  If a patent claim, such as independent claims 1, 30 and 32 at issue here, uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every limitation in the claim is present in a particular accused product.  The fact that an accused product also includes any other parts will not avoid infringement, as long as it has every limitation in the patent claim.

limitation of an Asserted Claim if a person of ordinary skill in the field would think that the differences between the part and the limitation were insubstantial as of the time of the alleged infringement.  One way to decide whether any difference between a limitation of an Asserted Claim and a part of the Roku Accused Products is insubstantial is to consider whether, as of the time of the alleged infringement, the part of the Roku Accused Products (1) performed substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the limitation in the Asserted Claim.  The doctrine of equivalents is not applicable if prosecution history estoppel applies because patentability amendments were made during prosecution.  Further, the doctrine of equivalents is not applicable under the doctrine of claim vitiation if MV3 is applying the doctrine of equivalents in any way that would vitiate or read out a claim element.

2.      Whether MV3 has shown by a preponderance of the evidence that Roku has indirectly infringed of the Asserted Claims of the '223 Patent by inducing others to directly infringe literally and/or under the doctrine of equivalents.

a.      To prove indirect inducement infringement, MV3 must prove that Roku had knowledge of the '223 patent prior and also knew that the acts of others that MV3 alleges Roku induced constitute patent infringement.

b.      Inducement infringement:  Roku is liable for inducement infringement if (1) someone else or some other company or entity directly infringed the Asserted Claims, (2) Roku had knowledge of the '223 patent, (3) Roku intended to cause someone else or some other company or entity to directly infringe the Asserted Claims, and (4) Roku was aware that the acts of others that MV3 alleges Roku induced would constitute infringement of the '223 Patent.

- **Validity/Enforceability**

1.      Whether Roku has shown by clear and convincing evidence that any prior art reference or references invalidate the Asserted Claims of the '223 Patent under 35 U.S.C. §§ 102 and/or 103.

2.      Whether Roku has shown by clear and convincing evidence that any Asserted Claims of the '223 Patent are invalid for failing to satisfy the written description requirement with respect to the "adaptive circuitry" term.

3.      Whether Roku has shown by clear and convincing evidence that the '223 Patent is unenforceable as barred by the doctrine of inequitable conduct.

- **Patent Damages and Remedies**

**MV3's Position**

1.      If Roku is found to infringe any valid Asserted Claim of the '223 Patent, the amount adequate to compensate MV3 for that infringement, which in no event shall be less than a reasonable royalty.

2.      The following damages periods are applicable: (1) October 14, 2014 (date of first infringing sale or hypothetical negotiation date) to October 9, 2029 (expiration date of the '223 Patent); (2) October 16, 2018 (date Roku received notice of the '223 Patent by virtue of MV3's complaint) to October 9, 2029; (3) October 14, 2014 to June 1, 2020 (anticipated trial date); and/or (4) October 16, 2018 to June 1, 2020.  MV3 objects to Roku's contention below that damages for infringement by the accused functionalities on Roku TVs cannot begin to toll any earlier than the complaint filing date.  MV3 further objects to Roku's contention below that the damages period for all Roku Accused Products for infringement by the accused functionalities ends at the date of the trial of this case.  MV3 also objects to Roku's contention

below that it would be legally improper to assess damages past the date of the trial and through the expiration date of the '223 Patent.

3.      The amount and manner of calculation of an on-going royalty for Roku's continued infringement post-trial (future infringement), to the extent the period of damages is scenario (3) or (4) in paragraph 2(a) above.

4.      The amount and manner of calculation of any pre-judgment and post-judgment interest.

5.      The amount and manner of calculation of any supplemental damages as appropriate.

6.      Whether MV3 or Roku has shown that this is an exceptional case entitling the party to an award of reasonable attorneys' fees and costs under 35 U.S.C. § 285, and if so the amounts thereof.

7.      Whether MV3 has shown by preponderance of the evidence that it is entitled to enhanced damages under 35 U.S.C. § 284, and if so, the amount thereof.[9]

**Roku's Position**

1.      If Roku is found to infringe any valid Asserted Claim of the '223 Patent, the amount adequate to compensate MV3 for that infringement, which should be a reasonable royalty.

