UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| MV3 PARTNERS LLC,<br><br>　　　　　Plaintiff,<br>v.<br><br>ROKU, INC.<br><br>　　　　　Defendant. | Civil Action No.: 6:18-cv-00308-ADA<br><br>**JURY TRIAL DEMANDED** |

**ROKU, INC.'S MEMORADUM IN SUPPORT OF
ITS MOTION FOR JUDGMENT AS A MATTER OF LAW**

Pursuant to Fed. R. Civ. P. 50, Defendant Roku, Inc. (Roku) respectfully moves the Court for judgment as a matter of law of no infringement, and consequently no damages, against Plaintiff MV3 Partners LLC (MV3) on the sole count of the Amended Complaint (D.I. 5). Based upon the scant evidence presented by MV3 in its case-in-chief, no reasonable jury would have a legally sufficient evidentiary basis to find that Roku infringed. MV3's case-in-chief depends upon emotional appeals and obfuscation rather than an evidentiary basis.

## I.     Legal Standard

Federal Rule of Civil Procedure 50(a) (1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

"Under Rule 50, a court should render judgment as a matter of 'law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue'" *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 149 (U.S. 2000) (citing Fed. R. Civ. P. 50(a)); *Palasota v. Haggar Clothing, Co.,* 499 F.3d 474, 480 (5th Cir. 2007). To decide a motion for judgment as a matter of law, the record must be reviewed for the presence of substantial evidence and for legal error. See *Motorola, Inc. v. Interdigital Technology Corp.*, 121 F.3d 1461 (Fed. Cir. 1997). The substantial evidence standard requires more than a mere scintilla of evidence. *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850 (Fed. Cir. 1991). If a court erroneously submits an issue to the jury on which there is neither evidence nor argument, it is obligated to grant a motion for judgment as a matter of law on that issue. *Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan*, Inc., 873 F.2d 1422, 1426 (Fed. Cir. 1989).

With respect to infringement, it is MV3's burden to establish infringement. *Cybor Corp.*

1

*v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).  To establish infringement MV3 must meet its burden of proof by a preponderance of the evidence, on a claim-by-claim basis, of showing that each and every limitation of each asserted claim is present in each accused product.  *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002).  Likewise, MV3 has the burden of establishing damages by a preponderance of the evidence.  *Standard Havens Prods., Inc. v. Gencor Indus., Inc*. 953 F.2d 1360 (Fed. Cir. 1991).

II.   ANALYSIS

  A.   **No Reasonable Jury Could Find Infringement**

MV3 has not carried its burden of proving that Roku infringed the '223 patent.  MV3's case-in-chief failed to establish a legally sufficient evidentiary basis for any reasonable jury to find that Roku infringed the '223 patent.  There is not a sufficient evidentiary basis to establish direct infringement, either literally or under the doctrine of equivalents, or indirect infringement.

MV3's fact witnesses presented no substantive factual support for its positions.  Their testimony largely lacked any substance and was composed of an emotional appeal to the jury that the three founders of MV3, a non-practicing entity, were pioneering innovators, family men, and philanthropists who were pitted against a large and powerful company who wrongly refused to take a license.  *See* 10/05/2020 Trial Transcript, *passim*.  The fact witnesses consistently referred to the patent abstract as evidence of their invention (*e.g.,* Trial Transcript at 30:20-31:3) and described their invention in generalities to create the impression that they had invented media streaming generally when their claimed invention is very narrow and limited by the claims to a very specific form of screen mirroring and casting.  *See, e.g.*, 10/05/2020 Trial Transcript at 7:13 – 8:2 (providing description of the invention at a "high level").  This attempt to redirect the jury

from focusing on the patent claims to the patent abstract is in direct contradiction of the governing law of patent infringement.

MV3's technical expert fared no better. The technical expert, Dr. Schonfeld presented argument, without sufficient evidentiary basis that infringement existed and sought to obfuscate the difference between the patent claim and its individual elements.

