UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

October 14, 2020

| | |
|---|---|
| MV3 PARTNERS LLC,<br><br>                 **Plaintiff,**<br><br>**v.**<br><br>ROKU, INC.<br><br>                 **Defendant.** | **Civil Action No.: 6:18-cv-00308-ADA**<br><br>**JURY TRIAL DEMANDED** |

## FINAL JURY INSTRUCTIONS

1.   **Jury Charge**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or

1

done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

2.    **Evidence**

The evidence you are to consider consists of the testimony of the witnesses here at trial or at a deposition that has been presented to you, the documents and

other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The lawyers' questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence. The notes taken by any juror are not evidence.

During the trial I may not have let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. Further, sometimes I may have ordered you to disregard things that you saw or heard, or struck things from the record. You must follow my rulings and completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply

requires that you find facts from all the evidence in the case, whether direct, circumstantial, or a combination of the two. In judging the facts, you should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence as I have defined it here, and nothing else.

## 3.    Witnesses and Impeachment by Inconsistent Statements

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. For instance, has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe

4

the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. This instruction applies to the testimony of all witnesses.

4.    **Expert Testimony**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

5.    **Deposition Testimony**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was

present and recorded the testimony. The questions and answers have been read or shown to you. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

In this trial, MV3 and Roku each designated some of their employees as their "Rule 30(b)(6)" witnesses. These witnesses then testified on behalf of their companies on certain subjects, and about information that is known or reasonably available to their companies. These witnesses include: for MV3, Wayne Barr and David Marshak and for Roku, David Mendenhall, Stephen Sprich and Kevin Bright. Each company is bound by the testimony of its Rule 30(b)(6) witnesses, but only with respect to testimony that is responsive to one of the subjects for which the witness specifically was designated. Their testimony is the same thing as the testimony by the company itself regarding those topics for which the witness was designated. Such witnesses may also testify in their personal capacity as fact witnesses; in that capacity their testimony is only binding on themselves and they should be treated as any other witness.

## 6.    <u>Stipulated Testimony</u>

A "stipulation" is something that the attorneys agree is accurate. When there is no dispute about certain testimony, the attorneys may agree or "stipulate" to that testimony.

Stipulated testimony must be considered in the same way as if that testimony had been received here in court.

**7.    Stipulations of Fact**

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

**8.    Limiting Instruction**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

**9.    Non-Practicing Entity**

A patent gives the owner the right to exclude others from making, using, offering to sell, or selling the claimed invention within the United States or importing it into the United States. A party does not waive the right to exclude others by not commercializing or manufacturing the invention disclosed in the patent.

**10.    Charts and Summaries**

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts

unless I specifically admit a chart or summary into evidence. You should determine the facts from the evidence.

## 11. Demonstrative Evidence

Certain exhibits shown to you are illustrations of the evidence, but are not themselves evidence. We call these types of exhibits "demonstrative exhibits." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.

## 12. Bias – Corporate Party Involved

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

## 13. Burden of Proof: Preponderance of The Evidence

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on MV3.

As I have already told you, in this case, MV3 contends that Roku infringes certain claims of the '223 patent. MV3 has the burden of proving patent infringement by a preponderance of the evidence. MV3 also contends that it is entitled to damages for Roku's alleged infringement. If MV3 proves infringement, MV3 also has the burden of proving the amount of any damages for patent

infringement by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

## 14. Overview of Applicable Law

The first issue you will be asked to decide is whether Roku has infringed the claims of the '223 patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. To show infringement of a patent claim, MV3 must show, by a preponderance of the evidence, that Roku's products include each and every element in that patent claim. There are a few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you throughout these jury instructions. In general, however, Roku may infringe the '223 patent by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product or by using a method meeting all the requirements of a claim of the '223 patent. Roku may also indirectly infringe the '223 patent by inducing another person or entity to infringe.

If you decide that any claim of the '223 patent has been infringed, you will then need to decide any money damages to be awarded to MV3 to compensate it for the infringement. A damages award should put MV3 in approximately the

same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what MV3 would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate MV3 and not to punish Roku. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate MV3 for the infringement, in order to punish Roku. I will give you more detailed instructions on the calculation of damages later.

## 15. The Role of the Claims of a Patent

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent are intended to provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at

the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement.

The claims are intended to define, in words, the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. Each of the claims must be considered individually.

For claim limitations that I have not construed – that is, interpreted or defined – you are to use the plain and ordinary meaning of the limitations as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the invention.

## 16.    How a Claim Defines What it Covers

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The

coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement.

## 17.  <u>Independent and Dependent Claims</u>

This case involves two types of patent claims: independent claims and

dependent claims.

