**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **MV3 PARTNERS LLC,** | § | |
| | § | **Civil Action No.: 6:18-cv-308-ADA** |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **ROKU, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**MV3 PARTNERS LLC'S OBJECTIONS**
**TO ROKU, INC.'S BILL OF COSTS**

Roku's request for costs of more than $350,000 is excessive and should be significantly reduced in the Court's discretion for this single-patent case, in which only infringement and damages were tried.  Numerous factors support this reduction, including (i) Roku's documented misconduct relating to meritless defenses and frivolous motions; (ii) the closeness of the legal issues presented; and (iii) various other impractical and excessive costs relating to depositions, photocopies, rush transcripts, and trial graphics.

## I.    LEGAL ARGUMENT

### A.    Applicable Law

Whether to award costs under Federal Rule of Civil Procedure 54(d)(1) is entirely discretionary with the Court. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002 (2012).  Section 1920 serves as a cap on costs, but the district court has discretion to decline to tax any listed costs.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987); 28 U.S.C. § 1920.  The issue of costs raises procedural issues not unique to patent law, and therefore is governed by regional circuit law.  *In re Ricoh Co., Ltd. Patent Litig.*, 661 F.3d 1361, 1364 (Fed. Cir. 2011).  The Fifth Circuit has suggested a wide range of reasons to justify withholding costs from the prevailing party, including misconduct by the prevailing party and close and difficult legal issues presented.  *Smith v. Chrysler Grp., LLC*, 909 F.3d 744, 753 (5th Cir. 2018).

### B.    Roku's Misconduct

#### 1.    Meritless Defenses

MV3 should not be taxed for Roku's decision to knowingly pursue meritless defenses. Roku racked up thousands of dollars of costs related to its inequitable conduct and invalidity

defenses, which Roku knew were meritless from the outset of litigation, used as litigation tactics, and dropped immediately before trial. [1]  (See Dkt. No. 338 (Roku letter).)

Trial courts enjoy "considerable leeway to deny fees in light of [the prevailing party's] own litigation misconduct."  *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1468 (Fed. Cir. 1997) (affirming district court's denial of fees based on requesting party's misconduct); *Smith*, 909 F.3d at 753 (noting misconduct by the prevailing party as reason for denying costs to prevailing party).  From the very outset of this litigation, Roku knew or should have known that it could not prevail on either defense, yet continued to pursue them (until the eve of trial) as a litigation tactic against MV3.

Roku's inequitable conduct defense was meritless outright.  The basis of Roku's inequitable conduct defense was that a routine assertion by MV3's patent prosecutor, that "no new matter has been introduced," was a material misrepresentation to the United States Patent and Trademark Office.  The argument was preposterous on its face and unsupported by the evidence.[2]

Roku's inequitable conduct defense was premised on a rejected construction of the claim term "adaptive circuitry."  This Court rejected Roku's construction of "adaptive circuity" in its Claim Construction Order ("CCO") in October 2019.  (Dkt. No. 90 at 6.)  Nonetheless, Roku decided to use its rejected construction in multiple expert reports (filed in January and February

---

[1] In support of its Motion and arguments herein, MV3 submits Exhibit 1, which details specific proposed cost eliminations and reductions.
[2] Roku's inequitable conduct defense was premised on the mistaken belief that MV3's patent prosecutor – and potentially others at MV3 – lied to the PTO when its sixth amendment included the statement "no new matter has been introduced" when the proposed amendment to claim 27 included the term "adaptive circuitry," which Roku asserted is not supported by the specification. (*See* Dkt. No. 141 at 7-17.)  Roku's expert (Mr. Stoll) applied the incorrect standard for inequitable conduct to claim there was "a pattern of unmistakably false statements."  (*Id.* at 8.)  Yet the evidence showed there was no such pattern – only two claims in one of Mr. Walter's amendments was rejected by the Examiner under Section 112 grounds.  The absurdity of Mr. Stoll's opinion was discussed at length in MV3's Motion for Summary Judgment (Dkt. No. 141).

