# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| MV3 PARTNERS, LLC,<br><br>                Plaintiff,<br>   v.<br><br>ROKU, INC.,<br><br>                Defendant. | Civil Action No.: 6:18-cv-00308-ADA<br><br>**Jury Trial Demanded** |

## **ROKU'S REPLY IN SUPPORT OF ITS BILL OF COSTS SUBMISSION**

MV3 Partners attempts to downplay its patent case in an effort to challenge Roku's bill of costs statement. In reality, however, MV3 did not pursue a simple case against Roku.

MV3 sought over $41 million, and up to about $150 million, in damages. MV3's case against Roku involved internet streaming technology and implicated all of Roku's streaming media player products and all of the Roku TV products offered by Roku's many third party TV manufacturer partners. Eighteen witnesses testified at trial — nine for MV3 and nine witnesses were called by Roku.

All told, MV3's case against Roku required Roku to expend over $350,000 in taxable litigation costs and much, much more in overall costs during the trial and over the course of the two-year period MV3 vigorously pursued Roku. MV3, having lost, cannot now be heard to marginalize its case to avoid compensating Roku for the legitimate and reasonable taxable costs Roku expended to defend itself at trial.

## I. ROKU'S DEFENSES AND MOTIONS WERE NOT MERITLESS OR FRIVOLOUS

**Roku's Defenses.** MV3's assertion that Roku "knew or should have known that it could not prevail" on "inequitable conduct and invalidity," (ECF No. 422 1-2), is conjectural at best and has no bearing on Roku's taxable costs. MV3 made two separate attempts to remove Roku's inequitable conduct defense from the case. Both were rejected. (ECF Nos. 75 and 332.)

In the first instance, the Court denied MV3's motion to dismiss, and, more recently, the Court denied MV3's motion for summary judgment. (*Id.*) These outcomes demonstrate that Roku's inequitable conduct defense was not meritless. Roku voluntarily dropped its inequitable conduct defense to streamline its case for trial, not out of a concern that the defense lacked merit.

MV3 also contends that Roku's invalidity defense was meritless, but its own behavior contradicts its current contention. Not once did MV3 move to dismiss or strike Roku's invalidity defense, even though it challenged Roku's inequitable conduct defense on two separate

1

occasions.  MV3 also declined to move for judgment as a matter of law on any of Roku's affirmative defenses, acquiescing, in effect, to their merit.

MV3's final objection to costs associated with Roku's affirmative defenses must likewise fail.  MV3 claims that "any costs awarded to Roku should be limited to those issues on which it was actually the prevailing party."  (ECF No. 422 at 5.)  Not so.  As the sole prevailing party, Roku may recover costs that were "reasonably necessary" at the time they were incurred.  *Core Wireless Licensing S.a.r.l. v. LG Elecs.*, No. 2:14-CV-00912-JRG, 2020 WL 1557492, at *2 (E.D. Tex. Apr. 1, 2020) (awarding deposition costs for 11 patents dropped before trial).  In fact, "a deposition need not be introduced into evidence at trial in order to be necessarily obtained for use in the case."  *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991).

Roku's strategic decision to drop its remaining affirmative defenses, without more, is immaterial to the fact that Roku is entitled to recover costs that were associated with developing them for trial.  MV3's reliance on *Shum v. Intel Corp.* lends no support to its position.  There, unlike here, both parties won on some claims and lost on others, requiring the prevailing party's costs to be offset by the costs associated with the claims that were won by the non-prevailing party. 629 F.3d 1360, 1370 (Fed. Cir. 2010).  Since Roku is the prevailing party on all claims that were tried, the Court need not account for any costs associated with claims won by MV3.

**Roku's Motions.**  MV3 points to a single transfer motion and a cherry-picked segment of the transcript of Scott de Haas's testimony to allege that Roku has filed frivolous motions.  MV3 fails to provide any authority to support a reduction of costs for pleadings, like a transfer motion, not related to trial.  Because Roku's transfer motion constituted a preliminary matter unrelated to trial, the inquiry should stop there and MV3's request should be rejected.

Nonetheless, Roku's transfer motion positions were entirely consistent and accurate with the trial testimony of Scott de Haas.  Roku's transfer position was that, because Roku's relevant

operations and engineers were located in and around Northern California, the case should have been transferred there as a matter of convenience. Roku has never mischaracterized — either in its transfer motion or at trial — its presence and operations in Austin.

## II. MV3 FAILS TO IDENTIFY CLOSE OR DIFFICULT LEGAL ISSUES

MV3 claims that "complex and close questions of patent law" were presented in this case, but completely fails to identity which legal issues, if any, meet this criteria. (ECF No. 422 at 5.) Without more, there is no way to determine what costs should be stricken, and MV3's wholesale approach to striking half of Roku's costs on this basis must be rejected.

MV3's remaining arguments in support of its contention that the legal issues are close and difficult are not relevant. MV3 groundlessly attacks Roku's conduct before and at trial and claims that the jury was tainted. (*Id.*) Such overheated rhetoric has already been rejected by this Court in MV3's request for a new trial, (ECF No. 410 (stating that MV3's motion for a new trial "is not well taken")), and provides no support for MV3's claims, much less warrant a 50% reduction of total taxable costs.

## III. ROKU MAY RECOVER DEPOSITION, GRAPHICS, AND PHOTOCOPY COSTS

**Depositions.** MV3 argues that any depositions associated with Roku's inequitable conduct and invalidity claims were not "necessarily obtained for use in the case." (ECF No. 422 at 6.) As explained above, Roku properly asserted these affirmative defenses, and conducted depositions that were reasonably necessary for trial preparation.