2.      The period of damages:  Damages, if any, for infringement by screen mirroring and/or DIAL on Roku TVs cannot begin to toll any earlier than October 16, 2018 (the date Roku received notice of the '223 Patent by virtue of MV3's complaint).  Damages, if any, for infringement by screen mirroring and/or DIAL on Roku players cannot begin to toll any earlier

---

[9] Dkt. 5 at ¶ 33.

than October 14, 2014 (the date of first infringing sale or hypothetical negotiation date).  The following damages, if any, periods are viable:  (1) for infringement by screen mirroring and/or DIAL on Roku TVs, the damage period ends at the date of the trial of this case and cannot begin to toll any earlier than October 16, 2018 (date Roku received notice of the '223 Patent by virtue of MV3's complaint) and (2) for infringement by screen mirroring and/or DIAL on Roku players, the damage period ends at the date of the trial of this case and cannot begin to toll any earlier than October 14, 2014 (date of first infringing sale or hypothetical negotiation date).

3.      It would be legally improper to assess damages past the date of the trial and through the expiration date of the '223 patent, *i.e.,* into October 2029 as MV3 contends. Damages, if any, are limited to compensate for past infringement, and MV3's request for damages for acts that have not occurred is not compensatory.

4.      The amount and manner of calculation of an on-going royalty for Roku's continued infringement post-trial (future infringement), to the extent an on-going royalty is considered.

5.      The amount and manner of calculation of any pre-judgment and post-judgment interest.

6.      The amount and manner of calculation of any supplemental damages as appropriate.

7.      Whether MV3 or Roku has shown that this is an exceptional case entitling the party to an award of reasonable attorneys' fees and costs under 35 U.S.C. § 285, and if so the amounts thereof.

8.      MV3 is not entitled to enhanced damages under 35 U.S.C. § 284.  MV3 has not pled or requested enhanced damages in its complaint or any time prior to its reference to enhanced damages in this Pretrial Order.

- **MV3's Statement Regarding Issues to be Decided by the Court**

1.      MV3 reserves the right to object to the language and substance of any proposed instructions and questions on the issues of obviousness, anticipation, inequitable conduct, or any other invalidity or unenforceability theory proposed by Roku.

2.      All issues for trial have been identified and no post-trial determinations or hearings regarding invalidity, unenforceability,[10] or infringement are anticipated.  MV3 contends that all issues related to its claims for post-trial issues such as exceptional case, enhanced damages, attorney's fees, ongoing royalties, and post and pre-trial interest should not be submitted to the jury, and the jury should not be advised of MV3's claims for these limited post-trial issues.

- **Roku's Statement Regarding Issues to be Decided by the Court**

1.      Roku reserves the right to object to the language and substance of any proposed instructions and questions on any issues or theories proposed by MV3.

2.       The Court has the discretion to seek advisory opinions from the jury on the factual issues underlying equitable conduct including materiality and intent.

## G.      LIST OF WITNESSES

MV3's List of Witnesses is attached as Exhibit 2.  MV3's Objections to Roku's List of Witnesses is attached as Exhibit 3.

---

[10] As discussed in MV3's Motion *in Limine* No. 3, MV3 contends that Roku's affirmative defense and counterclaim alleging inequitable conduct is an equitable remedy reserved for the Court.  (Dkt. 215.)

Roku's List of Witnesses is attached as Exhibit 4.

The parties will continue to meet and confer regarding MV3's objections in order to strive to resolve all objections and issues prior to presenting them to the Court.

**H.   LIST OF EXHIBITS**

MV3's List of Exhibits with Roku's objections is attached as Exhibit 5.

Roku's List of Exhibits with MV3's objections is attached as Exhibit 6.

The parties will continue to meet and confer regarding their respective objections and strive to resolve all objections and issues prior to presenting them to the Court.

**I.   DEPOSITION DESIGNATIONS**

MV3's Deposition Designations and Roku's Counter Deposition Designations with the Parties' respective objections are attached as Exhibit 7.

Roku's Deposition Designations and MV3's Counter Deposition Designations with the Parties' respective objections are attached as Exhibit 8.

The parties will continue to meet and confer regarding their respective objections and strive to resolve all objections and issues prior to presenting them to the Court.

**J.   TRIAL DISCLOSURES**

The parties agree that the identity and order of each witness (both live and by deposition) will be disclosed by mutual exchange at 7:00 p.m. Central two calendar days before their intended use (including specific identification of the deposition segments being played), and objections by 7:00 p.m. Central one calendar day before their intended use.

The parties agree that each exhibit and demonstrative (*e.g.*, graphic and illustrative materials for opening statements, witness examinations, and closing arguments) will be disclosed by mutual exchange at 7:00 p.m. Central two calendar days before use, and objections will be served by 7:00 p.m. Central one calendar day before their intended use.  The parties agree to

attempt to resolve objections through a meet-and-confer to begin on or before 9:00 p.m. Central on the day objections are served.  The Parties agree to continue discussions to resolve whether exhibit call-outs on slide presentations are considered graphic or illustrative materials.