He disingenuously re-characterized the patent from a "mobile set top box" to a "mobile video" patent. In effect, Dr. Schonfeld and the inventor seek to read several claim limitations out of the patent claims.

Dr. Schonfeld failed to establish an evidentiary basis for the existence of multiple elements of each of the asserted claims of the '223 patent as follows. Specifically, MV3 failed to offer a sufficient evidentiary basis for at least each of the following elements of the Asserted Claims 1, 15, 21, 23, 30, 32, and/or 53:

- **"a docking port configured to accept a mobile computing device that has a native resolution of a first size format and receives media content from at least two different types of communications networks"**
    - Dr. Schonfeld and MV3 seek to read out the "hardware" aspect out of the Court's "plain and ordinary meaning" construction of "docking port" which under the Court's construction, includes a "hardware" or "software *and* hardware" requirement, as agreed by the parties. 10/07/2020 Trial Transcript (Morning) at 109:17- 110:1 (testimony of Dr. Schonfeld). Despite that construction and its prior agreement, MV3 and its expert now seeks to eliminate the "hardware" requirement in contradiction of the Court's order. *See, e.g.* 10/05/2020 at Trial Transcript (Afternoon) at 38:6-9 (principal of MV3 testifying that docking port not even required to infringe); 10/07/2020 Trial Transcript (Morning) at 109:17-

> 113:4 (identifying the implementation of a wireless communication standard 802.11, implemented by software as a docking port without identification of corresponding hardware).

- **"a television signal input that receives at least one type of television signal"**
    - Dr. Schonfeld offered a conclusory opinion without evidentiary support that a television signal was the same as watching (*i.e.* streaming over the Internet) a TV show streamed over the internet. *See, e.g.*, 10/07/2020 Trial Transcript (Morning) at 115:19 -117:18 (while admitting that specific examples of the patent refers to traditional TV signals offering the opinion without factual support that a "TV signal" in the context of the '223 patent could include streaming a TV show over the internet).

- **"a video processor configured to receive and process the media content from the mobile device input, the video processor including adaptive circuitry to process the media content transmitted from unicast and multicast broadcasts, and the video processor including circuitry and instructions operable to process a predefined protocol stack of video packets forming at least a portion of the media content"**
    - The claims of the '223 patent expressly require that the video processor recited in the claims be configured to process media content transmitted from unicast *and* multicast broadcast. Dr. Schonfeld offered no evidence that Roku devices or TVs can receive multicast broadcasts and offered only a conclusory opinion that this claim element was met. 10/07/2020 Trial Transcript (Morning) at 117:19 -123:2.

- **"receiving the first media content in the first size format from the mobile device input";**
    - Dr. Schonfeld offered only a conclusory opinion without factual support that this element was met. 10/07/2020 Trial Transcript (Morning) at 126:24-128:6.

4

- **"querying the mobile computing device to determine the first size format;"**
    - Dr. Schonfeld offered, without factual support, the incomprehensible opinion that the communications between a mobile phone and a Roku player can be either a response or request: "even though it's a response, it's actually a request." 10/07/2020 Trial Transcript (Morning) at 128:7-130:16.  This opinion creates at least some ambiguity whether the limitation is met or further effectively vitiates the requirement that the *mobile computing device* be queried and opines that querying the Roku device is essentially the same as querying the mobile computing device.

- **"querying the display device, determining the native display resolution of the second size format of the display device based on a response resulting from the query of the display device"**
    - For Roku TVs, despite not having separate display device, Dr. Schonfeld offers a conclusory opinion without specifically addressing the lack of a query of a separate display device for Roku TVs that this limitation was met.  10/07/2020 Trial Transcript (Morning) at 130:17-133:11.   Since there is no query of a separate display device in Roku TVs, this limitation can only be met by relying upon the doctrine of equivalents.  Dr. Schonfeld, however, was precluded from arguing that this limitation was met for DIAL casting under the doctrine of equivalents, but his testimony purposely did not make that clear, leaving ambiguity to permit the jury to apply the doctrine of equivalents to this limitation to DIAL casting (*e.g.* D.I. 332 at 8 (granting Roku's Motion to preclude MV3 and Dr. Dan Schonfeld from relying on the doctrine of equivalents for the "querying the display device" limitation).