An "independent claim" does not refer to any other claim of the patent. An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

In this case, an example of an independent claim is claim 1 of the '223 patent. You know claim 1 is independent because it mentions no other claims. Accordingly, the words of claim 1 of the '223 patent are read by themselves in order to determine what claim 1 covers. You know claim 2, on the other hand, is a dependent claim because it refers to independent claim 1. Accordingly, the words of claims 1 and 2 are read together in order to determine what claim 2 of the patent covers.

## 18.  "Comprising" Claims

The beginning portion, or preamble, to claims 1 and 32 use the phrase "A mobile set top box comprising." The preamble to claim 30 uses the phrase "A method comprising." The word "comprising" means "including the following but not excluding others." When "comprising" is used in the preamble, if you decide that an accused product includes all of the elements or limitations in that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

## 19.  Claim Interpretation

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims. As I have previously instructed you, you must accept my definition of these words in the claims as correct. For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning to one of skill in the art at the time of the invention. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement.

These issues are yours to decide.

| Term | Construction |
|---|---|
| "television signal" | Plain and ordinary meaning |
| "docking port" | Plain and ordinary meaning[1]<br><br>[1] - The parties agreed that "docking port" is either (1) hardware or (2) hardware and software. |
| "configured to accept" | Plain and ordinary meaning |
| "accepted in" | Plain and ordinary meaning |
| "adaptive circuitry" | Plain and ordinary meaning |
| "determining, based on the validity of the user, that the received first media content is permitted to be provided to the display device" | Plain and ordinary meaning |

| | |
|---|---|
| "mobile set top box" | Preamble is not limiting.<br><br>"a device that combines the functionality of a set top box and a mobile communication system" |
| "determining the native display resolution of the second size format of the display device based on a response resulting from the query of the display device" | "determining the maximal allowed display resolution of the second size format of the display device based on a response resulting from a request for information from the display device."<br><br>The "querying the display device" limitation must begin before the "determining the native display resolution of the second size format of the display device based on a response resulting from the query of the display device" limitation begins. |
| "multicast broadcasts" | Plain and ordinary meaning |

## 20.   Infringement Generally

I will now instruct you how to decide whether or not Roku has infringed the '223 patent. Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.

A patent owner has the right to stop others from using the invention covered by his or her patent claims in the United States during the life of the patent. If any person makes, uses, sells or offers to sell within the United States or imports into the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have defined each of them, to the accused products, and determine whether or not there is infringement. You should not compare the accused products with any specific example set out in the patent or with the prior art in reaching your decision on infringement. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you. You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

In this case, there are two possible ways that a claim may be infringed. The two types of infringement are called direct infringement and inducement. Inducement is referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, MV3 must also prove that Roku's indirect infringement

caused direct infringement.

In this case, MV3 has alleged that Roku directly infringes the '223 patent. In addition, MV3 has alleged that entities other than Roku directly infringes the '223 patent, and Roku is liable for actively inducing that direct infringement by entities other than Roku.

In order to prove infringement, MV3 must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

## 21. Direct Infringement – Knowledge of the Patent and Intent to Infringe Are Immaterial

In this case, MV3 asserts that Roku has directly infringed the '223 patent. Roku is liable for directly infringing MV3's patent if you find that MV3 has proven that it is more likely than not that Roku made, used, imported, offered to sell, or sold the invention defined in at least one claim of MV3's patent.

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement.

## 22. Direct Infringement By "Literal Infringement"

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." In order to prove direct

infringement by literal infringement, MV3 must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Roku made, used, sold, offered for sale within, or imported into the United States a product, method or process that meets all of the requirements of a claim and did so without the permission of MV3. You must compare the product, method or process with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met. If you find that the accused product, method or process includes each element of the claim, then that product, method or process infringes the claim. Infringement does not require proof that the person copied a product, method or process or the patent. However, if an accused product, method or process omits any requirement recited in one of the asserted claims, then that product, method or process does not infringe that claim.

You must determine, separately for each asserted claim, whether or not there is infringement. There is one exception to this rule. If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product, method or process meets additional requirements of any claims that depend from the independent claim, thus, whether those claims have also been infringed. A dependent claim includes all the

requirements of any of the claims to which it refers plus additional requirements of its own.

## 23.  Direct Infringement Under The Doctrine Of Equivalents

If a company makes, uses, sells, offers to sell within, or imports into the United States a product that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim "under the doctrine of equivalents."

Under the doctrine of equivalents, a product infringes a claim if the accused product or method contains elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused product. You may find that an element or step is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure or step (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement for the claim that is not literally present. In order for the structure or step to be considered interchangeable, the structure or step must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient. In order to prove

infringement by "equivalents," MV3 must prove the equivalency of the structure or step to a claim requirement by a preponderance of the evidence.