2020) which were used to support its inequitable conduct defense.  As a result, MV3 filed Motions to Exclude the Opinions in Dr. Samuel Russ's Rebuttal Expert Report and Dr. Alan Bovik's Opening and Rebuttal Expert Reports.  The Court granted MV3's motions, striking the entirety of Dr. Russ's and Dr. Bovik's opinions related to adaptive circuitry and prohibiting the experts from opining on the construction.  Thus, this defense was unsustainable, a fact that Roku was aware of since at least claim construction, yet defiantly chose to proceed with, generating unnecessary and avoidable costs, such as those associated with expert depositions,[3] and the *Daubert* and summary judgment motions filed related to these defenses.[4]

The same is true for Roku's invalidity defense.  In addition to maintaining a frivolous Section 112 invalidity defense relying on Roku's proposed—and rejected—construction for "adaptive circuitry," Roku's invalidity expert (Dr. Russ) did not address all of the claim limitations, nor provide any specific motivations to combine in his expert report.  (Dkt. No. 128.) Additionally, Dr. Russ was self admittedly not involved in Roku's final invalidity contentions. Yet, Dr. Russ's report copied from those final invalidity contentions extensively and verbatim – *including errors*, meaning he did not do his own analysis.  *Id.*  Consequently, this defense was meritless, and the costs associated with it should not be taxed to MV3.

---

[3] The depositions for the following individuals were taken to support Roku's inequitable conduct and invalidity defenses (and occurred after it was plainly apparent such defenses were meritless). Thus, the costs associated with these party depositions, in whole or in part, should not be taxed to MV3:  Mr. Walters, Mr. Carmichael, Dr. Bovik, Mr. Stoll, Dr. Russ, and Dr. Schonfeld.  Since Dr. Russ and Dr. Schonfeld also opined on other topics, their deposition costs should be reduced by half.

[4] Additionally, the pretrial conference transcript costs which covered the frivolous *Daubert* and Summary Judgment motions should be reduced proportionally, as well as other hearing transcripts identified in Exhibit 1.  The Document Reproduction Costs for the *Daubert* and summary judgment motions should also be reduced proportionally.

Even further, any costs awarded to Roku should be limited to those issues on which it was actually the prevailing party, and Roku should not be considered a prevailing party on defenses which were dropped prior to trial, precisely because they would be unsuccessful.  *Shum v. Intel Corp.*, 629 F.3d 1360, 1370 (Fed. Cir. 2010) (holding that the court may "reduce the prevailing party's costs award to reflect the extent of its victory . . . .").

## 2. Frivolous Motions

In addition to the motions connected to Roku's two meritless defenses (*see supra*, footnotes 3 and 4), Roku also filed a frivolous transfer motion.  On February 27, 2019, Roku filed its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404, and claimed that "[a]ll of Roku's personnel, facilities, and infrastructure involved in the sales, marketing, distribution, engineering, and design and development of the technical aspects of Roku products implicated in this case, with the exception of a single engineer that works from home in Reno, Nevada, reside in the Northern District of California " that "Roku has no relevant employees [in Austin, Texas]" and that "the Western District of Texas has no true connection to this case."  (Dkt. No. 52 at 1, 9.)  This Court denied Roku's Motion to Transfer.  (Dkt. No. 74.)  However, during trial in this case, the testimony of Roku's witness Scott de Haas flatly contradicted Roku's previous submissions on its Motion to Transfer, which did not go unnoticed by this Court.  In fact, this Court paused trial proceedings and expressed that it was "very troubled" by de Haas' testimony, given that the Court and parties "went through a motion to transfer pretty much based on the fact that everything belonged in California with respect to the Roku employees" and "then, the first Roku employee that was put on the witness stand here was a witness from Austin from the Western District, who testified -- I'm summarizing here, but how important the Austin Roku facility is."  (10/8/20 Afternoon Trial Tr. at 113:3-25.)  Given these revelations, Roku should not be rewarded for filing a frivolous,

4

litigation-tactic-only motion by passing on related costs to Roku.  All costs associated with the motion to transfer, including the deposition of Scott de Haas, transcript costs from the hearing on this motion (5/30/19), and any costs relating to de Haas' trial testimony, should be stricken.