MV3's objection to the video recording of the depositions should also be rejected. Section "1920(2) permits costs to be taxed for both printed and electronically recorded transcripts so long as they are necessarily obtained for use in the case." *Eolas Techs. Inc. v. Adobe Sys., Inc.*, 891 F. Supp.2d 803, 805 (E.D. Tex. July 19, 2012). Although courts are currently split on whether both costs are permitted under the 2008 amended version of § 1920(2),

most courts have held that they are permitted. *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-00764-WCB-RSP, 2015 WL 164072, at *2 (E.D. Tex. Jan. 13, 2015).

**Trial Graphics.** MV3 concedes that, with pre-trial approval, expenses related to "video exhibits" and "computer animations, videos, Powerpoint presentation, and graphic illustrations used to explain the case to the jury" fall within the ambit of Section 1920(4). (ECF No. 422 at 8.) In "highly technical cases, as the case at hand, trial technology is not only reasonable but necessary." *Two-Way Media, LLC v. AT&T Servs., Inc.*, No. SA-09-CA-00476-OLG, 2013 WL 12090356, at *6 (W.D. Tex. Nov. 22, 2013) (invitation to submit tutorials is "tantamount to pretrial approval"); *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, No. 2:17-CV-07639 SJO-KS, 2020 WL 2220206, at *3 (C.D. Cal. Apr. 2, 2020) ("graphics presentations greatly enhanced the Court's understanding of the technology" in complex patent case and "were necessary to streamline the case and aid comprehension of the jury"). Indeed, courts require "parties to present their evidence at trial in a streamlined, orderly, and efficient matter." *Versata Software Inc. v. SAP Am., Inc.*, No. 2:07-CV-153 CE, 2011 WL 4436283, at *2 (E.D. Tex. Sept. 23, 2011) (awarding professional graphics services without identifying specific pre-trial authorization).

Accordingly, as is the case here, "[t]he use of technology support during trial, particularly in complicated cases . . . is an anticipated, useful, and necessary tool to assist in the efficient presentation of cases." *Id.* Graphics presentations are further justified where, as here, a "substantial amount [is] at stake." *Juno Therapeutics*, 2020 WL 2220206, at *3.

MV3 also cites to *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, No. 6:13-CV-00072-RWS (E.D. Tex. Oct. 15, 2019) to claim that Roku's bills fail to provide "anything more than general line-item billing." Unlike here, that case failed to show the prevailing party's costs were necessarily incurred. Moreover, while *Network-1* found that the trial technician's hours failed to specify how much time was billed to each trial exhibit, demonstrative, or other graphic, such

a standard should not be adopted by this Court. As a practical matter, trial technicians do not invoice for how much time or material is spent on *each* exhibit. Roku thus identified which invoice was associated with the development of the trial and *Markman* graphics, the billed time for each trial technician, and the costs associated with the use of the trial equipment.

**Document Reproduction.** MV3 objects to Roku's recovery of $12,464.76 in costs for reproduction on the grounds that they are excessive and were not adequately described. As explained in Roku's request, Roku has expressly identified and limited its request to copies of its summary judgment and *Daubert* briefing to the Court, trial exhibits and witness binders, and documents used by the trial team in preparation for and during trial in Waco. (ECF No. 419 at 7.) Where, as here, complex litigation involves "hundreds of thousands of documents and copies, parties cannot be expected to track the identity of each photocopied page along with a record of its relevance to the litigation." *Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1378 (Fed. Cir. 2006); *see also RealSource, Inc. v. Best Buy*, No. A-04-CA-771-LY, 2009 WL 10696390, at *6 (W.D. Tex. Dec. 2, 2009) (awarding over $30,000 for line items described as "photocopying charges" and "document reproduction").

Unlike in *Ushijima v. Samsung*, No. 1:12-cv-00318-LY (W.D. Tex. June. 16, 2015), Roku has specifically described its document reproduction charges. There, the prevailing party vaguely described two of four reproduction charges as "printing of production documents" in its bill of costs. *Id.* (Samsung's Bill of Costs, Ex. G (ECF No. 244-8)). Here, Roku separated its invoices into three detailed categories and demonstrated their relevancy to this litigation.

## IV. CONCLUSION

In light of the foregoing, Roku submits that its bill of costs request should be granted in its entirety.

5

Date:   January 26, 2021                    Respectfully submitted,

 /s/ Alexander J. Hadjis
Alexander J. Hadjis (*pro hac vice*)
JENER & BLOCK, LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6036
ahadjis@jenner.com

Richard D. Milvenan
State Bar No. 14171800
McGINNIS LOCHRIDGE, LLP
600 Congress Avenue, Suite 2100
Austin, TX 78701
rmilvenan@mcginnislaw.com

David N. Deaconson
State Bar No. 05673400
PAKIS, GIOTES, PAGE & BURLESON, PC
400 Austin Avenue
Waco, TX 76701
(254) 297-7300
deaconson@pakislaw.com

Darryl Adams
State Bar No. 00796101
SLAYDEN GRUBERT BEARD, LLC
401 Congress Avenue, Suite 1650
Austin, TX 78701
(512) 402-3562
dadams@sgbfirm.com

ATTORNEYS FOR
DEFENDANT ROKU, INC.

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served on all counsel of record via electronic transmission on January 26, 2021.

/s/ Alexander J. Hadjis