## K.    PROPOSED JURY INSTRUCTIONS

The Parties timely exchanged proposed jury instructions and objections to the other Party's proposed instructions, which are attached hereto as Exhibit 9.  MV3 and Roku have been diligently working to narrow disputes regarding the proposed instructions and will supplement Exhibit 9 as soon as possible with agreed instructions and consolidated disputed instructions.

The parties will continue to meet and confer regarding their respective objections and strive to resolve all objections and issues prior to presenting them to the Court pursuant to Local Rule CV-16(e)(7) – at least 14 days before the Final Pretrial Conference, which is currently scheduled for May 20, 2020.

## L.    LIST OF ANY PENDING MOTIONS

- **MV3's pending motions**

  o Dkt. No. 137 – SEALED MV3's Motion to Exclude Certain Opinions in the Expert Report of Lauren R. Kindler

  o Dkt. No. 138 – SEALED MV3's Motion to Exclude Certain Opinions in the Expert Report of Robert L. Stoll

  o Dkt. No. 139 – SEALED MV3's Motion to Exclude Certain Portions in Dr. Samuel Russ's Opening Expert Report

  o Dkt. No. 140 – SEALED MV3's Motion to Exclude Opinions in Russ's Rebuttal Expert Report and Bovik's Opening and Rebuttal Expert Reports

  o Dkt. No. 141 – SEALED MV3's Omnibus Motion for Partial Summary Judgment

  o Dkt. No. 201 – MV3's Motion *in Limine* No. 1

- o   Dkt. No. 214 – SEALED MV3's Motion *in Limine* No. 2

- o   Dkt. No. 215 – SEALED MV3's Motion *in Limine* No. 3

- o   Dkt. No. 216 – SEALED MV3's Motion *in Limine* No. 4

- o   Potential motions as necessary pursuant to Fed. R. Civ. P. 50 relating to Roku's defenses and counterclaims.

- **Roku's pending motions**

  - Dkt. 133 – Motion to Exclude Marais Testimony/Report (filed 3/19/2020)

  - Dkt. 142 – SEALED – Roku's Motion for Summary Judgment (filed 3/19/2020)

  - Dkt. 144 – SEALED – Roku's Motion to Exclude Weinstein Opinions/Testimony (filed 3/20/2020)

  - Dkt. 159 – Roku's Motion to Exclude/Preclude MV3 and Dr. Daniel Schonfeld (filed 3/30/2020)

  - Dkt. 197 – Roku's Motion in Limine No. 4 (filed 4/22/2020)

  - Dkt. 208 – SEALED – Roku's Motion *in Limine* No. 1 (filed 4/24/2020)

  - Dkt. 209 – SEALED – Roku's Motion *in Limine* No. 2 (filed 4/24/202)

  - Dkt. 210 – SEALED – Roku's Motion *in Limine* No. 3 (filed 4/24/2020)

  - Dkt. 211 – SEALED – Roku's Motion *in Limine* No. 5 (filed 4/24/2020)

  - Dkt. 212 – SEALED – Roku's Motion *in Limine* No. 6 (filed 4/24/2020)

  - Dkt. 213 – SEALED – Roku's Motion *in Limine* No. 7 (filed 4/24/2020)

  - Dkt 220 – SEALED (not yet entered as a separate docket) – Roku's Motion for Summary Judgment (DIAL) (filed 4/28/2020)

**M.      PROBABLE LENGTH OF TRIAL**

**MV3's Position**

The probable length of trial is 5-6 days, excluding jury selection, which is appropriate for a single patent case in which only 8 claims are being asserted.  MV3 requests that each side be allotted 13-16 hours for trial, exclusive of *voir dire*, opening statements, and closing arguments.  MV3 objects to Roku's proposed length of trial of 10 days.  Specifically, MV3 objects to Roku's characterizations of MV3 as a corporation and MV3's trial plan, Roku's trial plan, and Roku's attempt to adduce evidence at trial, which is the subject of pending Motions *in Limine*.  (Dkt. Nos. 201, 214.)

**Roku's Position**

The currently-scheduled length of trial is 10 days.  (Dkt. 51.)  Assuming each day involves about 6.5 hours before the jury once testimony begins, the total trial time over the 10 days would be 65 hours, or up to 32.5 hours per side, if the time is split equally.

Roku believes that the total trial time, as it is currently scheduled, can be shortened. Roku requests that each side be allotted 24-26 hours for trial, exclusive of *voir dire*, opening statements, and closing arguments.  Roku notes that MV3's time allotment suggestion would be unworkable for the case MV3 has elected to bring.