- **"authenticating the validity of a user associated with the mobile computing device"**
    - Dr. Schonfeld testified that authenticating the validity of the *device* equates to authenticating the validity of the *user*. *See* 10/07/2020 Trial Transcript (Afternoon) at 9:1-12:20.
- **"determining, based on the validity of the user, that the received first media content is permitted to be provided to the display device"**
    - Again, Dr. Schonfeld testified that authenticating the validity of the *device* equates to authenticating the validity of the *user*. *See* 10/07/2020 Trial Transcript (Afternoon) at 12:21-13:23.

For at least these reasons, judgment as a matter of law is warranted with respect to all MV3's sole count of infringement (direct and indirect) with respect to Asserted Claims 1, 15, 21, 23, 30, 32 and 53. Likewise, MV3 offered no evidence upon which a reasonable jury could rely that Roku was aware of the patent prior to being sued or encouraged anyone, let alone the Roku TV manufacturers, to infringe the '223 patent.

    **B.    Damages**

MV3 seeks an award for damages for the alleged infringement of the '223 patent in the form of a reasonable royalty based on the survey approach set forth by its expert, Mr. Roy Weinstein. 10/08/2020 Trial Transcript, Testimony of Mr. Roy Weinstein.

In his approach, Mr. Weinstein used results from a survey conducted by Dr. Marais that estimated that 10.5% of Roku product purchasers would not have purchased their device at the price they paid if the ability to perform screen mirroring and casting was not available. Mr. Weinstein applied this 10.5% figure to Roku's U.S. sales of accused products to determine at-risk unit sales and at-risk revenues over the calculated time period. By applying an average gross profit margin to these values, Mr. Weinstein arrived at an at-risk profit value during this

period.

Roku moves for judgment as a matter of law on damages because MV3's requested damages with respect to the survey are not supported by the evidence and the evidence presented by MV3 is so flawed that a reasonable jury could not find for MV3 on damages based on the survey approach.

In short, MV3 failed to elicit requisite evidence to support its reasonable royalty because:

- the survey is fundamentally flawed by including Play on Roku casting, a non-accused feature, lumped together with the accused screen mirroring and DIAL casting features;

- the survey is unreliable based on numerous additional flaws and biases as well as flawed assumptions in Mr. Weinstein's analysis; and

- Mr. Weinstein's attempt to "apportion" out the Play on Roku results from his ultimate royalty rate based on usage data is not based on any scientifically valid methodology and relies on flawed assumptions.

First, the explicit description of the survey details that (1) screen mirroring; (2) casting from Netflix, YouTube, or Hulu (i.e., DIAL); and (3) casting personal content (i.e., Play on Roku) are the features to be considered by the respondents. This is not disputed by the parties. (*E.g.*, October 6 Hearing Tr. at 3:19-4:5 (MV3 counsel explaining that the survey received results about the importance of these three features).) But, after the survey was completed, MV3 decided to no longer accuse casting personal content (*i.e.*, Play on Roku). With this flaw, it is impossible to appropriately isolate the effect of the accused features on consumer purchase decisions and attempting to correct for this error after the fact is simply not possible. And, including this non-accused feature leads to inflated results that are not relevant to the case.

7

Surveys that include non-accused features are often excluded, supporting Roku's assertion that it would not be reasonable for a jury to rely on this approach for damages. *See, e.g., Fractus, S.A. v. Samsung*, No. 6:09-cv-203, 2011 U.S. Dist. LEXIS 154697, at *13 (E.D. Tex. Apr. 29, 2011) (excluding survey evidence related to the "value of internal antennas not tied directly to Plaintiff's technology" because it "confuses the issues and must be excluded"); *Unwired Planet, LLC v. Apple Inc.,* No. 13-cv-04134, 2017 U.S. Dist. LEXIS 20928, at *4 (N.D. Cal. Feb. 14, 2017); *Parallel Networks Licensing, LLC v. Microsoft Corp*., 777 Fed. Appx. 489, 492-93 (Fed. Cir. 2019) (nonprecedential) (affirming the district court's excluding the survey because the survey failed to distinguish between infringing and non-infringing uses and overstated the percentage of customers involved in direct infringement).