## 24. Indirect Infringement – Active Inducement

MV3 alleges that Roku is liable for infringement by actively inducing its customers to directly infringe the patent-in-suit. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Roku is liable for active inducement of a claim only if MV3 proves by a preponderance of the evidence that:

(1) The acts are actually carried out by another, *e.g.,* TV manufacturers, and that the other directly infringes that claim;

(2) Roku took action during the time the patent-in-suit was in force intending to cause the infringing acts by another; and

(3) Roku was aware of the patent-in-suit and knew that the acts, if taken, would constitute an infringement of that patent.

Although MV3 need not prove that Roku has directly infringed to prove patent infringement, MV3 must prove that someone directly infringed. If there is no direct infringement by anyone, Roku cannot have actively induced infringement of the patent-in-suit.

If you find that Roku was aware of the patent-in-suit, but believed that the acts it encouraged did not infringe that patent, Roku cannot be liable for inducement. In order to establish inducement of infringement, it is not sufficient that another directly infringes the claims. Nor is it sufficient that Roku was aware of the act(s) by another that allegedly constitute the direct infringement. Rather, in order to find inducement of infringement, you must find that Roku specifically intended another to infringe the patent-in-suit. The mere fact, if true, that Roku knew or should have known that there was a substantial risk that another's acts would infringe the patent-in-suit would not be sufficient for active inducement of infringement.

## 25.  Patent Damages – Introduction

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Roku infringed any claim of the patent-in-suit, you must then determine the amount of damages to be awarded to MV3 to compensate it for that infringement. If you find that Roku has not infringed any claim of the patent, then MV3 is not entitled to any damages.

If you award damages, they must be adequate to compensate MV3 for any infringement you find. You must not award MV3 more damages than are adequate to compensate for the infringement, nor should you include any

additional amount for the purpose of punishing Roku. Damages are not meant to punish an infringer or set an example. Your damages award, if you reach this issue, should put MV3 in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than what MV3 would have received had it been paid a reasonable royalty.

While MV3 is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

MV3 seeks patent damages in the form of a reasonable royalty. But, regardless of the type of damages you may choose to award, you must be careful to ensure that the award is no more or less than the value of the patented invention.

## 26. Reasonable Royalty – Definition

A reasonable royalty is defined as the money amount MV3 and Roku would have agreed in a hypothetical negotiation taking place at the time when infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of MV3 and Roku would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. Unlike

in a real world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited to or increased by the actual profits the alleged infringer made.

**27.  Reasonable Royalty – Factors**

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner at the time and the alleged infringer would consider in setting the amount the alleged infringer should pay. I will list for you a number of factors you may consider. They are as follows:

1. The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent-in- suit.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as whether they are competitors.in the same territory in the same line of business, or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patents, its commercial success, and its current popularity.

9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee-who desired, as a business proposition, to obtain a license to manufacture and sell a particular article

embodying the patented invention-would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Roku would have been willing to pay and MV3 would have been willing to accept, acting as normally prudent business people.

## 28.   Royalty – Attribution/Apportionment

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Roku's size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you

must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

## 29. Reasonable Royalty – Convoyed Sales

You may have heard evidence during of trial of convoyed sales. You are instructed that Plaintiff is not seeking reasonable royalties as a result of convoyed sales.

## 30. Reasonable Royalty – Timing

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non- infringing alternatives.

## 31. Reasonable Royalty – Availability of Non-Infringing Substitutes

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product/method that is

licensed under the patent or that does not infringe the patent.

## 32.   Date of Commencement of Damages

For direct infringement, knowledge of the patent is not relevant. If you find

that Roku has directly infringed, the date of commencement of damages for direct

infringement is the date the patent issued, October 14, 2014. The parties agree that

this is the date damages commence for direct infringement.

As I have previously explained, knowledge of the patent-in-suit is a

prerequisite to show inducement of infringement. The parties agree that the Roku

had knowledge of the patent as of the date of the filing of the complaint, October

16, 2018. Therefore, if you find that Roku has indirectly infringed, the date of

commencement of damages for indirect infringement is October 16, 2018.

## 33.   Duty to Deliberate; Notes

It is now your duty to deliberate and to consult with one another in an effort

to reach a verdict. Each of you must decide the case for yourself, but only after an

impartial consideration of the evidence with your fellow jurors. During your

deliberations, do not hesitate to reexamine your own opinions and change your

mind if you are convinced that you were wrong. But do not give up on your honest

beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been

allowed to take notes during this trial. Any notes that you took during this trial are

only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. Answer each question in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to

anyone, not even to me, your numerical division on any question.

## 34. Social Media

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.