        **C.**      **The Closeness of the Legal Issues Presented**

Taxed costs should be denied or reduced when the legal issues presented were close and difficult.  *Smith v. Chrysler Grp., LLC*, 909 F.3d 744, 753 (5th Cir. 2018).  "The closeness of a case is judged not by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case."  *Harrison v. Proctor & Gamble Co.*, No. 7:06-CV-121-O, 2009 WL 10678211, at *2 (N.D. Tex. Mar. 25, 2009).  This case presented complex and close questions of patent law, as evidenced by the numerous and voluminous filings over two years, voluminous filings at the *Daubert*, Markman, and summary judgment stages, and numerous rulings in favor of MV3 on various complex legal issues before trial even began.

Additionally, the verdict in this case was hard fought and is currently disputed.  While Roku ultimately prevailed at trial on non-infringement of MV3's U.S. Patent No. 8,863,223 (the "'223 Patent"), MV3 is appealing the verdict and seeking a new trial because of Roku's constant and brazen misconduct which tainted the jury and resulted in an unfair trial.  Roku's repeated flouting of this Court's claim construction and other orders—orders which MV3 relied upon to prepare its case—was the basis for the jury's verdict finding the '223 Patent was not infringed.  During the trial, Roku's counsel and witnesses repeatedly disregarded the Court's CCO and its Order on MV3's *Daubert* motions and motions *in limine* ("MIL") in a manner which introduced improper testimony, confused the jury and caused substantial prejudice to MV3.  (Dkt. Nos. 90, 332.)  Roku also presented non-infringement theories that either had never been disclosed or had

been precluded by the Court's grant of MV3's MIL No. 4.  (Dkt. No. 332 at 4-5.)  Among Roku's other misconduct compounding the prejudice leading to the jury's finding non-infringement, were its insinuations that MV3 is a grasping non-practicing entity not entitled to damages – insinuations which violated the Court's ruling on MIL No. 1(i) and were based on comparisons of the damages MV3 sought to two Roku license agreements its witnesses admitted were not comparable.[5]  Under the incredibly complex circumstances of this case, viewed as a whole, it would be inequitable for costs to be taxed against MV3.  Accordingly, a reduction of at least half of the costs sought by Roku in this case is warranted.

### D.     Other Non-taxable Costs

#### 1.     Objections to Deposition Costs

Roku also seeks to recover non-taxable costs that are not authorized by statute and not justified by applicable law, including incidental costs associated with the written deposition transcripts and costs for videos that were not "necessarily obtained for use in the case."  28 U.S.C. § 1920(2) (taxed costs may include "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case").

First, as previously noted and for concurrent reasons, many of the depositions taken were not "necessarily obtained for use in the case" since they were related to frivolous claims and only took place due to Roku's misconduct, after Roku knew or should have known its defenses had no merit.  *See Halliburton Energy Servs.*, *Inc.* v. M-I, LLC, 244 F.R.D. 369, 371 (E.D. Tex. 2007) (costs for depositions only allowed "if the taking of the deposition is shown to have been reasonably necessary in the light of the facts known to counsel at the time it was taken"); *see supra* Section I.B.  Thus, no deposition costs related to the meritless defenses should be awarded.

---

[5] These examples of trial misconduct also support striking costs under Section I.B, *supra*.

Second, besides the wholesale exclusion of all costs related to certain witnesses' depositions, other non-taxable "incidental" costs are reflected in the invoices attached to Defendants' Bill of Costs as Exhibit C (Dkt. No. 419-3).  MV3 objects to all charges other than the standard "transcript" charge, including fees for expedited requests; exhibits, whether hyperlinked or unhyperlinked, and whether in black & white or color; condensed transcripts; digital transcripts and preliminary drafts,  Local Real-time Transcription/Remote Real-time Transcription; and: shipping/delivery.  Under Section 1920 and governing authority, those costs are all "incidental" and non-taxable, and should therefore be excluded.  *Garzes v. Lopez*, No. SA-02-CA-1131-H, 2008 WL 11461796, at \*3 (W.D. Tex. Dec. 31, 2008) ("Incidental costs associated with depositions, such as the cost of expedited delivery, ASCII disks, condensed transcripts, real time reporting, and parking are not recoverable without a good explanation for why those costs were necessary."); *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 761 F.Supp.2d 442, 450 (W.D. Tex. 2010) (denying costs for multiple types of electronic transcripts because "[w]hile these resources were undoubtedly useful in the drafting of motions and preparation for trial, the Court finds that they were primarily a convenience to the parties"); *Weathersby v. One Source Mfg. Tech., L.L.C.*, 2009 WL 8747824, at \*7 (W.D. Tex. Apr. 2, 2009) (denying costs for a condensed transcript, rough transcript, and e-transcript as "excessive and unreasonable").