The '223 patent that MV3 has asserted is complicated and its claims are lengthy.  Each of the independent '223 patent claims literally spans about an entire column of the patent. Claim 1 alone is 475 words long.  MV3's case requires the consideration of Roku streaming media players, Roku TVs, a screen mirroring operation, and a DIAL operation.  All of these items have differences that are relevant to the '223 patent case in the way in which they are designed and in the way in which they function.

MV3 is also planning to present a complex, multi-pronged damages case. Its damages case involves three separate models — survey approach, average profit per user approach, and third party app approach — that are each independently applied to a running royalty theory and a lump sum theory.

MV3's case also includes a survey to go with its survey approach damages model. Since a survey is involved, survey subject matter must be addressed by Roku percipient witnesses and survey experts will testify for Roku and MV3 in addition to the typical technical and damages percipient witnesses and expert witnesses that testify in patent cases.

The claims, and the issues that must be resolved, are not focused. They pertain to various technology areas and aspects. At least the following areas of technology must be explained to and decided by the jurors:

- o   WiFi

- o   Device-to-device interface technology

- o   Software operation and software code

- o   Software stack and software port operation

- o   Roku player hardware architecture

- o   Different signal and media content types content

- o   Roku TV hardware architecture

- o   Mobile computer to Roku player and Roku TV communication and control signals exchange

- o   Roku player and Roku TV to display device communication and control signals exchange

- o  Authorization protocols and operations between a Roku device and a mobile computer

- o  Screen mirroring as it operates on Roku players, screen mirroring as it operates on Roku TVs

- o  DIAL as is operates in conjunction with Roku players and Roku TVs

Further, Roku, as an operating company, must present percipient witness to introduce the company and describe facts pertaining to the technical, damages, and survey aspects of the case.  MV3, on the other hand, is a three person partnership with little more than the patent to discuss.

Finally, MV3 has refused to agree to very basic facts, meaning that time will be required at trial to establish facts, such as the prior art status of patents and patent applications published years before the earliest priority date.  Similarly, MV3 has refused to agree to fundamental facts such as MV3's status as a non-practicing entity and Roku's operating headquarters or its number of employees.

## N.    CERTIFICATIONS

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

(1)    Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

(2)    Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

(3)    Each exhibit in the List of Exhibits herein:

(a)    is in existence;

(b)    is numbered; and has been disclosed and shown to opposing counsel.

41

Dated:  April 30, 2020                       RESPECTFULLY SUBMITTED,

By:  */s/ Andy Tindel*

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, Texas 75652
913 Franklin Ave., Suite 201
Waco, Texas 76701
Telephone:  (903) 657-8540
Facsimile: (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76712
Telephone: (254) 776-3336
Facsimile: (254) 776-6823

Jonathan K. Waldrop (CA Bar No. 297903)
(Admitted in this District)
jwaldrop@kasowitz.com
Darcy L. Jones (CA Bar No. 309474)
(Admitted in this District)
djones@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(Admitted in this District)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(Admitted in this District)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(Admitted in this District)
hkim@kasowitz.com
Jack Shaw (CA Bar No. 309382)
(Admitted in this District)
jshaw@kasowitz.com
ThucMinh Nguyen (CA Bar No. 304382)
(Admitted *pro hac vice*)
tnguyen@kasowitz.com

**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Paul G. Williams (GA Bar No. 764925)
(Admitted *pro hac vice*)
pwilliams@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
1349 West Peachtree Street N.W., Suite 1500
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

**Attorneys for Plaintiff**
**MV3 PARTNERS LLC**

By: */s/ Alexander J. Hadjis*
Alexander J. Hadjis (pro hac vice)
Lisa M. Mandrusiak (pro hac vice)
Michael D. West (pro hac vice)
Tia D. Fenton (pro hac vice)
W. Todd Baker (pro hac vice)
OBLON, MCCLELLAND, MAIER
& NEUSTADT, L.L.P.
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000
ahadjis@oblon.com
lmandrusiak@oblon.com
mwest@oblon.com
tfenton@oblon.com
wtbaker@oblon.com
Richard D. Milvenan
State Bar No. 14171800
McGINNIS LOCHRIDGE LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000
rmilvenan@mcginnislaw.com

David N. Deaconson
Tex. Bar No. 05673400
PAKIS, GIOTES, PAGE & BURLESON,
P.C.
P.O. Box 58
Waco, Texas 76703-0058
(254) 297-7300
deaconson@pakislaw.com

Darryl Adams
Tex. Bar No. 00796101
SLAYDEN GRUBERT BEARD LLC
401 Congress Ave., Ste. 1650
Austin, Texas 78701
dadams@sgbfirm.com

**Attorneys for
DEFENDANT ROKU, INC.**

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE] — Document Filing System, to all counsel of record, on this 30th day of April, 2020.


*/s/ Andy Tindel*
**Andy Tindel**