The survey also includes additional problems with respect to leading questions and biases. For example, the screening questions immediately allowed respondents to guess that the survey wanted Roku purchasers, inviting yea-saying bias and demand artifacts (*i.e.*, respondents doing what they believe is desired) and achieving an inflated share of respondents indicating that they are Roku purchases. And, the survey strongly emphasized casting and mirroring out of context of other, more well-known and fundamental Roku functionalities, thereby artificially inflating the importance of these features in the respondents' minds.

Mr. Weinstein's reliance on the survey is also premised on false assumptions. For example, Mr. Weinstein assumes that all the people who indicated they would not have paid the price they paid if the ability to perform screen mirroring and casting was not available. But, the survey goes on to show that numerous people would have purchased the device at various discount levels, information that Mr. Weinstein ignored. Thus, the 10.5% does not account for people who would have simply waited for a discount. Similarly, Mr. Weinstein ignores that 25%

8

of Rokus are given as gifts, and thus the purchaser may not ultimately care about the accused screen mirroring and DIAL casting features.

Finally, nothing in the evidence proves that usage data from a non-accused feature can be used to correct purchasing data with respect to a lumped group of accused and non-accused features. Mr. Weinstein failed to provide any support for why a share of streaming hours can be used to correct the survey to accurately represent only the two accused features, without Play on Roku. Using usage data to correct damages calculations based on purchase decisions is beyond comparing apples to oranges. Usage data cannot be correlated with a reason to purchase even if it was the same feature and the same person, never mind with three blended features and different, anonymous people, as is the case here.

Because the survey did not test the value of the accused functionality and is replete with biases and leading questions, and because the value associated with the accused functionality cannot be obtained after the fact by baseless calculations based on usage data, Roku is entitled to JMOL that reasonable jurors could not find for MV3 on damages based on this survey approach.

### III. CONCLUSION

For the reasons set forth herein, Roku respectfully requests that the Court enter judgment as a matter of law in its favor with respect to the sole count of direct infringement, either literal or under the doctrine of equivalents, and indirect infringement as set forth in the Complaint and

further to find that damages should not be awarded in light of the Court's judgment of no infringement.

    Respectfully submitted,

    /s/ Alexander J. Hadjis

    Alexander J. Hadjis (*pro hac vice*)
    Lisa M. Mandrusiak (*pro hac vice*)
    Frank J. West (*pro hac vice*)
    Christopher Ricciuti (*pro hac vice*)
    OBLON, MCCLELLAND, MAIER
    & NEUSTADT, L.L.P.,
    1940 Duke Street
    Alexandria, VA 22314
    (703) 413-3000
    ahadjis@oblon.com
    lmandrusiak@oblon.com
    fwest@oblon.com
    cricciuti@oblon.com

    Richard D. Milvenan
    State Bar No. 14171800
    McGINNIS LOCHRIDGE LLP
    600 Congress Avenue, Suite 2100
    Austin, Texas 78701
    (512) 495-6000
    rmilvenan@mcginnislaw.com

    David N. Deaconson
    State Bar No. 05673400
    Pakis, Giotes, Page & Burleson, P.C.
    400 Austin Avenue
    Waco, TX 76701

    Darryl Adams
    Texas Bar No. 00796101
    SLAYDEN GRUBERT BEARD LLC
    401 Congress Ave., Ste. 1650
    Austin, Texas 78701
    dadams@sgbfirm.com

    ATTORNEYS FOR
    DEFENDANT ROKU, INC.

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing document was served on all counsel of record via electronic transmission on October 8, 2020.

/s/ Lisa M. Mandrusiak