Additionally, MV3 objects to Roku's requests for costs associated with video depositions. Roku did not affirmatively designate *any* depositions for use at trial.  If any particular witness's testimony in court contradicted testimony provided during deposition, a written transcript would have provided the necessary basis for impeachment.  *Eastman Chem. Co. v. PlastiPure, Inc.*, No. A12–CA–057–SS, 2013 WL 5555373, at \*6 (W.D. Tex. Oct. 4, 2013) (declining to award costs for both transcripts and video recordings of the same depositions where the videos were not used

at trial); *NuVasive, Inc. v. Lewis,* No. A–12–CA–1156–SS, 2014 WL 12873101, at *9 (W.D. Tex. Oct. 22, 2014) ("The Court fails to see how these costs were necessarily obtained for use in this case when the witness at issue actually appeared in person at trial, and the video deposition was not used.")  Thus, these video depositions were obtained for the convenience of counsel or were not necessary for trial, and their associated costs should not be taxed to MV3.

### 2.   Objections to Trial Graphics

MV3 objects to Roku's costs of $267,997.78 relating to graphics and trial equipment as excessive and unreasonable.  Section 1920(4) allows for the recovery of costs "for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4).   However, the Fifth Circuit "has construed the term 'exemplification' narrowly to be limited to 'an official transcript of a public record, authenticated as a true copy for use as evidence.'"  *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 3044594, at *2 (E.D. Tex. July 18, 2017).  Based on this "strict construction" the Fifth Circuit has indicated that expenses for "video exhibit[s]" and "computer animations, videos, Powerpoint presentations, and graphic illustrations used to explain the case to the jury" do not fit within the definition of "exemplifications" and thus do not "fall within the scope of recoverable costs" absent pre-trial approval. *Id.* at *3; *see also Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 335 (5th Cir. 1995) ("Requiring the exchange of exhibits prior to trial does not imply authorization of production of those exhibits.").  Here, such costs were not expressly authorized.

Additionally, the bills attached to Roku's Motion in Exhibit E (Dkt. No. 419-5) are insufficiently detailed and often fail to provide anything more than general line-item billing.  In *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, No. 6:13-CV-00072-RWS (E.D. Tex. Oct. 15,

2019), the court denied the prevailing party's request for trial technician fees because, in addition to lack of prior approval, it found the party had not shown "those costs were 'necessarily' incurred" nor "provided evidence linking [trial technician's] hours billed to specific trial exhibits, demonstratives or other graphics." *Id.* at 9.[6]

Accordingly, Roku's requests for Graphics and Trial Equipment Costs should be denied or granted only in part with several deductions and a clear finding as to which expenses constitute taxable costs under § 1920(4).

### 3.    Objections to Photocopies

Roku's request for copying costs under § 1920(4) should be denied in its entirety because they are excessive and Roku failed to meet their burden in explaining what copies were necessarily obtained for use in the case. *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994) (costs of photocopies necessarily used for use in the litigation are recoverable upon proof of necessity); *Fogleman v. Arabian Am. Oil Co.*, 920 F.2d 278, 286 (5th Cir. 1991). Roku attaches 6 one-page invoices to its request for document reproduction costs that contain almost no detail. (Dkt. No. 419-6 (Ex. F).) Nor does Roku's Memorandum in Support provide further details about the costs incurred beyond the generalized categories (*e.g.*, "reproducing documents while preparing for and conducting trial" which accounts for $9,869.94). (Dkt. No. 419.) In *Ushijima v. Samsung Elecs. Co.*, the court acknowledged that in patent cases "[a]llocating approximately 50% of the prevailing party's copying costs is an acceptable, if 'somewhat crude,' method of accounting for necessary versus unnecessary copies." No. A-12-CV-318-LY, 2015 WL 11251558,

---

[6] Moreover, an entire day of trial on October 5, 2020 was postponed due to a power outage and the parties had to move courtrooms. MV3 should not be billed for any trial technician or graphics costs associated for this day. Further, MV3 itself paid for additional equipment for both parties to use to work within the new courtroom's sound system, and those costs should be deducted from Roku's requested costs. (*See* 10/5/20 Afternoon Trial Tr.)

at *4 (W.D. Tex. July 30, 2015).  The court there found that, although the prevailing party argued that it sought "less than half of its actual document reproduction costs" the party did "not provide any evidence as to what the other reproduction costs are or if they were necessarily connected with the litigation" and only provide "four invoices."  *Id.*  The court explained that "[w]ithout such contextual information, the court cannot determine if the amount requested is reasonable and necessarily obtained for use in the litigation" and concluded the costs requested for copies should be reduced by half.  *Id; see also Fogleman*, 920 F.2d at 286 (no itemized breakdown of the copy costs incurred provided).

This case in indistinguishable from *Ushijima*, as Roku has not provided enough detail or context to prove what the costs were associated with or the necessities of the copies.  Additionally, the excessive amount of costs for paper copies just related to the trial is especially egregious considering the trial court stated there were to be *no paper copies* of exhibits used during trial because of the on-going COVID-19 pandemic.  (9/23/20 Pretrial Conference Tr. at 57:3) ("THE COURT: But everyone knows we're not going to have paper exhibits, if that wasn't clear before."). Thus, if not denied in their entirety, Roku's document reproduction costs should be reduced by at least half.[7]

## II.    CONCLUSION

MV3 respectfully requests that the Court grant MV3's objections, only awarding costs that are taxable under section 1920 and apply reductions as applicable under authoritative interpreting authorities.  MV3 also requests such other and further relief as the Court may deem appropriate.

---

[7] This argument does not take into consideration the separate reduction of document reproduction costs due to misconduct and frivolous motions.

Dated:  January 19, 2021                    RESPECTFULLY SUBMITTED,

By: */s/ Andy Tindel*
    J. Mark Mann (Texas Bar No. 12926150)
    mark@themannfirm.com
    G. Blake Thompson (Texas Bar No. 24042033)
    blake@themannfirm.com
    **MANN | TINDEL | THOMPSON**
    300 W. Main Street
    Henderson, Texas 75652
    913 Franklin Ave., Suite 201
    Waco, Texas 76701
    Telephone:  (903) 657-8540
    Facsimile: (903) 657-6003

    Andy Tindel (Texas Bar No. 20054500)
    atindel@andytindel.com
    **MANN | TINDEL | THOMPSON**
    112 E. Line Street, Suite 304
    Tyler, Texas 75702
    Telephone: (903) 596-0900
    Facsimile: (903) 596-0909

    Craig D. Cherry (Texas Bar No. 24012419)
    ccherry@haleyolson.com
    **HALEY & OLSON, P.C.**
    100 N. Ritchie Road, Suite 200
    Waco, Texas 76712
    Telephone: (254) 776-3336
    Facsimile: (254) 776-6823

    Jonathan K. Waldrop (CA Bar No. 297903)
    (Admitted in this District)
    jwaldrop@kasowitz.com
    Darcy L. Jones (CA Bar No. 309474)
    (Admitted in this District)
    djones@kasowitz.com
    Marcus A. Barber (CA Bar No. 307361)
    (Admitted in this District)
    mbarber@kasowitz.com
    John W. Downing (CA Bar No. 252850)
    (Admitted in this District)
    jdowning@kasowitz.com
    Heather S. Kim (CA Bar No. 277686)
    (Admitted in this District)
    hkim@kasowitz.com
    Jack Shaw (CA Bar No. 309382)
    (Admitted in this District)
    jshaw@kasowitz.com
    ThucMinh Nguyen (CA Bar No. 304382)
    tnguyen@kasowitz.com
    (Admitted *pro hac vice*)

11

**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Paul G. Williams (GA Bar No. 764925)
(Admitted *pro hac vice*)
pwilliams@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
1230 Peachtree Street N.E., Suite 2445
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

**Attorneys for Plaintiff**
**MV3 PARTNERS LLC**

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE] — Document Filing System, to all counsel of record, on this 19th day of January, 2021.

/s/ Andy Tindel
Andy Tindel